| | |
|---|---|
| 1 | COOLEY GODWARD KRONISH LLP |
| | THOMAS J. FRIEL, JR. (80065) |
| 2 | tfriel@cooley.com |
| | BRIAN E. MITCHELL (190095) |
| 3 | bmitchell@cooley.com |
| | 101 California Street |
| 4 | 5th Floor |
| | San Francisco, CA 94111-5800 |
| 5 | Telephone:    (415) 693-2000 |
| | Facsimile:     (415) 693-2222 |
| 6 | |
| | MATTHEW J. BRIGHAM (191428) |
| 7 | mbrigham@cooley.com |
| | Five Palo Alto Square |
| 8 | 3000 El Camino Real |
| | Palo Alto, CA  94306-2155 |
| 9 | Telephone:    (650) 843-5000 |
| | Facsimile:     (650) 857-0663 |
| 10 | |
| | Attorneys for Plaintiff |
| 11 | MONOLITHIC POWER SYSTEMS, INC. |

FILED
2007 MAY -1  PM 12: 22

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>Defendant. | Case No.  C07-02363  ADR<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monolithic Power System, Inc. ("MPS") complains of defendant O2 Micro International Limited ("O2 Micro") and alleges as follows:

### JURISDICTION

1.       This action seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201. It presents an actual case or controversy under Article III of the United States Constitution and serves a useful purpose in clarifying and settling the legal rights at issue.

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent statutes of the United States.

## VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(d) because O2 Micro is an alien corporation organized under the laws of the Cayman Islands.

## INTRADISTRICT ASSIGNMENT

4. This action for a declaratory judgment of non-infringement of a patent is assigned on a district-wide basis under Civil Local Rule 3-2(c).

## THE PARTIES

5. MPS is a corporation organized under the laws of the State of Delaware with its principal place of business in San Jose, California. MPS designs and sells power inverter controllers for use in DC to AC converters.

6. O2 Micro International Limited ("O2 Micro") is a corporation organized under the laws of the Cayman Islands. O2 Micro does business in this District and elsewhere in the State of California.

## NATURE OF THE ACTION

7. This action involves United States Patent No. 6,804,129 ("the '129 patent").

8. O2 Micro has repeatedly asserted its patents against MPS, MPS's customers, and end-users of MPS's power inverter controller products.

9. O2 Micro has filed lawsuits against MPS, MPS's customers, and end-users of MPS's power inverter controller products, in which MPS products have been accused of infringing O2 Micro patents, including the '129 patent.

10. MPS has developed power inverter controller products that are not accused of infringing in any pending lawsuit.

11. On information and belief, O2 Micro contends that these products, and devices built using these products, infringe one or more of the '129 patent's claims and that those claims are valid and enforceable.

12. MPS denies that these products infringe any claim of the '129 patent and denies

that those claims are valid and enforceable.

## FIRST CLAIM FOR RELIEF

13. Paragraphs 1-12 are incorporated by reference as if repeated in this first claim for relief.

14. There is an actual and justiciable controversy between MPS and O2 Micro as to whether MPS's products, and devices built using these products, infringe any valid claim of the '129 patent.

15. MPS is entitled to, and demands, a declaratory judgment that it does not infringe any claim of the '129 patent or, if any is infringed, that such claim is not valid.

## SECOND CLAIM FOR RELIEF

16. Paragraphs 1-15 are incorporated by reference as if repeated in this first claim for relief.

17. For the reasons alleged herein, the claims of the '129 patent are unenforceable due to inequitable conduct for failing to satisfy the duty of disclosure under 37 C.F.R. § 1.56 during prosecution before the PTO.

<u>Best Mode</u>

18. The '129 patent is unenforceable due to inequitable conduct in the procurement of the '129 patent and the patents in the same family, the facts and circumstances of which are set forth below.

19. During the prosecution of the application that resulted in United States Patent No. 6,259,615 patent (the parent patent to the '129 patent) (the "'615 patent"), O2 Micro intentionally withheld information from the United States Patent and Trademark Office ("USPTO") concerning a transformer that O2 Micro designed and developed in 1998. O2 Micro withheld the same information concerning the transformer during the prosecution of the application that resulted in the '129 patent. Information about the transformer should have been disclosed to the PTO because the information was crucial for practicing the best mode of operation of the Cold Cathode Fluorescent Lamp ("CCFL") inverter circuits taught by the '129 patent.

20. O2 Micro considered the design specifications for its transformer, which was

called the Sumida CIUH8D transformer, to contribute so significantly to the best mode of operation of the CCFL inverter chips disclosed in the '615 and the '129 patent, and to give it such a significant competitive advantage, that O2 Micro maintained the transformer design as a trade secret.

**21.** O2 Micro affirmatively and intentionally withheld information from the USPTO concerning its best mode-related transformer design, and instead inserted misleading and incomplete information about a generic transformer "TX1" into the specification of the '615 patent.

**22.** A person skilled in the art would not be able to practice the best mode contemplated by the '615 patent and the '129 patent based on the disclosure contained in the '615 and '129 patent specifications, because the specification fails to disclose any of the design details about the transformer O2 Micro specifically designed to enable the best mode operation of its CCFL inverter.

**23.** Dr. Lin, the inventor of the '129 patent, offered extensive testimony in Case Nos. CV-00-04071 (CW) and CV-01-3995 (CW) in the Northern District of California that in order to practice the best mode of the invention taught by the '615 patent and '129 patent, a person skilled in the art would need to know details about the Sumida CIUH8D transformer that were not disclosed in the specification of the '615 patent. Dr. Lin also testified that a person skilled in the art could not purchase a commercially-available transformer that possessed the qualities of the Sumida CIUH8D transformer.

**24.** On information and belief, O2 Micro intentionally submitted vague and misleading information about a transformer TX1 into the specification of the '615 patent and the '129 patent in lieu of information about the Sumida CIUH8D transformer that is required to perform the best mode of the invention disclosed by the '615 patent and '129 patent.

**25.** The foregoing breaches of the applicants' duty of candor and good faith in the prosecution of the '129 patent bars the enforcement of the '129 patent against MPS or any other party.

Lin Dissertation

26.     As set forth with more particularity below, MPS is informed and believes, and based thereon alleges, that O2 Micro, by itself, and through one or more of the named inventors of the '129 patent, and/or its attorneys, employees and agents, with intent to deceive, failed to disclose material information to the USPTO during the prosecution of the applications for the '129 patent and other patents in the same family that results in the '129 patent being invalid, void and/or unenforceable.

27.     In 1996, while he was a doctoral candidate at the University of Arizona, Dr. Lin authored a doctoral dissertation entitled "Resonant Inverters and Their Applications to Electronic Ballasts and High Voltage Power Conversions."

28.     Dr. Lin's doctoral dissertation was completed and made publicly available in 1996.

29.     Dr. Lin's doctoral dissertation is prior art to the '129 patent under 35 U.S.C. §§ 102(b) and 103.

30.     Because Dr. Lin's dissertation is prior art, describes numerous configurations for inverter modules used to drive cold cathode fluorescent lamps (CCFLs) in laptop computers, and when combined with other art establishes a prima facie case of invalidity of one or more claims of the '129 patent, it was highly material to prosecution of the '129 patent.

31.     MPS is informed and believes, and based thereon alleges, that O2 Micro, the inventors and/or their agents associated with the filing and prosecution of the applications for the '129 patent and the other patents in the same family intentionally withheld Dr. Lin's dissertation from the USPTO with the intent to deceive the USPTO regarding the patentability and scope of the '129 patent. In doing so, they breached the duty of candor and good faith owed to the USPTO.

32.     The foregoing breaches of the applicants' duty of candor and good faith in the prosecution of the '129 patent bars the enforcement of the '129 patent against MPS or any other party.

OZ960A/AS & OZ962 Inverters

33.     As set forth with more particularity below, MPS is informed and believes, and

based thereon alleges, that O2 Micro, by itself, and through one or more of the named inventors of the '129 patent and/or its attorneys, employees and agents, with intent to deceive, failed to disclose material information to the USPTO during the prosecution of the applications for the '129 patent and other patents in the same family that result in the '129 patent being invalid, void and/or unenforceable.

34.     Beginning in or about 1996 and continuing through 1998 and beyond, O2 Micro sold and offered for sale to Dell, Quanta, Fujitsu, and others a series of inverters including the OZ960A, OZ960AS, and OZ962.

35.     These inverters featured feedback control circuitry and a current limiting device to provide open lamp protection.

36.     Under the patent laws of the United States, a patent is invalid if its claimed subject matter was known or used by another in the United States, or was made in the United States by another who had not abandoned, suppressed or concealed the claimed subject matter, before the invention date of the applicant for the patent. Under these principles, the OZ960A, OZ960AS, and OZ962 inverters constituted material prior art to the patent application that matured into the '129 patent.

37.     Because these inverters are prior art, and when considered alone or combined with other prior art establish a prima facie case of invalidity of one or more claims of the '129 patent, they were highly material to prosecution of the '129 patent.

38.     MPS is informed and believes, and based thereon alleges, that O2 Micro, the inventors and/or their agents associated with the filing and prosecution of the application for the '129 patent intentionally withheld information about the OZ960A, OZ960AS, and OZ962 inverters from the USPTO with the intent to deceive the USPTO regarding the patentability and scope of the '129 patent. In doing so, they breached the duty of candor and good faith owed to the USPTO.

39.     The foregoing breaches of the applicants' duty of candor and good faith in the prosecution of the '129 patent bar the enforcement of the '129 patent against MPS or any other party.

## MP1010 Integrated Circuit

40. As set forth with more particularity below, MPS is informed and believes, and based thereon alleges, that O2 Micro, by itself, and through one or more of the named inventors of the '129 patent and/or its attorneys, employees and agents, with intent to deceive, failed to disclose material information to the USPTO during the prosecution of the applications for the '129 patent and other patents in the same family that result in the '129 patent being invalid, void and/or unenforceable.

41. In or about October, 2001, O2 Micro filed a civil action against MPS in the U.S. District Court for the Northern District of California alleging that MPS' CCFL inverter products infringed the '615 patent, Case No. C-01-3995 ("the '615 action"). During the course of the '615 action, O2 Micro asserted that certain MPS products created after the MP1010 infringed certain of the claims of the '615 patent, including claims 1 and 18.

42. During the course of discovery in the '615 action, and during the course of briefing on summary judgment motions, MPS advised O2 Micro that the MP1010 was prior art to the '615 patent. Among other things, during the '615 action, MPS produced evidence to O2 Micro showing that the MP1010 was known or used by MPS in the United States, and was made in the United States by MPS, and that MPS had not abandoned, suppressed or concealed the MP1010, before the invention date of the applicant for the '615 patent. Such evidence included, among other things, the following:

    a. In or about May, 2003, an expert report containing claim charts showing that, if the asserted claims of the '615 patent applied to MPS's current products, they would also apply to the prior art MP1010.

    b. During July and August 2003, a summary judgment motion which, among other things, pointed out that if MPS's current products infringed the '615 patent, then the prior art MP1010 product would also practice the patent, so that the '615 patent would be invalid.

   c. A declaration in support of the summary judgment motion describing the functionality of the MP1010, and showing its offer for sale in April 1999, before the earliest possible application date for the '615 patent.

   d. During 2002 and 2003, MPS also produced data sheets and other materials describing the MP1010 and its operation.

43. The above materials are collectively referred to as the "MP1010 prior art materials."

44. The MP1010 prior art materials were publicly filed and/or produced without restriction in the '615 action, so that O2 Micro was not under any confidentiality obligations that would have prohibited the disclosure of the documents to the USPTO. Moreover, MPS made such public filings and/or production before the issuance of the '129 patent; for example, MPS produced, and therefore O2 Micro was in possession of, the MP1010 prior art materials before the February 11, 2004 filing date of the '417 application that resulted in the '129 patent.

45. Since both the '615 patent and the '129 patent share the same specification and claim the same effective filing date and invention dates, the MP1010 prior art materials are also prior art to the '129 patent.

46. MPS is informed and believes, and on that basis avers, that during the prosecution of the '016 and '417 applications that led up to the issuance of the '129 patent, O2 Micro and its attorneys became aware of (a) the technical operation of the MP1010, (b) the fact that MPS contended that the MP1010 was prior art to the '615 patent (and hence any continuation patent, such as the '129 patent), and (c) the fact that MPS contended that, insofar as the claims of the '615 patent are concerned, the MP1010 product operates in the same manner as MPS's current products, so that the '615 patent could not be infringed if it was valid. MPS is also informed and believes, and on that basis avers, that O2 Micro and its attorneys who prosecuted the '016 and '417 applications had access during 2003 to pleadings filed during the '615 action, and therefore had access to the MP1010 prior art materials.

47. Under the patent laws of the United States, a patent is invalid if its claimed subject matter was known or used by another in the United States, or was made in the United States by

1  another who had not abandoned, suppressed or concealed the claimed subject matter, before the invention date of the applicant for the patent. Under these principles, the MP1010 prior art materials were material prior art to the '016 and '417 applications.

**48.** O2 Micro and its attorneys had a duty to disclose both material prior art in general, and relevant pleadings and other evidence from the '615 action specifically, to the USPTO during the prosecution of the '016 application and the '417 application. Among other things, pursuant to 37 C.F.R. Section 1.56, O2 Micro and its attorneys had a duty to disclose information that was not cumulative to information already of record or being made of record in the application, and which establishes, by itself or in combination with other information, a prima facie case of unpatentability of a patent claim.

**49.** O2 Micro and its attorneys failed to satisfy this duty of disclosure, and failed to cite the most material prior art to the USPTO during the prosecution of the '016 and '417 applications. O2 Micro did not cite to the USPTO the MP1010 prior art materials described above.

**50.** In or about February 2004, the Court granted MPS summary judgment of non-infringement of the '615 patent, based on the absence of the "only if" limitation in MPS' products. At this time, the '129 patent was still being prosecuted—indeed, the '417 application was filed on or about the very day that the Court issued its summary judgment order. O2 Micro was thus aware during the prosecution of the '417 application that, should it wish to continue to pursue patent litigation against MPS, it would have to attempt to obtain patent claims without the "only if" limitation of the '615 patent claims. O2 Micro attempted to do so in the '417 application and the resulting '129 patent, but only by withholding the MP1010 prior art materials referred to above.

**51.** MPS is thus informed and believes, and on that basis avers, that O2 Micro and/or its attorneys deliberately withheld material information concerning the MP1010 from the USPTO, with the intent to deceive the USPTO, in order to obtain the allowed claims of the '129 patent.

**PRAYER FOR RELIEF**

MPS asks for judgment as follows:

1. For a declaration that its power inverter products do not infringe any valid and enforceable claim of the '129 patent;

2. For an injunction preventing O2 Micro from bringing any other lawsuit or proceeding that places at issue the right to make, use, sell, or import into the United States, any MPS power inverter products that are at issue by virtue of this complaint;

3. For a declaratory judgment that the claims of the '129 patent are unenforceable;

4. For a declaration that this is an exceptional case, entitling MPS to an award of its attorneys' fees and costs; and

5. For any other relief that the Court determines is warranted.

Dated: May 1, 2007

COOLEY GODWARD KRONISH LLP
THOMAS J. FRIEL, JR. (80065)

*Thomas Friel / with permission, ben*

Thomas J. Friel, Jr. (80065)
Attorneys for Plaintiff
MONOLITHIC POWER SYSTEMS, INC.

**DEMAND FOR JURY TRIAL**

MPS demands a jury trial.

Dated: May 1, 2007

COOLEY GODWARD KRONISH LLP
THOMAS J. FRIEL, JR. (80065)

_/s/ Thomas Friel / w permission, bem_
Thomas J. Friel, Jr.  (80065)
Attorneys for Plaintiff
MONOLITHIC POWER SYSTEMS, INC.

752324 v2/PA