1  COUNSEL LISTED ON SIGNATURE PAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>　　　　　Defendant. | Case No. C 07-02363 CW<br><br>**PLAINTIFF MONOLITHIC POWER SYSTEMS, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT O2 MICRO INTERNATIONAL LIMITED'S MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date:　　　August 16, 2007<br>Time:　　　2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge:　　　Honorable Claudia Wilken |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

**PLTF'S OPPOSITION TO MOTION TO DISMISS**
**C 07-02363 CW**

TABLE OF CONTENTS

PAGE

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF THE ISSUES TO BE DECIDED ..................................................... 1
III. RELEVANT FACTS ...................................................................................................... 2
    A. A Long-Standing History of Litigation Exists Between The Parties ..................... 2
    B. O2 Micro Interprets the Oakland II Stipulation as Excluding MPS's New Products ................................................................................................................... 2
    C. O2 Micro Continues to Sue MPS Customers on the '129 Patent .......................... 4
IV. LEGAL STANDARD ..................................................................................................... 4
V. ARGUMENT ................................................................................................................... 6
    A. O2 Micro's Facial Attack on the Complaint Is Meritless ...................................... 6
    B. There Is an Actual Controversy Between the Parties Over the '129 Patent. .......... 7
    C. This Is the Proper Court to Resolve this Dispute .................................................. 13
VI. CONCLUSION ................................................................................................................ 14

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

i.

PLTF'S OPPOSITION TO MOTION TO DISMISS
C 07-02363 CW

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Aetna Life Ins. Co. v. Haworth*
300 U.S. 227 (1937) ................................................................................................................. 5

*Amana Refrigeration, Inc. v. Quadlux, Inc.*
172 F.3d 852 (Fed. Cir. 1999) .................................................................................................. 5

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*
846 F.2d 731 (Fed. Cir. 1988) ........................................................................................... 11, 12

*Benitec Australia, Ltd. v. Nucleonics, Inc.*
__ F.3d. __, Case No. 06-1122 (Fed. Cir., July 20, 2007) ....................................................... 5

*BP Chems. Ltd. v. Union Carbide Corp.*
4 F.3d 975 (Fed. Cir. 1993) ...................................................................................................... 9

*Cingular Wireless LLC v. Freedom Wireless, Inc.*
2007 WL 1876377 (D. Ariz. June 27, 2007) ............................................................................ 7

*Crutchfield New Media, LLC v. Charles E. Hill & Associates, Inc.*
2007 WL 1320750 (S.D. Ind. May 4, 2007) ............................................................................ 8

*EMC Corp. v. Norand Corp.*
89 F.3d 807 (Fed. Cir. 1996) .................................................................................................. 12

*Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*
474 F.Supp.2d 779 (E.D. Va. 2007) ....................................................................................... 12

*Frederick Goldman, Inc. v. West*
2007 WL 1989291 (S.D.N.Y July 6, 2007) ............................................................................. 5

*Intellectual Property Dev., Inc. v. TCI Cablevisions of California*
248 F.3d 1333 (Fed. Cir. 2001) .............................................................................................. 11

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
312 U.S. 270 (1941) ................................................................................................................. 5

*MedImmune, Inc. v. Genentech, Inc.*
U.S, 127 S.Ct. 764 (2007) ................................................................................... 4, 5, 6, 10, 12

*Minnesota Mining & Mfg. v. Norton Co.*
929 F.2d 670 (Fed. Cir. 1991) .................................................................................................. 8

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co, Ltd.*
Case No. 04-0032 (E.D. Tex., filed Jan 20, 2004) ................................................................... 8

*O2 Micro Int'l, Ltd. v. Hon Hai Precision Industry Co.*
Case No. 05-0323 (E.D. Tex., filed July 18, 2005) .............................................................. 4, 8

*O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc.*
Case No. 01-3995 (N.D. Cal. Feb. 11, 2004) ........................................................................... 2

*O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc. et al.*
Case No. 04-0359 (E.D. Tex., filed Oct. 12, 2004) ................................................................. 2

*O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc. et al.*
Case Nos. 04-2000 & 06-2929 (N.D. Cal.)[*Oakland II*] ........................................... 2, 3, 4, 11

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

**PLTF'S OPPOSITION TO MOTION TO DISMISS**
**C 07-02363 CW**

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

*O2 Micro Int'l, Ltd. v. Rohm Co., Ltd.*
  Case No. 05-0211 (E.D. Tex., filed June 30, 2005) .................................................................. 8

*O2 Micro Int'l, Ltd. v. Samsung Elec. Co. Ltd.*
  Case No. 04-0323 (E.D. Tex., filed Sept. 3, 2004) .................................................................... 8

*O2 Micro Int'l, Ltd. v. Taiwan Sumida Elec., Inc.*
  Case No. 03-0007 (E.D. Tex., filed Jan. 6, 2003) ..................................................................... 8

*SanDisk Corp. v. STMicroelectronics Inc.*
  480 F.3d 1372 (2007) ...................................................................................................... 5, 6, 8, 12

*Sharper Image Corp. v. Honeywell Intern, Inc.*
  2005 WL 2176903 (N.D. Cal.) ................................................................................................. 10

*Super Sack Mfg. Corp. v. Chase Packaging Corp*
  57 F.3d 1054 (Fed. Cir. 1995) ........................................................................................ 5, 10, 11

*Synopsys, Inc. v. Ricoh Co., Ltd.*
  343 F.Supp.2d 883 (N.D. Cal. 2003) ...................................................................................... 11

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*
  482 F.3d 1330 (2007) ............................................................................................................ 5, 7, 12

*Wolfe v. Strankman*
  392 F.3d 358 (9th Cir. 2004) ..................................................................................................... 6

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*
  2007 WL 1394154 (E.D. Wis. May 11, 2007) [*Global II*] .............................................. 11, 12

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*
  2007 WL 205559 (E.D. Wis. Jan. 24, 2007) [*Global I*] .................................................. 11, 12

## **STATUTES**

FED. R. CIV. P. 12(b)(1) .............................................................................................................. 6

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

**PLTF'S OPPOSITION TO MOTION TO DISMISS**
**C 07-02363 CW**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

It is simply disingenuous for O2 Micro to play coy. There can be no real dispute that an actual case and controversy exists between O2 Micro International Limited ("O2 Micro") and Monolithic Powers Systems, Inc. ("MPS") over U.S. Patent No. 6,804,129 ("the '129 Patent"). For over six years, O2 Micro has relied on the '129 Patent and its family to wage a relentless crusade against MPS, its suppliers and its customers. Through its Complaint, MPS petitions this Court for the opportunity to shut the door on O2 Micro's meritless campaign and free itself from the business dampening effects of O2 Micro's constant threat of further litigation.

In a deceptive effort to argue against jurisdiction, O2 Micro takes several liberties with the relevant facts. O2 Micro now conveniently takes an expansive view of a covenant not to sue given to MPS while simultaneously construing the same covenant much more narrowly in other venues. O2 Micro also improperly dismisses its pending litigation of the '129 Patent against an MPS customer as a basis of jurisdiction. Most egregiously, O2 Micro completely ignores the historic and ongoing conflict between itself and MPS over the '129 Patent and its family.

MPS's claims for declaratory relief result from an actual case and controversy between the parties over the validity of the '129 Patent and its applicability to MPS products. Through this lawsuit, MPS seeks to end this long-running dispute. This Court can and should exercise its discretion to provide a forum for MPS to conclusively settle its dispute with O2 Micro and erase ambiguities surrounding MPS's right to market and sell its products, and its customers' rights to use them.

**II.    STATEMENT OF THE ISSUES TO BE DECIDED**

The parties present the following issues for decision:

(1)    Does the introduction of new products combined with O2 Micro's sweeping litigation strategy against MPS and its customers support declaratory judgment jurisdiction concerning the '129 Patent?

(2)    Should this Court exercise its discretion to hear MPS's claims?

### III. RELEVANT FACTS

#### A. A Long-Standing History of Litigation Exists Between The Parties.

This motion should not be resolved in a vacuum. It is critical to recognize the broader and overarching disputes between MPS and O2 Micro in order to understand the current controversy between the parties concerning the '129 Patent. As this Court is well-aware, this suit is only the latest in a series of litigations between the parties and customers involving competing power inverter controllers. The dispute centers on three related O2 Micro patents—the '129 Patent, its "parent" and its" grandparent"[1]—which share the same specification. O2 Micro adopted a shotgun approach to litigating this patent family, asserting nearly identical claims against MPS, its customers and its suppliers in various jurisdictions over essentially identical inverter controllers.

This Court resolved separate disputes over the '615 and '722 Patents. In *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc.*, Case No. 01-3995 (N.D. Cal. Feb. 11, 2004), the Court held on summary judgment that MPS's products did not infringe any asserted claim of the '615 Patent. (Declaration of Matthew J. Brigham ["Brigham Decl."], Ex. 1.) In *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc. et al.*, Case Nos. 04-2000 & 06-2929 (N.D. Cal.) [*Oakland II*], the jury rendered a verdict that all asserted claims of the '722 Patent are invalid as obvious and by virtue of the on-sale bar. (Brigham Decl., Ex. 2.) Final judgment is expected.

#### B. The *Oakland II* Stipulation and Covenant Not to Sue Do Not Explicitly Mention New MPS Products.

The '129 Patent dispute began when O2 Micro sued MPS in the Eastern District of Texas the day the '129 Patent issued. *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc. et al.*, Case No. 04-0359 (filed Oct. 12, 2004). O2 Micro later amended its complaint to assert '129 Patent claims against two MPS customers and an MPS supplier. Judge Ward subsequently transferred the Texas case to this Court, where it was consolidated with the related '722 litigation on August 9, 2006.

---

[1] The grandparent of the '129 Patent is U.S. Patent No. 6,259,615 ("the '615 Patent"). The parent of the '129 Patent is U.S. Patent No. 6,396,722 ("the '722 Patent").

Following the transfer and consolidation, O2 Micro communicated its intent to dismiss its claims under the '129 Patent. (Brigham Decl., Exs. 3 and 4.) A stipulation was entered on October 11, 2006 ["*Oakland II* stipulation"].

O2 Micro's counsel represented that the *Oakland II* stipulation was prompted by the absence of accused half-bridge inverter controllers in the consolidated cases. (*See* Brigham Decl. Ex. 3) ("In light of the…limitation of the products at issue in [*Oakland II*] to MPS' full-bridge inverter controllers…O2 Micro intends to dismiss with prejudice its claim for infringement of the '129 Patent."); (*See also* Brigham Decl. Ex. 4) ("If the defendants in those other cases do not use half-bridge controllers, we suggest they raise the possibility of dismissing the '129 [Patent] in their respective cases."). O2 Micro's intent is clear from the language of the stipulation itself, which purports to extend only to future '129 Patent claims against **MPS full-bridge inverters**. (Su Decl., Ex. C at 1.)[2]

Given the history of litigation between the parties, MPS reasonably believed a new suit on the '129 Patent was imminent. MPS's apprehension was not without cause. MPS continued to innovate and expand its product offerings both before and after entry of the stipulation in October, 2006. MPS began offering for sale new half-bridge inverter controllers marketed as the MP1008. (Brigham Decl., Exs. 5 & 10.) MPS also began offering for sale new full-bridge inverter controllers, including controllers marketed under the VION brand. MPS does not believe these products infringe. Nevertheless, O2 Micro's stated desire to accuse half-bridge products, combined with the probability that O2 Micro would narrowly apply the covenant to only specifically named full bridge products, placed MPS in the unenviable position of laboring under the shadow of threatened infringement litigation.

---

[2] The relevant portion of the stipulation reads:

> O2 Micro covenants not to assert or reassert its '129 patent against named defendants for infringement by MPS *full bridge inverter controllers* (and products incorporating said controllers) made, used, imported, offered for sale or sold previously or currently having product designations MP1010, MP1010B, MP1011, MP1012, MP1013, MP1015, MP1016, MP1018, MP1022, MP1023, MP1024, MP1025, MP1026, MP1027, MP1029, MP1030, MP1031, MP1032, MP1035 and MP1038, evaluation boards EV0001, EV0002, EV0003, EV0004, EV0014, EV0017, EV0019, EV0027, EV0031 and EV0037 incorporating certain of those inverter controllers.

(Su Decl., Ex. C at 1) (emphasis added).

### C. O2 Micro Continues to Sue MPS Customers on the '129 Patent.

Meanwhile, despite the representation made and dismissal, O2 Micro continues to harass MPS customers with the '129 Patent. While the transfer and consolidation of *Oakland II* played out, O2 Micro sued an MPS customer, Hon Hai Precision Industry Co. ("Hon Hai"), on the '129 Patent in the Eastern District of Texas. *O2 Micro Int'l, Ltd. v. Hon Hai Precision Industry Co.*, Case No. 05-0323 (filed July 18, 2005).

O2 Micro, subsequent to the stipulation and jury verdict in *Oakland II*, is attempting to amend its infringement contentions to accuse Hon Hai of infringing the '129 Patent through its use of MPS products explicitly mentioned in the *Oakland II* stipulation. Accordingly, Hon Hai moved for summary judgment, arguing the *Oakland II* stipulation resulted in an implied license on those products. O2 Micro opposed, taking an unduly narrow interpretation of the stipulation:

> The Stipulated Dismissal does not confer on MPS the right to practice the '129 patent or to sublicense its customers to do so. ***Rather, it merely contains a promise by O2 Micro not to sue MPS for infringing the '129 patent with certain products***…. All that the Stipulated Dismissal provides to MPS is personal immunity from suit for ***these particular acts of infringement***.
>
> \*   \*   \*
>
> O2 Micro's covenant not to sue MPS on the '129 patent does not permit MPS to make unconditioned sales of patented products.

(Brigham Decl., Ex. 6 [O2 Micro's Sur-Reply to Hon Hai's Motion for Summary Judgment], at 4, 7) (emphasis added). While Hon Hai's motion remains pending, it is clear that O2 Micro is back to its old forum-shopping ways. It dismissed its '129 Patent claims in this District to limit its risks in a failing suit, only to resurrect those same claims in its preferred forum, the Eastern District of Texas.

### IV. LEGAL STANDARD

The Supreme Court recently clarified the relationship between Article III's jurisdictional requirements and the Declaratory Judgment Act. *MedImmune, Inc. v. Genentech, Inc.*, U.S., 127 S.Ct. 764 (2007). In *MedImmune*, the Court rejected the Federal Circuit's "reasonable apprehension of suit" test as restrictive and inconsistent with precedent. *Id.* at 774, n.11. The

Court advanced a broader standard reflecting the historical purpose of the Declaratory Judgment Act—to provide a challenger with an alternative to the Hobson's choice between "abandoning his rights or risking prosecution." *Id.* at 773. The new standard requires only that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 771.

*MedImmune* has been interpreted as "lowering the bar for a plaintiff [bringing] a declaratory judgment action in a patent dispute." *Frederick Goldman, Inc. v. West*, 2007 WL 1989291, at *3 (S.D.N.Y July 6, 2007). Under *MedImmune*, a dispute is justiciable if it is "real and substantial" and seeks "a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." 127 S.Ct. at 771 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The standard is pragmatic and looks to the totality of circumstances surrounding a particular dispute:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 771 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Federal Circuit now addresses the question of declaratory jurisdiction "strictly on the framework of *MedImmune*." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, __ F.3d. __, Case No. 06-1122 at 10 (Fed. Cir., July 20, 2007).[3] The Federal Circuit has applied *MedImmune* to expand declaratory jurisdiction. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (2007) (reversing dismissal of declaratory judgment action); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330 (2007) (same).

In *SanDisk*, the Federal Circuit held "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk*,

---

[3] Tellingly, O2 Micro relies exclusively on questionable precedent preceding *MedImmune* in arguing against jurisdiction. *See Benitec Australia*, __ F.3d. __, Case No. 06-1122 at 9-10 (Fed. Cir., Jul. 20, 2007) (marginalizing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) and *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999) because they "applied the disapproved 'reasonable apprehension of imminent suit' test."). A copy of the *Benitec Australia* opinion is attached. (Brigham Decl., Ex. 7).

480 F.3d at 1381. To determine if jurisdiction is proper, a court must look at the totality of the circumstances, including the patentee's course of conduct. *Id.* at 1383.

## V.  ARGUMENT

### A.  O2 Micro's Facial Attack on the Complaint Is Meritless.

O2 Micro's attack on the face of the Complaint is without merit. When reviewing a motion to dismiss for lack of jurisdiction, the courts assume that the allegations in the Complaint are true and draw all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citing FED. R. CIV. P. 12(b)(1)). In its Complaint, MPS alleges the following:

- O2 Micro has repeatedly asserted its patents against MPS, MPS's customers, and end-users of MPS's power inverter controller products;

- O2 Micro has filed lawsuits against MPS, MPS's customers, and end-users of MPS's power inverter controller products, in which MPS products have been accused of infringing O2 Micro patents, including the '129 Patent;

- MPS has developed power inverter controller products that are not accused of infringing in any pending lawsuit;

- On information and belief, O2 Micro contends that these products, and devices built using these products, infringe one or more of the '129 Patent's claims and that those claims are valid and enforceable; and

- MPS denies that these products infringe any claim of the '129 Patent and denies that those claims are valid and enforceable.

(Complaint [D.I. 1] at ¶¶ 8-12.) Taken as true, these facts establish an Article III case or controversy under *MedImmune*. There is an actual and justiciable controversy between MPS and O2 Micro as to whether MPS products, and devices built using these products, infringe any valid claim of the '129 Patent. Tellingly, O2 Micro cannot point to any case law demonstrating MPS's allegations are facially deficient.

To the extent O2 Micro argues MPS must enumerate specific products in its Complaint—an argument O2 Micro makes without any supporting law—this opposition renders the argument

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

6.

PLTF'S OPPOSITION TO MOTION TO DISMISS
C 07-02363 CW

moot. MPS is currently marketing and selling new half-bridge inverter controllers marketed as the MP1008. (*See* Brigham Decl., Exs. 5 & 10.) As O2 Micro is aware (since it has noted their existence in litigation against MPS's customer) MPS also is offering for sale new full-bridge inverter controllers, including controllers marketed under the VION brand.

### B.  There Is an Actual Controversy Between the Parties Over the '129 Patent.

The facts alleged in the Complaint are neither hypothetical nor speculative. Rather, the Complaint reflects an *actual* controversy over the '129 Patent based on the long-standing legal conflict between the parties, O2 Micro's unduly narrow interpretation of the *Oakland II* stipulation, O2 Micro's continued forum shopping, and O2 Micro's persistent harassment of MPS customers. MPS is entitled to free itself from the haze of legal uncertainty surrounding its marketing and selling of inverter controller products not explicitly named in the *Oakland II* stipulation. MPS is also entitled to protect its financial interests and business relationships against O2 Micro's constant harassment.

#### 1.  O2 Micro Has Litigated and Is Aggressively Litigating the '129 Patent Family.

The substantial history of litigation between MPS and O2 Micro over the '129 Patent family cannot be ignored. The litigation history between parties is a critical factor in determining whether an actual controversy exists. *See Teva Pharm.*, 482 F.3d at 1344 ("[R]elated litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents."); *Cingular Wireless LLC v. Freedom Wireless, Inc.*, 2007 WL 1876377, at *3-4 (D. Ariz. June 27, 2007) (prior litigation between the parties regarding the same technology showed a willingness on the part of the defendant to pursue litigation). As detailed above, MPS and O2 Micro have a seven-year history of litigation involving the technology at issue, including a prior litigation involving the '129 Patent and a continuing litigation over the same patent family. O2 Micro aggressively pursued litigation involving the '129 Patent—filing its infringement action against MPS ***the day***

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

7.

**PLTF'S OPPOSITION TO MOTION TO DISMISS**
**C 07-02363 CW**

*the patent issued*. Based on their history, MPS reasonably believed that O2 Micro intended to bring '129 Patent claims against its recently developed inverter controller products.

O2 Micro's shotgun, and continuing, litigation strategy of the '129 Patent family against third parties also supports jurisdiction over MPS declaratory claims. In addition to the Texas case brought against MPS, O2 Micro has asserted the '129 Patent in four prior litigations:[4]

- *O2 Micro Int'l, Ltd. v. Hon Hai Precision Industry Co., Ltd.*, Case No. 05-0323 (E.D. Tex., filed July 18, 2005);
- *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co, Ltd.*, Case No. 04-0032 (E.D. Tex., filed Jan 20, 2004);
- *O2 Micro Int'l, Ltd. v. Samsung Elec. Co. Ltd.*, Case No. 04-0323 (E.D. Tex., filed Sept. 3, 2004);  and
- *O2 Micro Int'l, Ltd. v. Rohm Co., Ltd.*, Case No. 05-0211 (E.D. Tex., filed June 30, 2005).

O2 Micro also asserted the related '615 and '722 Patents against a different MPS customer in a separate suit. *O2 Micro Int'l, Ltd. v. Taiwan Sumida Elec., Inc.*, Case No. 03-0007 (E.D. Tex., filed Jan. 6, 2003).

To put it mildly, O2 Micro has demonstrated little restraint in enforcing the '129 Patent family against the world, and against MPS and its customers. O2 Micro's aggressive approach to enforcing its perceived patent rights counsel toward allowing MPS to pursue declaratory relief. *See e.g., SanDisk*, 480 F.3d at 1383 (patentee's "preparedness and willingness to enforce its patent rights" supported declaratory judgment jurisdiction); *Crutchfield New Media, LLC v. Charles E. Hill & Associates, Inc.*, 2007 WL 1320750, at *2 (S.D. Ind. May 4, 2007) (patentee's pattern of filing suit, or "enforcement tactics," was a factor in finding a substantial controversy between the parties to warrant declaratory relief).

---

[4] O2 Micro filed several of these cases before the '129 Patent issued. In these cases, O2 Micro subsequently amended its complaint to add infringement claims under the '129 Patent.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

8.    PLTF'S OPPOSITION TO MOTION TO DISMISS
C 07-02363 CW

### 2. Even After the Stipulation, MPS Labored Under the Threat of Litigation Over the '129 Patent.

The Declaratory Judgment Act "afford[s] relief from the uncertainty, insecurity, and controversy which the conflict between the parties has engendered." *Minnesota Mining & Mfg. v. Norton Co.*, 929 F.2d 670 (Fed. Cir. 1991) (internal quotations omitted). Despite O2 Micro's carefully measured assurances in its Motion, after the stipulation MPS labored under the constant uncertainty and insecurity of potential litigation under the '129 Patent. O2 Micro's actions during *Oakland II* signaled an intent to pursue '129 Patent claims against MPS's new full-bridge and half-bridge inverter controllers. Accordingly, MPS developed and marketed its new products under a specter of uncertainty. MPS continues to sell these products despite O2 Micro's new assertions that they are not afforded the protection of the stipulation.

For the first time in its Motion, O2 Micro takes an expansive reading of the stipulation. Remarkably, O2 Micro now asserts that "[i]n the stipulation, O2 Micro agreed never to assert the '129 Patent against MPS." (Mot. at 1.) If that is truly O2 Micro's position, MPS agrees that there is no real controversy. O2 Micro and MPS can quickly agree to an unambiguous amended stipulation regarding the '129 Patent covering the sale, importation, and use of all present and future MPS products, and dismiss this litigation.

But a closer reading of the Motion reveals that MPS is correct in being concerned that O2 Micro actually takes a narrow view of the stipulation. (*See generally* Mot. at 3.) Beneath the surface, O2 Micro believes that the stipulation is strictly limited to its express terms—that is, to named MPS full-bridge products. In the Hon Hai litigation, O2 Micro has argued:

> The Stipulated Dismissal does not confer on MPS the right to practice the '129 patent or to sublicense its customers to do so. ***Rather, it merely contains a promise by O2 Micro not to sue MPS for infringing the '129 patent with certain products***…. All that the Stipulated Dismissal provides to MPS is personal immunity from suit for ***these particular acts of infringement***.

(Brigham Decl., Ex. 6 [O2 Micro's Sur-Reply to Hon Hai's Motion for Summary Judgment], at 4) (emphasis added).[5] Stated another way, O2 Micro claims that it retains discretion to sue MPS

---

[5] To the extent O2 Micro argues events subsequent to the filing of the Complaint are not relevant to this Court's jurisdictional determination, it is mistaken. *See BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

9.     **PLTF'S OPPOSITION TO MOTION TO DISMISS**
C 07-02363 CW

on the '129 Patent on products not previously accused of infringement in the earlier suit. Such products include MPS's half-bridge MP1008 product and new full-bridge products—products currently being marketed and sold. Because of O2 Micro's representations on the scope of the stipulation, MPS and its customers are laboring under a cloud of uncertainty with respect to these products, and one is facing new allegations in a suit in Texas.

These are the critical distinction that O2 Micro ignores in relying on *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995). In *Super Sack*, declaratory jurisdiction was not proper because the plaintiff "never contended that it [had] already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to infringe." *Id.* at 1059-60. Because the new products were hypothetical, the possibility of a future infringement suit was "simply too speculative." *Id.* at 1060. By measurable contrast, MPS's apprehension is based on real—not hypothetical—products. MPS has not merely planned new products not named in the stipulation, it is currently manufacturing and selling them. Contrary to the plaintiff in *Super Sack*, MPS is engaged in present activity which places it at risk of O2 Micro arguing for infringement liability. *Id.* at 1059 (discussing the second requirement of the pre-*MedImmune* test for justiciability).

In view of *MedImmune*, O2 Micro's reliance on *Sharper Image* is also misplaced. *Sharper Image Corp. v. Honeywell Inter., Inc.*, 2005 WL 2176903 (N.D. Cal.). Applying the now rejected standard, *Sharper Image* concluded that a declaratory judgment plaintiff did not have a "reasonable apprehension" of facing a suit over its products that were not included in a stipulated dismissal. *Id.* at *3. Significantly, the district court implied that the dispute was not ripe for adjudication until the ***patentee accused the new products of infringement***. *Id.* at *2 (concluding that dismissing the counterclaims for declaratory judgment would not preclude the defense "in a future action accusing the products that are not in suit here"). Essentially, *Sharper Image* forced the would-be challenger into a Hobson's choice—of either abandoning his rights or risking

---

1993) ("Although it is the situation at the time suit was filed that establishes the existence *vel non* of an actual controversy, subsequent events can reinforce the correctness of the conclusion").

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

10.    PLTF'S OPPOSITION TO MOTION TO DISMISS
C 07-02363 CW

prosecution under the patent. This is precisely the result the Supreme Court rejected in *MedImmune,* 127 S.Ct. at 773.

### 3. O2 Micro's Harassment of MPS Customers Establishes an Actual Case or Controversy.

O2 Micro continues to harass MPS's customers with the '129 Patent. O2 Micro is still asserting the '129 Patent against one MPS customer, Hon Hai. Less than a month after the stipulation was entered, O2 Micro also threatened litigation against at least one other MPS customer. (*See e.g.* Brigham Decl, Ex. 8.) Remarkably, O2 Micro asserts its methodical pursuit of MPS customers under the '129 Patent is of no moment. O2 Micro argues that MPS does not have a protectable interest in the Hon Hai litigation because "MPS has not alleged it is required to indemnify Hon Hai for infringement for the '129 Patent." (Motion at 10.) Regardless of the existence of a formal indemnity agreement, MPS is harmed by O2 Micro's attacks on its customers. O2 Micro is pressuring MPS by using its customers as proxies. O2 Micro's actions injure MPS by damaging its goodwill with current customers and by "souring the milk" in negotiations with potential customers.

MPS has protectable interest in its customer relationships. This District has held, even under the more restrictive "reasonable apprehension" standard, that a patentee's litigation against a challenger's customers is enough to establish declaratory jurisdiction:

> Defendant has initiated a suit against several of Plaintiff's customers in the District of Delaware. Thus, there can be no doubt regarding Defendant's intent to enforce its patents against such customers. Thus, based on *Arrowhead*, the Court finds that the 'reasonable apprehension' requirement has been satisfied.

*Synopsys, Inc. v. Ricoh Co., Ltd.*, 343 F.Supp.2d 883, 889 (N.D. Cal. 2003) (citing *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)). Significantly, the Court distinguished several opinions relied upon by O2 Micro because "neither case involved customer suits." *Id.* (distinguishing *Super Sack*, 57 F.3d 1054 (Fed. Cir. 1995) and *Intellectual Property Dev., Inc. v. TCI Cablevisions of California*, 248 F.3d 1333 (Fed. Cir. 2001)).

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

11.

**PLTF'S OPPOSITION TO MOTION TO DISMISS**
**C 07-02363 CW**

Two recent opinions further demonstrate that O2 Micro's persistent attacks on an MPS customer support declaratory jurisdiction, regardless of the existence of a formal indemnity agreement. *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 2007 WL 205559, at *4 (E.D. Wis. Jan. 24, 2007) [*Global I*]; *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 2007 WL 1394154 (E.D. Wis. May 11, 2007) [*Global II*]. Central to Global's argument in both cases was its covenant not to sue WS. Global argued (as O2 Micro does here) that the covenant eliminated any controversy between the parties over the patent at issue.[6] In *Global I*, decided before the Federal Circuit acknowledged that *MedImmune* overruled its two-prong test, Global's motion to dismiss was denied. The court agreed that a case or controversy still existed because Global was threatening WS's customers with suit for infringement over the same patent. *Global I*, at *2. The court held jurisdiction was proper because WS had agreed to indemnify its customers, thereby exposing WS to legal harm. *Id.* at *3.

In response to *Global I*, Global amended its covenant not to sue to include customers indemnified by WS. *Global II*, 2007 WL 1394154, at *2. The amended covenant directly addressed the *Global I* opinion and should have extinguished any case or controversy. However, the court again denied Global's motion to dismiss, relying on the new standard announced by *MedImmune,* as clarified by the Federal Circuit in *SanDisk* and *Teva*. *Id.* at *3-4. The court held jurisdiction remained proper because Global's threats were causing injury to WS in the form of potential loss of customers and reputation. *Global II*, 2007 WL 1394154, at *4 ("Beyond the injury that might arise from having to indemnify customers, WS faces the loss of its customer base and reputation in these circumstances."). In addition, even without an indemnity agreement, WS could still face liability from its customers under state law. *Id.* Considering all the circumstances, the court decided the best approach was to let the parties clear the air so that Global would stop its "scare-the-customer-and-run tactics that infect the competitive environment

---

[6] Indeed, the facts in the instant case establish a even more compelling case for jurisdiction. In *Global I*, the parties did not dispute that the stipulation extinguished Global's ability to sue WS itself on the patent. 2007 WL 205559, at *2. By contrast, MPS and O2 Micro dispute the impact of the *Oakland II* stipulation on O2 Micro's ability to sue MPS on products not explicitly mentioned.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

12.   **PLTF'S OPPOSITION TO MOTION TO DISMISS
C 07-02363 CW**

of the business community with uncertainty and insecurity." *Id.* at *5 (quoting *Arrowhead Indus. Water*, 846 F.2d at 735). The same approach should be adopted here.

### C. This Is the Proper Court to Resolve this Dispute; Any Other Choice Would Reward O2 Micro's Continued Forum Shopping.

A court's discretion to grant declaratory relief "should be liberally exercised to effectuate the purposes of the Declaratory Judgment Act and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F.Supp.2d 779, 784 (E.D. Va. 2007). It is undisputed that this Court may decline to exercise its jurisdiction over a properly brought declaratory judgment action. However, a district court must have good reason for doing so. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) ("the district court's discretion is not unfettered. A district court, for example, cannot decline to entertain [a declaratory judgment] action as a matter of whim or personal disinclination."). No good reason exists for this Court to decline to hear MPS's claims. Rather, both the purpose of the Declaratory Judgment Act and judicial economy[7] counsel toward resolving this controversy before this Court.

This Court is the most appropriate forum for resolving the dispute between the parties. As outlined above, the '129 Patent is intimately related to two patents previously litigated before this Court. The '129 Patent is a continuation of the '722 Patent, which in turn is a continuation of the '615 Patent. The patents share a priority date and have a common specification. In 2004, this Court held that MPS did not infringe claims of the '615 Patent, the grandparent of the '129 Patent. (Brigham Decl., Ex 1.) More recently, this Court presided over a two-week trial resulting in a jury verdict that all asserted claims of the '722 Patent were invalid as obvious and based on the on-sale bar. (Brigham Decl., Ex. 2.) The Court will conduct a bench trial on MPS's inequitable conduct claim related to the '722 Patent next month.

---

[7] O2 Micro argues that considering MPS's claims "would only lead to a waste of judicial resources." (Mot. at 12.) Quite frankly, O2 Micro lacks credibility to advocate for judicial economy. With a suit already pending in this Court on the '722 Patent, O2 Micro brought its related '129 Patent claims by filing a new suit in Texas. This Court later recognized O2 Micro's strategy for what it was—forum shopping. (Brigham Decl., Ex. 9 at 7-8) ("If either party has engaged in forum shopping, it is O2 Micro, which chose to sue in Texas at a time when it had two lawsuits against MPS pending in this District.")

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

13.

**PLTF'S OPPOSITION TO MOTION TO DISMISS
C 07-02363 CW**

Because of the similarities across the patents, this litigation will raise similar issues. The Court's familiarity with the common invalidity and inequitable conduct positions will promote judicial economy and advance an equitable result. Highlights of this Court's substantial experience with the patent family includes:

- Granting non-infringement of the '615 Patent;
- Subsequent finding of collateral estoppel precluding O2 Micro from enforcing the '615 Patent against other MPS customers;
- Pending unfair competition claims based on O2 Micro's bad faith efforts to use the '615 Patent to improve its market position;
- Recent completion of its second trial involving the accused patents and/or technology; and
- Granting summary judgment that O2 Micro is not entitled to damages for any infringement of any of these three patents.

This Court is also well-versed on the evidence related to the invalidity and unenforceability of the '129 Patent. There is substantial overlap between the prior art relevant to the '722 and '129 Patents. Having just completed a two-week trial involving the '722 Patent resulting in an invalidity verdict, this Court is already familiar with evidence MPS intends to use to invalidate the '129 Patent in this litigation. Furthermore, there is substantial overlap between MPS's '722 Patent and '129 Patent inequitable conduct claims.

In short, this Court has developed an extensive understanding of the parties, the asserted patents, the technology, and the legal and evidentiary arguments related to this dispute. The interests of judicial economy, fairness, and justice all counsel toward having this Court resolve MPS's claims.

## VI. CONCLUSION

For the foregoing reasons, O2 Micro's motion should be denied.

| | | |
|---|---|---|
| 1 | Dated: July 26, 2007 | COOLEY GODWARD KRONISH LLP |
| 2 | | |
| 3 | | By: */s/ Matthew J. Brigham* |
| 4 | |      Matthew J. Brigham |

THOMAS J. FRIEL, JR. (80065)
(tfriel@cooley.com)
MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
MATTHEW P. GUBIOTTI (241833)
(mgubiotti@cooley.com)
COOLEY GODWARD KRONISH LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA  94306
Telephone:      (650) 843-5000
Facsimile:       (650) 857-0663

JAMES P. BROGAN (155906)
(jbrogan@cooley.com)
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO  80021-8023
Telephone:      (720) 566-4000
Facsimile:       (720) 566-4099

BRIAN E. MITCHELL (190095)
(bmitchell@cooley.com)
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:      (415) 693-2000
Facsimile:       (415) 693-2222

Attorneys for Plaintiff Monolithic Power Systems, Inc.

756437/PA

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

15.

**PLTF'S OPPOSITION TO MOTION TO DISMISS**
**C 07-02363 CW**