# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| (1) O2 MICRO INTERNATIONAL LIMITED, | § |
| Plaintiff, | § Cas e No. 2:05-CV-00323-TJW-CE |
| v. | § Judge: Hon. Charles Everingham IV |
| (1) HON HAI PRECISION INDUSTRY CO., LTD. a/k/a FOXCONN, and (2) AMBIT MICROSYSTEMS CORPORATION, | § |
| Defendants. | § |

**PLAINTIFF O2 MICRO INTERNATIONAL LIMITED'S SUR-REPLY TO
DEFENDANT HON HAI PRECISION INDUSTRY CO., LTD.'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    SUMMARY JUDGMENT OF NONINFRINGEMENT ON THE '615 PATENT
      CONSTITUTES UNDULY BROAD RELIEF IN LIGHT OF HON HAI'S NEWLY
      DISCOVERED INFRINGING PRODUCTS. .................................................................. 1

II.   HON HAI'S IMPLIED LICENSE/PATENT EXHAUSTION ARGUMENT
      DOES NOT APPLY TO O2 MICRO'S STIPULATED DISMISSAL OF THE '129
      PATENT IN THE CALIFORNIA ACTION. .................................................................. 3

III.  HON HAI FAILS TO MEET ITS BURDEN OF SHOWING BY CLEAR AND
      CONVINCING EVIDENCE THE EXISTENCE OF A BEST MODE VIOLATION. ..... 8

      A.    Judge Wilken Already Found That Dr. Lin Did Not Need to Disclose the
            CIUH8D Transformer to Satisfy the Best Mode Requirement. ............................... 8

      B.    Dr. Lin's Testimony Confirms That He Did Not Believe That the CIUH8D
            Transformer Was Part of the Best Mode for Practicing the Patents-in-Suit......... 10

IV.   HON HAI OFFERS NO FACTUAL EVIDENCE TO SUPPORT ITS MOTION FOR
      SUMMARY JUDGMENT OF INVALIDITY ON THE '722 AND '129 PATENTS .... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*B. Braun Med., Inc. v. Abbott Labs.,*
    124 F.3d 1419 (Fed. Cir. 1997)................................................................ 6, 7

*Bayer AG v. Schein Pharms., Inc.,*
    301 F.3d 1306 (Fed. Cir. 2002)............................................................... 10, 11

*Bell & Howell Document Mgmt. v. Altek Sys.,*
    132 F.3d 701 (Fed. Cir. 1997).................................................................. 12

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,*
    402 U.S. 313 (1971)................................................................................ 2, 3

*Chemcast Corp. v. Arco Indus. Corp.,*
    913 F.2d 923 (Fed. Cir. 1990).................................................................. 12

*Comair Rotron, Inc. v. Nippon Densan Corp.,*
    49 F.3d 1535 (Fed. Cir. 1995).................................................................. 2

*Cyrix Corp. v. Intel Corp.,*
    846 F. Supp. 522 (E.D. Tex. 1994)........................................................... 6

*Dell Computer Corp. v. Rodriguez,*
    390 F.3d 377 (5th Cir. 2004)................................................................... 7

*Hadley v. United States,*
    45 F.3d 1345 (9th Cir. 1995)................................................................... 14

*High Concrete Structures, Inc. v. New Enterprise Stone and Lime Co.,*
    377 F.3d 1379 (Fed. Cir. 2004)............................................................... 11

*Intel Corp. v. ULSI Sys. Tech., Inc.,*
    995 F.2d 1566 (Fed. Cir. 1993)............................................................... 6

*Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001)............................................................... 4

*Jacobs v. Nintendo of Am., Inc.,*
    370 F.3d 1097 (Fed. Cir. 2004)............................................................... 4, 5

*LG Elecs., Inc. v. Bizcom Elecs., Inc.,*
    453 F.3d 1364 (Fed. Cir. 2006)............................................................... 6

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   Civ. No. 98-80-SLR, 2004 U.S. Dist. LEXIS 26756 (D. Del. Dec. 17, 2004) ........................... 2

*MetroPCS Communs., Inc. v. Leap Wireless Int'l, Inc.*,
   No. 3:06-CV-1399-D, 2007 WL 188672 (N.D. Tex. Jan. 23, 2007) ......................................... 7

*Minco, Inc. v. Combustion Eng'g, Inc.*,
   95 F.3d 1109 (Fed. Cir. 1996) .................................................................................................. 11

*Printy v. Crochet & Borel Servs.*,
   196 F.R.D. 46 (E.D. Tex. 2004) ................................................................................................ 14

*Safetcare Mfg., Inc. v. Sizewise Rentals, LLC*,
   No. H-05-676, 2006 U.S. Dist. LEXIS 60154 (S.D. Tex. Aug. 24, 2006) .............................. 14

*Solomon v. Kimberly-Clark Corp.*,
   216 F.3d 1372 (Fed. Cir. 2000) ................................................................................................ 12

*Spectra-Physics, Inc. v. Coherent, Inc.*,
   827 F.2d 1524 (Fed. Cir. 1987) ................................................................................................ 12

*Spindelfabrik Suessen-Schur Stahlecker & Grill, GmbH v. Schubert & Salzer Maschinenfabrik
   Aktiengesellschaft*,
   829 F.2d 1075 (Fed. Cir. 1987) .................................................................................................. 4

*Synopsys, Inc. v. Ricoh Co., Ltd.*,
   343 F. Supp. 2d 883 (N.D. Cal. 2003) ........................................................................................ 7

*Transco Prods. Inc. v. Performance Contracting, Inc.*,
   38 F.3d 551 (Fed. Cir. 1994) ...................................................................................................... 9

*Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*,
   112 F.3d 1137 (Fed. Cir. 1997) .................................................................................................. 8

O2 Micro submits this Sur-Reply in response to the arguments raised in Hon Hai's Reply (Doc. No. **154**). For the reasons stated in this brief and in O2 Micro's Opposition, Hon Hai's Motion for Summary Judgment (Doc. No. **134**) should be denied.

## I. SUMMARY JUDGMENT OF NONINFRINGEMENT ON THE '615 PATENT CONSTITUTES UNDULY BROAD RELIEF IN LIGHT OF HON HAI'S NEWLY DISCOVERED INFRINGING PRODUCTS.

O2 Micro's proposed amendment of its Infringement Contentions (Doc. No. **156**) is highly relevant to Hon Hai's request for summary judgment of noninfringement as to the '615 patent. In its Motion, Hon Hai argued for a much broader application of collateral estoppel than it apparently does now in its Reply. Specifically, Hon Hai initially asked this Court to "grant summary judgment that O2 Micro is collaterally estopped from asserting the '615 patent against all of the products accused by O2 Micro of infringement in this litigation." (Mot. at 6.)

In response, O2 Micro properly opposed Hon Hai's Motion because it appeared that Hon Hai was seeking a judgment of noninfringement as to the '615 patent as to *all of its accused products* based on the doctrine of collateral estoppel, and not just those products that incorporate MPS inverter controllers previously adjudged not to infringe the '615 patent in the Northern District of California infringement action against MPS (the "MPS '615 patent case").[1] As O2 Micro pointed out in its Opposition, such a ruling would be overbroad because it fails to take into account that O2 Micro's infringement claims are not limited to Hon Hai products using noninfringing MPS inverter controllers, and that O2 Micro is seeking leave from the Court to identify additional Hon Hai accused products in its Infringement Contentions.

In addition, O2 Micro's motion for leave to amend its infringement contentions is not merely a "hypothetical" motion, as Hon Hai suggests. O2 Micro has since filed that motion, on

---

[1] Indeed, Hon Hai's Motion seeks to include products that incorporate the MP1010 inverter controller within the ambit of the doctrine even though the MP1010 was not one of the controllers that Judge Wilken held not to infringe. (Mot. at 3 n.1.)

July 9, 2007 (Doc. No. **156**).  The requested amendments include the identification of the

following Hon Hai inverter modules as products accused of infringing the '615 patent: (1)

modules incorporating Maxim Integrated Products, Inc.'s MAX8759 controller and (2) modules

incorporating MPS's MP1028, MP1035, MP1038, and MP1060/61 controllers.  (Doc. No. **156**,

Ex. 1 at Exs. A and B.)  None of the inverter controllers used in these newly discovered

infringing products were previously considered by Judge Wilken in granting summary judgment

of non-infringement on the '615 patent.[2]  Collateral estoppel therefore does not apply to these

newly identified accused products.[3]

      Hon Hai makes the conclusory argument that any newly identified MPS inverter

controllers accused of infringement are not materially different from the MPS controllers that

Judge Wilken found not to infringe the '615 patent, and therefore collateral estoppel should

apply to these controllers as well.  In view of the procedural facts that produced the prior

noninfringement ruling, Hon Hai's position is incorrect as a matter of law.  "[T]he imposition of

collateral estoppel requires that the party's 'full and fair' litigation opportunity pass muster

'procedurally, substantively and evidentially[.]"  *Comair Rotron, Inc. v. Nippon Densan Corp.*,

49 F.3d 1535, 1538 (Fed. Cir. 1995) (quoting *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,

402 U.S. 313, 333 (1971)).  *See also Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys.*,

*Inc.*, Civ. No. 98-80-SLR, 2004 U.S. Dist. LEXIS 26756, at *8-9 (D. Del. Dec. 17, 2004)

(holding that the application of collateral estoppel requires a "fairness determination" in which

the party resisting its application should be "permitted to demonstrate . . . that he did not have 'a

---

[2] Consistent with its position with respect to MPS inverter controllers that *are* the subject of Judge Wilken's now affirmed summary judgment of noninfringement, O2 Micro also requests in its motion to amend to drop Hon Hai products using the MP1015 and MP1016 controllers from the list of identified products accused of infringing the '615 patent.  Therefore, since O2 Micro has withdrawn its contentions as to these products in its motion to amend, Hon Hai's Motion is substantively moot as far as these products are concerned.

[3] Hon Hai speculates in its Reply that O2 Micro will not succeed in its motion for leave to amend its infringement contentions.  O2 Micro disagrees but rather than argue the substantive merits of that issue here, it refers the Court to the papers in support of its motion.  (*See* Doc. No. **156**.)

fair opportunity procedurally, substantively and evidentially to purse his claim the first time.'"

(quoting *Blonder-Tongue*, 402 U.S. at 333)). O2 Micro submits that it did not have such a full

and fair opportunity to contest the issue of noninfringement procedurally, substantively and

evidentially in the MPS '615 patent case, and most certainly not with respect to any MPS

inverter controllers that were not before Judge Wilken for consideration.

Even if Hon Hai were correct on the law, it nevertheless offers no evidentiary support for

its contention that the prior noninfringement ruling should be given collateral estoppel effect as

to newly identified MPS inverter controllers. By contrast, O2 Micro in its Opposition presented

evidence that the newly identified MPS controllers differ in at least two significant ways from

the MPS controllers that were at issue in the MPS '615 patent case before Judge Wilken. (Opp.

at 2.) This evidence, at the very least, creates a genuine issue of material fact as to whether the

newly identified MPS controllers are materially different from the MP1015 and MP1016.

Collateral estoppel therefore cannot and should not apply.

## II. HON HAI'S IMPLIED LICENSE/PATENT EXHAUSTION ARGUMENT DOES NOT APPLY TO O2 MICRO'S STIPULATED DISMISSAL OF THE '129 PATENT IN THE CALIFORNIA ACTION.

The doctrine of patent exhaustion does not prevent O2 Micro from suing Hon Hai for

infringement of the '129 patent. Hon Hai's argument is flawed because it rests on the false

premise that the Stipulated Dismissal entered in the Northern District of California infringement

action against MPS (the "MPS '722 patent case") grants MPS an unrestricted, royalty-free

license to sell MPS inverter controllers and evaluation boards listed therein to customers such as

Hon Hai, with the concomitant right—essentially a sublicense—for customers to build infringing

products using such controllers and boards. This is pure fiction.

The Stipulated Dismissal does not confer on MPS the right to practice the '129 patent or to sublicense its customers to do so. Rather, it merely contains a promise by O2 Micro not to sue MPS for infringing the '129 patent with certain products. The fact that O2 Micro has agreed not to sue MPS does not transform MPS's products into licensed products; rather, they remain infringing products which others downstream may not use without incurring liability for infringement. All that the Stipulated Dismissal provides to MPS is personal immunity from suit for these particular acts of infringement.

The Federal Circuit has referred to O2 Micro's promise or covenant as a "bare" license that does not affirmatively convey any patent rights and is personal in nature. *See Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 248 F.3d 1333, 1345 (Fed. Cir. 2001) (applying the term "bare license" to a "a covenant by the patent owner not to sue the licensee for making, using, or selling the patented invention"); *Spindelfabrik Suessen-Schur Stahlecker & Grill, GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 829 F.2d 1075, 1081 (Fed. Cir. 1987) (describing a bare license as "nothing more than a promise by the licensor not to sue the licensee"). It is quite different from a more fulsome license that affirmatively conveys patent rights, as the Federal Circuit explained in *Jacobs v. Nintendo of America, Inc.,* 370 F.3d 1097, 1101 (Fed. Cir. 2004), a case cited by Hon Hai in its Motion.

In *Jacobs,* the patentee entered into a settlement agreement with Analog Devices, Inc. to resolve a dispute regarding the patentee's '958 patent. Paragraph 3 of the settlement agreement stated that the patentee "grants Analog an irrevocable, perpetual, fully paid up license to take any actions" that would, but for the license, constitute infringement of the '958 patent. 370 F.3d at 1098. Paragraph 5 of the settlement agreement stated that the patentee "covenants not to sue Analog for any alleged infringement or violation of the '958 patent." *Id.* at 1098-99.

Subsequently, the patentee sued Nintendo for infringement of the '958 patent based on Nintendo's use of Analog parts. In defense, Nintendo argued that it had an implied license under the patentee's settlement agreement with Analog.

The Federal Circuit held that Nintendo did in fact have an implied license to use Analog's parts under the settlement agreement, but concluded that this implied license resulted from the language in paragraph 3 of the settlement agreement, and *not* the paragraph 5 covenant not to sue. *Jacobs,* 370 F.3d at 1101. Furthermore, the court emphasized the fact that the rights conferred under the paragraph 3 licensing provision were very different from the rights conferred under the paragraph 5 covenant not to sue:

> [P]aragraph 5 already ensures Analog freedom from suit "for any alleged infringement or violation of the '958 patent." If all that Jacobs intended to do through the settlement agreement was to free Analog of its liability for infringement, paragraph 5 of the agreement (the covenant not to sue) would have been fully sufficient to serve that purpose. Paragraph 3, however, goes much further by granting Analog an affirmative right to engage in the manufacture and sale of accelerometers to be used in tilt-sensitive control boxes. That grant comes without restriction of any kind.

*Id.* at 1101. In sum, the Federal Circuit recognized that a covenant not to sue is not the same as a grant of an affirmative right to engage in the manufacture and sale of infringing products. Nintendo prevailed on its implied license defense only because of the grant of an irrevocable, perpetual, fully paid-up license to Analog under Paragraph 3. In this case, there is no comparable provision in O2 Micro's Stipulated Dismissal.

The distinction drawn in *Jacobs* between a license granting affirmative rights to practice the patent and a bare license or covenant not to sue is instructive here because all of the patent exhaustion cases cited by Hon Hai involved situations in which a patentee granted an express

license to another party to practice a patent, rather than a covenant not to sue.[4]  For example, in

*Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566 (Fed. Cir. 1993), Intel granted Hewlett-

Packard an "irrevocable, retroactive, nonexclusive, world-wide, royalty-free license" to Intel's

patents.  *Id.* at 1567.  Based on that broad licensing language, the Federal Circuit held that patent

exhaustion barred Intel from suing ULSI for patent infringement based on products that Hewlett-

Packard had manufactured for ULSI.  *Id.* at 1568-69.

Similarly, in *Cyrix Corp. v. Intel Corp.*, 846 F. Supp. 522 (E.D. Tex. 1994), the other

main patent exhaustion case relied on by Hon Hai, Intel granted Texas Instruments and SGS-

Thomson Microelectronics licenses "to make, to have made, to use, to sell, to lease and to

otherwise dispose of 'Licensed Products.'"  *Id.* at 539.  This Court found that under this licensing

language, Intel could not sue Cyrix for infringement based on microprocessors purchased by

Cyrix from Texas Instruments or SGS-Thomson.  *Id.* at 539-40.  Thus, *Intel* and *Cyrix* are both

easily distinguishable in that it was the patentee's grant of a broadly worded patent license, rather

than a mere covenant not to sue, that supported a defense of patent exhaustion.

Moreover, the patent exhaustion doctrine (also known as the first sale doctrine) cannot

arise from a mere covenant not to sue because it requires a showing that the patentee has allowed

unconditional sales of patented items to be made, in exchange for valuable consideration paid by

the licensee.  *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1369 (Fed. Cir. 2006) ("It is

axiomatic that the patent exhaustion doctrine, commonly referred to as the first sale doctrine, is

triggered by an unconditional sale.").  By allowing an unconditional sale to be made, the patentee

"exhausts" its right to control further downstream use or sale of the patented item.  *See B. Braun*

*Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997).  In other words, the

---

[4] Indeed, O2 Micro has been unable to find a single case in which the doctrine of patent exhaustion has been applied to the grant of a covenant not to sue.

unconditional sale of a patented item reflects the fact that "the patentee has bargained for, and received, an amount equal to the full value of the goods." *Id.* Under such circumstances, it would be unfair to allow the patentee to extract further compensation from downstream purchasers and/or users of the patented item.

O2 Micro's covenant not to sue MPS on the '129 patent does not permit MPS to make unconditional sales of patented products. Not only does the covenant lack the required words of grant with respect to affirmative rights to practice the '129 patent but it also contains words of restriction that *expressly negate* any notion of an unconditional sale: O2 Micro "does not intend this stipulation to apply to any parties other than those expressly identified herein." (Mot., Ex. F at 1:15-16.) This language unequivocally evidences O2 Micro's intent to reserve its right to sue anyone, including customers of MPS,[5] who was not a party to the Stipulated Dismissal for infringement of the '129 patent.[6] In view of this language expressly disclaiming the extension or transfer of a "bare license" to MPS customers who are not parties to the Stipulated Dismissal, Hon Hai cannot possibly prove that it has purchased any MPS product in an unconditional sale.

Finally, Hon Hai cannot credibly argue that MPS receives no value from a promise by O2 Micro not to sue MPS for infringement of the '129 patent if customers such as Hon Hai who use MPS products can still be sued for infringement of the '129 patent. The covenant has value to MPS in that it immunizes *MPS* from suit for its acts of infringement. That is what a "bare

---

[5] Indeed, it is not uncommon for a patentee who has covenanted not to sue a party for infringement of a patent to subsequently sue the party's customers for infringement. *See, e.g., Synopsys, Inc. v. Ricoh Co., Ltd.*, 343 F. Supp. 2d 883, 888-89 (N.D. Cal. 2003); *see also MetroPCS Communs., Inc. v. Leap Wireless Int'l, Inc.*, No. 3:06-CV-1399-D, 2007 WL 188672, at *3-4 (N.D. Tex. Jan. 23, 2007) (noting that patentee's covenant not to sue wireless service provider for infringement of patent did not preclude patentee from asserting infringement claims against provider's customers).

[6] Incredibly, Hon Hai argues that the Court should ignore this language in the Stipulated Dismissal as irrelevant. (Reply at 5.) Its argument is meritless because it violates the basic tenet of contract law that the intent of the parties as reflected in the express language of the contract is what determines the scope of the agreement. *See Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 388 (5th Cir. 2004) ("The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.").

license" does—it grants the licensee personal and nontransferable immunity from suit. But MPS's patented products remain unauthorized, infringing products, and customers who buy them from MPS do so at their own risk.

## III.   HON HAI FAILS TO MEET ITS BURDEN OF SHOWING BY CLEAR AND CONVINCING EVIDENCE THE EXISTENCE OF A BEST MODE VIOLATION.

Hon Hai continues to ignore two key facts that are fatal to its Motion for summary judgment on the best mode issue. First, when its counsel presented virtually identical best mode arguments to Judge Wilken on summary judgment, Judge Wilken denied the motion and held that Dr. Lin was not required to disclose the CIUH8D transformer in his patent applications in order to satisfy the best mode requirement. Second, the most relevant evidence in the case on the best mode issue is the deposition testimony of Dr. Lin regarding what he, as the inventor on the patents-in-suit, considered the CIUH8D transformer to be part of any best mode for practicing his invention. Hon Hai therefore cannot meet its burden of showing that there is no genuine issue of material fact on the best mode issue—an affirmative defense that, importantly, Hon Hai has the burden of proving with clear and convincing evidence. *See Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1144 (Fed. Cir. 1997).

### A.   Judge Wilken Already Found That Dr. Lin Did Not Need to Disclose the CIUH8D Transformer to Satisfy the Best Mode Requirement.

Not surprisingly, Hon Hai has tried to avoid any mention of Judge Wilken's February 8, 2007 order denying summary judgment on the best mode issue in the MPS '722 patent case. Hon Hai's reason for doing so is understandable (but not excusable) because Judge Wilken's order has persuasive value with respect to the disposition of this Motion. After considering virtually the same evidence and arguments as those presented here by Hon Hai on the best mode issue, Judge Wilken held that the CIUH8D transformer was not part of the invention claimed in

the '722 patent, and thus Dr. Lin was under no obligation to disclose it in the application for the

'722 patent. Specifically, Judge Wilken concluded:

> Although the CIUH8D transformer is a superior product, it is not part of the
> claimed invention. The claimed invention is not a patent on a transformer.
> Rather, the claimed invention is directed to power switching and feedback control
> circuit circuitry within a power controller. It does not claim, or require, any
> particular transformer specification, other than having a primary and a secondary
> side, because it was designed to be applied to many different applications and
> products. Dr. Lin designed the CIUH8D transformer for a particular application;
> it is not part of the claimed invention and, therefore, it need not have been
> disclosed.

(Opp., Ex. J at 8:24-26.) Later, Judge Wilken held that this ruling applied equally to the '615

patent.[7] (*Id.*, Ex. K at 2:22-3:2.)

Judge Wilken's rulings directly contradict several arguments in Hon Hai's motion papers.

First, although Hon Hai asserts that the CIUH8D transformer is a key part of Dr. Lin's claimed

invention, Judge Wilken squarely rejected that argument, and instead held, as a matter of law and

claim construction, that "the CIUH8D transformer . . . is not part of the claimed invention."

(Opp., Ex. J at 8:24-26.) Second, although Hon Hai vigorously argues that the asserted claims

all require a transformer, Judge Wilken held as a corollary proposition of law that "the claimed

invention is directed to power switching and feedback control circuit circuitry within a power

controller. It does not claim, or require, any particular transformer specification, other than

having a primary and a secondary side, because it was designed to be applied to many different

applications and products." (*Id.*) Third, and most importantly, although Hon Hai argues that Dr.

Lin had a duty to disclose the CIUH8D transformer as the best mode of practicing his claimed

invention, Judge Wilken disagreed and found that "Dr. Lin designed the CIUH8D transformer

---

[7] This ruling should also apply equally to the '129 patent, which is based on the same original application as the '722 and '615 patents. *See Transco Products Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 557 (Fed. Cir. 1994) ("the date for evaluating a best mode disclosure in a continuing application is the date of the earlier application with respect to common subject matter").

for a particular application; it is not part of the claimed invention and, therefore, it need not have been disclosed." (*Id.*)

Realizing the futility of attacking Judge Wilken's summary judgment ruling head-on, Hon Hai instead focuses on the trial in the MPS '722 patent case, and MPS's purportedly "strategic decision" not to try presenting a best mode defense at trial. But Hon Hai's *post hoc* rationalizations of what transpired during the MPS trial are merely a distraction from the more important fact that ***virtually all the evidence*** that Hon Hai relies on regarding the CIUH8D transformer in its Motion is the same evidence that ASUSTek and MPS presented in their summary judgment motions in the MPS '722 patent case, evidence which Judge Wilken rejected as insufficient to support a summary judgment of a best mode violation.[8] Notably, Hon Hai has not identified any error in Judge Wilken's reasoned decision. Therefore there is no good reason why this Court should depart from Judge Wilken's previous holding that Dr. Lin was not required to disclose the CIUH8D transformer to satisfy the best mode requirement.

**B.      Dr. Lin's Testimony Confirms That He Did Not Believe That the CIUH8D Transformer Was Part of the Best Mode for Practicing the Patents-in-Suit.**

Hon Hai also continues to ignore key testimony from Dr. Lin that, at a minimum, creates a genuine issue of material fact on the best mode issue. The importance of Dr. Lin's testimony to the best mode issue cannot be overstated. As the Federal Circuit has held, the best mode issue "is a purely subjective matter depending upon what the inventor actually believed at the time the application was filed." *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1314 (Fed. Cir. 2002). If the inventor did not contemplate a best mode of practicing the claimed invention at the time the application for the patent was filed, then there is simply no basis for asserting a best mode

---

[8] Hon Hai's reference in its Reply to a draft jury instruction on the best mode issue defies understanding. (*See* Reply at 10 & Ex. D at 17-18.) The draft instruction was specifically rejected by Judge Wilken because she would not allow the best mode issue to go to the jury. (*See* Opp., Ex. M at 1441:1-3; Ex. N at 1531:10-15, 1542:3-5.)

violation. *Id.* at 1316. Indeed, the Federal Circuit has stressed the importance of the inventor's state of mind in determining whether or not a best mode violation has occurred. *Id.* at 3120 (first prong of the best mode analysis "is highly subjective and focuses on the inventor's state of mind as of the date of filing the application"); *High Concrete Structures, Inc. v. New Enterprise Stone and Lime Co.*, 377 F.3d 1379, 1382 (Fed. Cir. 2004) ("Violation of the best mode requirement is a question of fact, for it depends on the applicant's intent."); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1115 (Fed. Cir. 1996) (holding that "the inventor's intent controls" with respect to the best mode requirement).

As Dr. Lin testified in his deposition, he did not consider the CIUH8D transformer design to be relevant to the best mode for practicing the '722 patent when he filed the application for the patent. (*See* Opp., Ex. Q at 247:20-249:17.) Rather, since his invention was directed towards power control circuitry intended to drive any load in a variety of different applications, he did not consider the CIUH8D transformer to be the best mode of practicing his invention. (*Id.*) Dr. Lin's testimony thus compels a finding that he did not have a subjective belief that the CIUH8D transformer was part of the best mode of practicing his invention at the time of his patent application.

Hon Hai attempts to marginalize Dr. Lin's testimony regarding what he believed to be his invention, arguing that Dr. Lin's subjective belief regarding the scope of his invention is irrelevant to the best mode analysis. Hon Hai is wrong as a matter of law. As discussed above, the Federal Circuit has emphasized the importance of the inventor's subjective state of mind in determining whether the best mode requirement has been satisfied. *See Bayer*, 301 F.3d at 3120; *High Concrete*, 377 F.3d at 1382; *Minco*, 95 F.3d at 1115. The best mode issue requires a *factual inquiry* into the inventor's subjective intent. Dr. Lin's testimony is therefore highly

relevant and must be taken into consideration in determining whether there is a genuine issue of material fact.

The cases cited in Hon Hai's Reply do not hold to the contrary. *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372 (Fed. Cir. 2000), and *Bell & Howell Document Management v. Altek Sys.*, 132 F.3d 701 (Fed. Cir. 1997), both stand for the **unrelated** proposition that the inventor's testimony is accorded little weight when determining how terms are to be interpreted during claim construction. These cases do not refute the rule discussed above that in examining an inventor's compliance with the best mode requirement, the inquiry appropriately focuses on the inventor's subjective belief at the time the patent application is filed.

Hon Hai's reliance on *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923 (Fed. Cir. 1990) and *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987), is also misplaced. In both cases, it was established that the inventor had in mind only one preferred mode for practicing the claimed invention at the time of filing of the patent application. *See Chemcast*, 913 F.2d at 930; *Spectra-Physics*, 827 F.2d at 1536. Here, Dr. Lin did not have a best mode in mind for his inventions, which broadly cover power control circuitries intended to drive different types of loads in a variety of different applications. Because the CIUH8D transformer was designed only for a specific application in a specific commercial product, Dr. Lin did not consider it to be the best mode of practicing his claimed invention. (*See* Opp., Ex. Q at 247:20-249:17.)

Finally, Hon Hai also mischaracterizes Dr. Lin's testimony when it asserts that, as of 2004, "the CIUH8D-series transformer was the *only* transformer that Lin had ever recommended be used with OZ960 controller circuit." (Reply at 9.) In the deposition relied upon by Hon Hai in support of this assertion, Dr. Lin was testifying about recommendations made by **O2 Micro**

regarding transformers to be used with the OZ960, and *not* by Dr. Lin himself. (Reply, Ex. B at 714:10-716:3.) Moreover, these recommendations related to the use of a transformer in a *commercial* application, as opposed to Dr. Lin's patented invention. These distinctions are critical, because as discussed above, the best mode inquiry focuses on what the individual inventor, as opposed to the company to which the patent is later assigned, regarded as the best way of carrying out his invention, as opposed to a specific commercial product. Moreover, the cited testimony is completely unhelpful because it does not specify *when* the recommendations were made. (*Id.*) Since Hon Hai must show that Dr. Lin contemplated a best mode for his invention at a very specific time – namely, at the time the application for the patent was filed – the testimony cited by Hon Hai falls far short of proving a best mode violation.

## IV.    HON HAI OFFERS NO FACTUAL EVIDENCE TO SUPPORT ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY ON THE '722 AND '129 PATENTS

Hon Hai incorrectly asserts that O2 Micro does not oppose on the merits its Motion for summary judgment that the '722 and '129 patent claims are anticipated by the Goodenough Reference. To the contrary, O2 Micro's Opposition points out that Hon Hai, knowing full well that O2 Micro contests on the merits the nature and characterization of the disclosure in the Goodenough Reference, seeks instead to prevail on the invalidity issue based on a procedural technicality. This Court should not grant Hon Hai's Motion because it would preclude a full and fair presentation of the invalidity issue on the merits.

Indeed, Hon Hai's Motion makes clear that it has no interest whatsoever in having this Court decide the invalidity issue on the merits. Hon Hai offers no palpable factual evidence to support its contention that the Goodenough Reference anticipates the asserted claims of the '722 and '129 patents. It does not explain where in the Goodenough Reference is there a disclosure of

any specific element of the asserted claims of the '722 and '129 patents. Nor does Hon Hai offer any expert testimony to support its contention that the Goodenough Reference is anticipating. Rather than presenting such evidence, Hon Hai tries to exploit to its advantage a minor discovery error that has caused Hon Hai no prejudice whatsoever. It is therefore ironic that Hon Hai accuses O2 Micro's Opposition to this Motion as being based on "gamesmanship."

Hon Hai improperly argues that this Court should ignore the harm that O2 Micro will suffer if it is not allowed to amend its responses to Hon Hai's requests for admission regarding the Goodenough Reference. This argument directly conflicts with the case law, which states that the court should take into consideration whether denying the withdrawal or amendment of a request for admission will detrimentally affect a party's ability to present the merits of its case. *See Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995); *Safetcare Mfg., Inc. v. Sizewise Rentals, LLC*, No. H-05-676, 2006 U.S. Dist. LEXIS 60154, at *6-7 (S.D. Tex. Aug. 24, 2006); *Printy v. Crochet & Borel Servs.*, 196 F.R.D. 46, 51 (E.D. Tex. 2004). The potential harm to O2 Micro's ability to present its case on the validity and infringement of the '722 and '129 patents is a particularly important factor to weigh here, since the grant of summary judgment based on admissions established by default is highly disfavored. *See Printy*, 196 F.R.D. at 50.

Finally, with respect to Hon Hai's assertion that it properly served the relevant requests for admission on O2 Micro, O2 Micro has already explained the circumstances surrounding its late receipt of Hon Hai's requests for admission in its Motion to Withdraw or Amend Its Responses to Hon Hai's 1st Set of Requests for Admission. (*See* Doc. No. **149**.) In the interest of brevity, O2 Micro will not repeat its explanation here.

For all of the reasons stated in the Opposition and in this Sur-Reply, Hon Hai's Motions for Summary Judgment should be denied.

DATED:  July 13, 2007                    Respectfully submitted,


By:   /s/ Otis W. Carroll w/permission by /s/ Henry C. Su
    Otis W. Carroll — Lead Attorney
    (State Bar No. 03895700)
    Ireland, Carroll & Kelley, P.C.
    6101 South Broadway, Suite 500
    P.O. Box 7879
    Tyler, TX 75711
    Telephone:  (903) 561-1600
    Facsimile:  (903) 561-1071
    Email:      nancy@icklaw.com

    S. Calvin Capshaw (State Bar No. 03783900)
    Elizabeth L. DeRieux (State Bar No. 05770585)
    Andrew Spangler (State Bar No. 24041960)
    Brown McCarroll LLP
    1127 Judson Road, Suite 220
    P.O. Box 3999
    Longview, Texas 75601-5157
    Telephone:  (903) 236-9800
    Facsimile:  (903) 236-8787
    Email:      ccapshaw@mailbmc.com
    Email:      ederieux@mailbmc.com
    Email:      aspangler@mailbmc.com

    Franklin Jones, Jr. (State Bar No. 00000055)
    Jones and Jones, Inc., P.C.
    201 West Houston Street
    P.O. Drawer 1249
    Marshall, TX 75671-1249
    Telephone:  (903) 938-4395
    Facsimile:  (903) 938-3360
    Email:      maizieh@millerfirm.com

    K.T. Cherian (California Bar No. 133967)
    Duane H. Mathiowetz (California Bar No. 111831)
    Henry C. Su (California Bar No. 211202)
    Howrey LLP
    525 Market Street, Suite 3600
    San Francisco, CA 94105
    Telephone:  (415) 848-4900
    Facsimile:  (415) 848-4999
    Email:      cheriank@howrey.com
    Email:      mathiowetzd@howrey.com
    Email:      suh@howrey.com

    Attorneys for Plaintiff
    O2 MICRO INTERNATIONAL LIMITED

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been

sent to the following counsel of record by ECF and/or electronic mail (for filings) or by

electronic mail and U.S. Mail (for discovery) on July 13, 2007.

Eric Hugh Findlay
Ramey & Flock
100 E Ferguson
Suite 500
Tyler, TX 75702-0629
Tel:     903-597-3301
Fax:     903-597-2413
Email: efindlay@rameyflock.com

Chad T. Nitta
James P. Brogan
Orion Armon
Cooley Godward Kronish LLP - Colorado
380 Interlocken Crescent
Suite 900
Broomfield, CO 80021
Tel:     720 566-4000
Fax:     720 566-4099
Email: cnitta@cooley.com
Email: jbrogan@cooley.com
Email: oarmon@cooley.com

Matthew J. Brigham
Timothy S. Teter
Cooley Godward Kronish LLP - Palo Alto
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Tel:     650 846-5000
Fax:     650 857-0663
Email: mbrigham@cooley.com
Email: teterts@cooley.com

Brian E. Mitchell
Thomas J. Friel, Jr.
Cooley Godward Kronish LLP - San Francisco
101 California Street
5th Floor
San Francisco, CA 94111-5800
Tel:     415 693-2237
Fax:     415-693-2222
Email: bmitchell@cooley.com
Email: tfriel@cooley.com

/s/ Henry C. Su
Henry C. Su