1  Henry C. Bunsow (SBN 060707)
   bunsowh@howrey.com
2  K.T. Cherian (SBN 133967)
   cheriank@howrey.com
3  Duane H. Mathiowetz (SBN 111831)
   mathiowetzd@howrey.com
4  Henry C. Su (SBN 211202)
   suh@howrey.com
5  HOWREY LLP
   525 Market Street, Suite 3600
6  San Francisco, California 94105
   Telephone: (415) 848-4900
7  Facsimile: (415) 848-4999

8  Attorneys for Defendant O2 Micro International Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>                 Plaintiff,<br><br>       vs.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>                 Defendant. | Case No. C 07-02363<br><br>**O2 MICRO INTERNATIONAL LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date: August 16, 2007<br>Time: 2:00 p.m.<br>Room: Courtroom 2, 4th Floor<br>Judge: Honorable Claudia Wilken |

## I. INTRODUCTION

MPS's Opposition identifies for the first time specific MPS products for which MPS seeks declaratory relief in this case: its new MP1008 half-bridge inverter controller, and MPS full-bridge inverter controllers marketed under the VION brand. (*See* Opp. at 3:16-19.) Because no actual case or controversy exists between O2 Micro and MPS as to these MPS products, this Court lacks subject matter jurisdiction over MPS's declaratory judgment claims.

MPS does not dispute that O2 Micro has never accused the MP1008 or any of MPS's VION brand products of infringing the '129 patent (or any other patent for that matter). Instead, MPS argues that, in light of O2 Micro's history of litigating its patents, it is *probable* that O2 Micro will eventually accuse these new MPS products of infringement. The federal courts are not empowered to address speculative claims of this nature, however. MPS essentially asks the Court to resolve the following question: "If O2 Micro were to ever make the assertion that the MP1008 or MPS full-bridge inverter controllers marketed under the VION brand infringe the '129 patent, would those products actually infringe the '129 patent?" This is exactly the sort of advisory opinion based on hypothetical facts that federal courts are prohibited from rendering under Article III of the Constitution. Because O2 Micro has never taken any position regarding whether these MPS products fall within the scope of the '129 patent, there is no real and live dispute here for the Court to resolve.

Under its interpretation of the law, any time MPS comes out with a new product, it would be entitled to seek a declaratory judgment that the product does not infringe O2 Micro's patents, regardless of whether O2 Micro has taken a legal position on the issue. MPS's reasoning is untenable because it flies in the face of the basic requirement of Article III and the Declaratory Judgment Act that the courts may only adjudicate cases in which there is an "actual controversy." If MPS's position were accepted, then the federal courts would be flooded with litigation on matters for which the dispute lies only in the imagination of the plaintiff. The Declaratory Judgment Act was not intended to be applied to such situations. Since the pleadings and evidence of record fail to identify any concrete dispute between O2 Micro and MPS concerning MPS's newly developed products, MPS's claims should be dismissed.

## II. ARGUMENT

### A. O2 Micro Has Never Taken Any Position With Respect to MPS's MP1008 or VION Brand Products.

MPS's Complaint failed to specify why it needs declaratory relief on the '129 patent, given that O2 Micro had previously agreed to dismiss with prejudice its pending claims of infringement of the '129 patent against MPS and not to assert the '129 patent against these MPS products again. In its Opposition, MPS articulates for the first time the specific relief it seeks: a declaration that its newly developed MP1008 half-bridge inverter controller and MPS full-bridge inverter controllers marketed under the VION brand do not infringe the '129 patent. (*See* Opp. at 3:16-19.) It apparently does not contend that notwithstanding O2 Micro's covenant not to sue in the Stipulated Dismissal issued under the *Super Sack* line of cases, a live case or controversy still exists with respect to the MPS products that O2 Micro had previously accused of infringement. (*See* Opp., at 1:24-26 (identifying the issue to be decided here as whether MPS's "introduction of new products" supports declaratory judgment jurisdiction).) This new information does not save MPS's Complaint from dismissal, however.

Importantly, O2 Micro has never made any statement directly or indirectly accusing MPS's new MP1008 and VION brand products of infringing the '129 patent. (*See* Harkins Decl. ¶ 4.) And MPS does not claim otherwise. Instead, it speculates that because O2 Micro has sued MPS and other companies in the past for infringing the '129 patent, O2 Micro likely will do so again with respect to MPS's MP1008 and VION brand products. MPS appears to base this perceived threat of litigation by O2 Micro on two alleged considerations: "O2 Micro's stated desire to accuse half-bridge products, combined with the probability that O2 Micro would narrowly apply the covenant [not to sue] to only specifically named full bridge products." (Opp. at 3:19-22.)

MPS's reasoning is fatally flawed. First, its claim that O2 Micro has a "stated desire to accuse half-bridge products" is simply untrue. The evidence that MPS relies on to support this assertion consists of two emails from O2 Micro's counsel that merely state O2 Micro's intent to drop its claims of infringement of the '129 patent from the MPS litigation but to continue asserting the '129 patent in other litigation against other companies. (*See* Brigham Decl., Exs. 3 and 4.) Importantly, these emails do not contain any *new* accusation by O2 Micro of its '129 patent against MPS and its products. The

fact that O2 Micro intends to continue with previously filed litigation against other companies that involve accused MPS parts (as well as accused parts developed by other inverter controller suppliers) does not give rise to a case or controversy.

Second, MPS's claim that there is a "probability that O2 Micro would narrowly apply the covenant to only specifically named full bridge products" amounts to pure conjecture. Indeed, the fact that MPS characterizes this risk as a "probability" confirms the highly speculative nature of MPS's claim.

More fundamentally, however, even if the Court were to accept MPS's assertions as true, they are insufficient to establish declaratory judgment jurisdiction. Importantly, nothing in the emails cited by MPS indicates or suggests any intent by O2 Micro to allege that the MP1008 or MPS's VION brand products infringe the '129 patent. (*See* Brigham Decl., Exs. 3 and 4.) Nor does the possibility that O2 Micro might choose to interpret the terms of the Stipulated Dismissal narrowly logically lead to a conclusion that O2 Micro intends to accuse the MP1008 or MPS's VION brand products of infringing the '129 patent. Under the controlling legal standard, there must be some evidence of an assertion by O2 Micro of its patent rights against these particular products.

In *SanDisk Corp. v. STMicroelectronics, Inc.*, the Federal Circuit noted that:

> declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some *affirmative act* by the patentee. But Article III jurisdiction may be met where the patentee *takes a position* that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.

480 F.3d 1372, 1380-81 (Fed. Cir. 2007) (emphases added). In other words, declaratory judgment jurisdiction under the revised legal standard (post-*MedImmune*) does not arise unless the patentee takes some sort of affirmative action or position that places the declaratory judgment plaintiff at legal risk if it decides to continue with its business activities.

Here, O2 Micro has taken no action or position with respect to MPS's MP1008 and VION brand products, the products for which MPS seeks declaratory relief. O2 Micro has made no statement that these product infringe the '129 patent, and has not even approached MPS with a request that MPS

1  take a license to the '129 patent for these products. In short, O2 Micro has taken no position with
2  respect to these new MPS products that would provide MPS with any reasonable basis for believing
3  that its business activities relating to these products might constitute illegal behavior. Under these
4  circumstances, the Court lacks jurisdiction over MPS's claims for declaratory relief.

5  As the Supreme Court reminded the lower courts in *MedImmune, Inc. v. Genentech, Inc.*,
6  declaratory judgment jurisdiction exists only where the dispute is "definite and concrete, touching the
7  legal relations of parties having adverse legal interests." 127 S. Ct. 764, 771 (2007) (quoting *Aetna
8  Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Here, there is no "definite and concrete"
9  dispute, for O2 Micro has never accused the MP1008 or MPS's VION brand products of infringing
10  any patent. *See Bridgelux, Inc. v. Cree, Inc.*, No. C 06-6495 PJH, 2007 WL 2022024, at *9 (N.D. Cal.
11  July 9, 2007) (no declaratory judgment jurisdiction where patentee never accused plaintiff's products
12  of infringing its patents). Nor is there any "adverse legal interest" between the parties with respect to
13  these products in the absence of any asserted legal position by O2 Micro that the products fall within
14  the scope of the '129 patent. Thus, MPS has failed to meet its burden of showing that declaratory
15  judgment jurisdiction exists here. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, -- F.3d --, No. 06-
16  1122, 2007 WL 2069646, at *2 (Fed. Cir. July 20, 2007) (party seeking to base jurisdiction on the
17  Declaratory Judgment Act bears the burden of proving that the facts alleged establish jurisdiction).

**B.   O2 Micro's History of Litigating Its Patents Against Other Parties and Products Is Insufficient to Establish Declaratory Judgment Jurisdiction.**

20  MPS incorrectly argues that O2 Micro's history of litigating its patents against MPS and other
21  parties is sufficient to create an actual controversy regarding whether MPS's new MP1008 and VION
22  brand products infringe the '129 patent. For its flawed position, MPS relies primarily on the Federal
23  Circuit's decision in *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330 (Fed. Cir. 2007),
24  but its reliance is misplaced. In *Teva*, the issue was whether Novartis, by filing an infringement suit
25  alleging that Teva's famciclovir product infringed a Novartis patent, created an actual controversy
26  regarding whether the *accused* famciclovir product *also infringed* other related Novartis patents. In
27  that context, which involved the Hatch-Waxman Act, the Federal Circuit held that "related litigation
28  involving the *same technology* and the *same parties* is relevant in determining whether a justiciable

HOWREY LLP

O2 MICRO'S REPLY IN SUPPORT OF MOTION TO     4
DISMISS COMPLAINT
Case No. C 07-02363

1   declaratory judgment controversy exists on *other related patents*." *Id.* at 1344 (emphases added).  In
2   other words, the existence of a pending litigation between the parties and involving the accused
3   technology is what might give rise to an actual controversy as to other related patents.

4         By contrast, the present case is *not* a situation where O2 Micro has already asserted one of its
5   patents (let's say, for example, the '722 patent) against MPS's MP1008 and VION brand products, and
6   the jurisdictional question at hand is simply whether the Court can entertain a declaratory judgment
7   claim that those same products also do not infringe the related '129 patent.  Rather, the issue here is
8   whether declaratory judgment jurisdiction exists in the absence of any pending dispute or assertion by
9   O2 Micro of its patent rights against MPS's new products.

10        Moreover, as the opinion in *Teva* makes clear, only those litigations that involve the "same
11  parties" have any bearing on declaratory judgment jurisdiction.  *See id.*  Consequently, the four other
12  O2 Micro cases that MPS refers to in its Opposition (to which MPS was not or is not a party) – (1) *O2*
13  *Micro Int'l Ltd. v. Hon Hai Precision Industry Co., Ltd.,* (2) *O2 Micro Int'l Ltd. v. Beyond Innovation*
14  *Tech. Co., Ltd.*, (3) *O2 Micro Int'l Ltd. v. Samsung Elec. Co. Ltd.*, and (4) *O2 Micro Int'l Ltd. v. Rohm*
15  *Co., Ltd.* – have no bearing here.  There is no identity of parties with this litigation.

16        The post-*MedImmune* district court cases cited by MPS in its Opposition also do not support
17  MPS's position.  In *Cingular Wireless LLC v. Freedom Wireless, Inc.*, No. CV06-1935 PHX JAT,
18  2007 WL 1876377, at *3 n.1 (D. Ariz. June 27, 2007), the court regarded as significant the fact that
19  after the plaintiff had filed its declaratory judgment action against the patentee, the patentee responded
20  by filing a patent infringement suit against the plaintiff.  Thus, in *Cingular Wireless* the patentee's own
21  actions after the filing of the declaratory judgment action confirmed the existence of the litigation
22  threat faced by the plaintiff.  Here, there has been no threat or litigation response; O2 Micro has not
23  accused the MP1008 or MPS's VION brand products of infringing any O2 Micro patent.

24        *Crutchfield New Media, LLC v. Charles E. Hill & Assocs., Inc.*, No. 1:06-cv-0837-LJM-JMS,
25  2007 WL 1876377 (S.D. Ind. May 4, 2007), is also inapposite.  In that case, the district court found an
26  actual controversy regarding the defendant's patents because the defendant had sent a letter informing
27  the plaintiff that it needed to license the defendant's patents in order to conduct its retail activities over
28

HOWREY LLP

O2 MICRO'S REPLY IN SUPPORT OF MOTION TO
DISMISS COMPLAINT     5
Case No. C 07-02363

1  the Internet. *See id.*, 2007 WL 1876377, at *2.  Thus, unlike the present situation, the defendant's own
2  communication was what placed the plaintiff at risk of continuing certain activities that might be
3  deemed unauthorized and illegal absent a license.

        **C.   As a Matter of Law, O2 Micro's Actions with Respect to MPS's Customers Are Insufficient to Establish Declaratory Judgment Jurisdiction.**

        Alternatively, MPS argues that O2 Micro's assertion of the '129 patent against MPS's customers provides a basis for declaratory judgment jurisdiction.  This argument lacks merit because it is directly contradicted by Federal Circuit law.  As O2 Micro pointed out in its Motion, the Federal Circuit's decision in *Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 942-43 (Fed. Cir. 2006), holds that a patentee's threats against a company's customers does not create a case or controversy between the patentee and the company, unless the company is responsible for indemnifying the threatened customers or otherwise placed at legal risk as a result of the patentee's actions against the customers.  Tellingly, MPS does not address the *Microchip* decision anywhere in its Opposition.

        Instead, MPS relies on two district court decisions to support its position: *Synopsys, Inc. v. Ricoh Co., Ltd.*, 343 F. Supp. 2d 883 (N.D. Cal. 2003), and *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, No. 06-C-674, 2007 WL 1394154 (E.D. Wis. May 11, 2007).  (*See* Opp. at 11:3-13:2.)  Its reliance on these two district court cases is misplaced.  First, to the extent the holding in *Synopsys* conflicts with the holding in *Microchip*, the *Synopsys* decision has been implicitly rejected by the Federal Circuit in the more recent *Microchip* decision.  In truth, *Synopsys* can be reconciled with *Microchip* because in *Synopsys*, the declaratory judgment plaintiff had indemnification agreements with its customers, and thus the patentee's infringement suits against the plaintiff's customers directly affected the legal rights of the plaintiff.  *See Synopsys*, 343 F. Supp. 2d at 886.  Here there are no such agreements.  Moreover, MPS's reliance on *WS Packaging Group* is also misplaced because the district court there failed to apply the law set forth in the Federal Circuit's *Microchip* decision.

Finally, MPS's claim that O2 Micro has engaged in a "methodical pursuit of MPS customers under the '129 Patent" is factually unsupported. (Opp. at 11:8-9.) The only pending litigation in which O2 Micro has asserted the '129 patent against an MPS customer is the *Hon Hai* case, which was already pending at the time O2 Micro and MPS agreed to the Stipulated Dismissal. Moreover, in that case O2 Micro alleges that Hon Hai's infringing conduct stems not only from its use of MPS products, but also products designed by other inverter controller suppliers as well. As pointed out above, the fact that O2 Micro continues to prosecute its previously pending litigation against other defendants cannot as a matter of law give rise to a new case or controversy between O2 Micro and MPS.

The only other evidence that MPS presents regarding threats to its customers is a letter from O2 Micro to Yutaka Electric Mfg. Co., Ltd. This letter has been mischaracterized by MPS. Given a careful reading, the letter does nothing more than notify Yutaka Electric of the decision in the *O2 Micro v. Sumida* litigation that MPS's products infringe O2 Micro's *'722 patent*, not the '129 patent.[1] (*See* Brigham Decl., Ex. 8.) Thus, the letter serves primarily a warning to Yutaka Electric that its use of MPS products might infringe an O2 Micro patent (the '722 patent) other than the one at issue in this case. Additionally, although the letter also mentions the '129 patent, it does so in the context of another case involving Beyond Innovation Technology Co., Ltd. *et al.*, which did not involve any MPS products. (*See id.*) The letter therefore does not contain any allegation that Yutaka Electric is infringing the '129 patent as a result of its use of any MPS products, contrary to MPS's claim.

In summary, MPS's allegation that O2 Micro is waging a campaign to sue MPS's customers for infringing the '129 patent lacks factual support. Furthermore, as a matter of law, MPS's economic interest in protecting its customers from infringement suits is not enough to establish declaratory judgment jurisdiction here, absent a legal obligation by MPS to indemnify the threatened customers. *See Microchip*, 441 F.3d at 943.

---

[1] This particular letter has also been one of the grounds of MPS's unfair competition claim against O2 Micro; the parties recently stipulated to a dismissal of this claim with prejudice, however. *See* Case No. C04-2000-CW, Doc. No. 1094.

### D. MPS's Forum Selection Arguments Are Beside the Point.

In response to O2 Micro's argument that the Court should decline jurisdiction over this case even if it determines that it has declaratory judgment jurisdiction, MPS argues that this Court is the most appropriate forum for resolving the dispute between O2 Micro and MPS. MPS's argument woefully misses the mark because the issue here is not whether this Court is the *better* forum for hearing MPS's claims as compared to another forum but rather, whether *any* federal court should be hearing these claims under the Declaratory Judgment Act. That two other related O2 Micro patents were previously litigated before this Court has nothing to do with whether there currently exists an actual controversy between O2 Micro and MPS with respect to the '129 patent and whether prudential considerations favor the exercise of declaratory judgment jurisdiction. Instead of focusing on the operative legal analysis, MPS tries to distract the Court with an unrelated argument regarding forum selection. But the mere fact that this Court already has some experience with other related O2 Micro patents does not mean that the Court should expend any more of its resources needlessly in providing an advisory opinion on a hypothetical dispute.

Indeed, if the Court were to allow MPS to proceed with this litigation, there is no telling how many more such lawsuits MPS might file in the future. As MPS boasts in its Opposition, it continually innovates and expands its product offerings. (*See* Opp. at 3:14-15.) Under MPS's reading of the Declaratory Judgment Act, every time MPS comes out with a new product it would be entitled to file a new declaratory judgment action on O2 Micro's patents, regardless of whether O2 Micro has taken any legal position with respect to the new product. To avoid setting a precedent on the wasteful use of judicial resources and everyone's time, the Court should decline to exercise jurisdiction over MPS's declaratory judgment claims.

### III. CONCLUSION

For the reasons discussed above and in the Motion, the present action filed by MPS should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In the alternative, the Court should decline jurisdiction over this action in the interest of sound judicial administration.

HOWREY LLP

O2 MICRO'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
Case No. C 07-02363

8

1  Dated: August 2, 2007                    HOWREY LLP

                                            By: /s/Henry C. Su
                                                    Henry C. Su

                                            Attorneys for Plaintiff
                                            O2 Micro International Limited