IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,

    Plaintiff,

  v.

O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,

    Defendant.
_____/

No. C 07-2363 CW

ORDER DENYING O2 MICRO'S MOTION TO DISMISS

Defendant O2 Micro International Limited moves to dismiss the complaint of Plaintiff Monolithic Power Systems, Inc. (MPS), arguing that the Court lacks jurisdiction. MPS opposes the motion, contending that the Court has jurisdiction under the Declaratory Judgment Act. The matter was decided on the papers. Having considered all of the parties' papers, the Court denies O2 Micro's motion.

                        BACKGROUND

In this case, MPS seeks a declaration of its rights with respect to O2 Micro's U.S. Patent No. 6,804,129 (the '129 patent):

it requests that the Court find that it does not infringe any valid claim of the '129 patent and that the '129 patent is unenforceable due to inequitable conduct.  This case is but the latest in a series of actions before this Court between MPS and its competitor O2 Micro.  For over seven years, MPS and O2 Micro have accused each other of infringing each other's patents or of attempting to enforce patents that are invalid and unenforceable.  Thus, the Court is familiar with the parties, the technology and the patent at issue.[1]

In 2004, after MPS filed a declaratory judgment action concerning O2 Micro's '722 patent in this Court, O2 Micro filed suit against MPS in the Eastern District of Texas, alleging that MPS infringed the '129 patent.  O2 Micro filed the Texas action the day that the '129 patent issued.  The Eastern District of Texas court transferred that action to this Court and the Court consolidated the Texas action with the related '722 patent litigation.

On October 11, 2006, after consolidating the two actions involving O2 Micro's patents, the Court dismissed with prejudice O2 Micro's '129 patent infringement claim against MPS, pursuant to a stipulated dismissal signed by the parties.  The stipulation, signed by the Court, provides:

---

[1] The '129 patent has the same specification as O2 Micro's U.S. Patent Nos. 6,259,615 (the '615 patent) and 6,396,722 (the '722 patent), both of which the U.S. Patent and Trademark Office issued before issuing the '129 patent and both of which have been involved in cases before the Court.

2

> O2 Micro covenants not to assert or reassert its '129 patent against named defendants for infringement by MPS full bridge inverter controllers (and products incorporating said controllers) made, used, imported, offered for sale or sold previously or currently having product designations MP1010, MP1010B, MP1011, MP1012, MP1013, MP1015, MP 1016, MP1018, MP1022, MP1023, MP1024, MP1025, MP1026, MP1027, MP1029, MP1030, MP1031, MP1032, MP1035 and MP1038, evaluation boards EV0001, EV0002, EV0003, EV0004, EV0014, EV0017, EV0019, EV0027, EV0031 and EV0037 incorporating certain of those inverter controllers, Asustek products incorporating the MP1010B, MP1011, MP1015 and/or MP1037 inverter controller chips, and Compal's products incorporating the MP101, MP1010B, MP1015, MP1016, and/or MP1037 inverter chips.

The stipulation covers all of the MPS products that O2 Micro had accused of infringing the '129 patent.

After the Court signed this stipulation, however, MPS designed and marketed new power inverter controller products, not previously accused of infringing the '129 patent. These new products include a half-bridge inverter controller marketed as the MP1008 and a new full-bridge inverter controller marketed under the VION brand. MPS does not believe that these products infringe. But, it believes that, because O2 Micro takes a narrow view of the stipulated dismissal, the covenant not to sue does not cover these new products and, therefore, it is laboring under the shadow of threatened infringement litigation.[2]

---

[2] In support of this belief, MPS points to O2 Micro's brief in a case pending in the Eastern District of Texas. The defendant in that case argued that, in light of the stipulated dismissal, it could not infringe the '129 patent. In response, O2 Micro replied: "The Stipulated Dismissal does not confer on MPS the right to practice the '129 patent or to sublicense its customers to do so. Rather, it merely contains a promise by O2 Micro not to sue MPS for infringing the '129 patent with certain products . . . ." Brigham Dec., Ex. 6, O2 Micro's Sur-Reply to Hon Hai's Motion for Summary Judgment. In addition, MPS notes that O2 Micro has asserted the '129 patent against four other companies,

3

O2 Micro contends that it has not accused MPS's new products of infringing the '129 patent and that, therefore, MPS has no basis for filing this declaratory judgment action and the Court does not have subject matter jurisdiction over it. In the alternative, O2 Micro requests that the Court exercise its discretion to decline jurisdiction over MPS's declaratory judgment action.

## LEGAL STANDARD

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Thornhill Publ'q Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

## DISCUSSION

The Declaratory Judgment Act, in accordance with Article III

---

at least some of whom are MPS's customers, in the Eastern District of Texas.

4

of the Constitution, requires an "actual controversy" before the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Until recently, the Federal Circuit required that, in order to prove an actual controversy, a plaintiff had to establish that the defendant's conduct created an objectively "reasonable apprehension" that the defendant would initiate suit if the plaintiff continued the allegedly infringing activity. See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1334-36 (Fed. Cir. 2007).

In MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764 (2007), however, the Supreme Court noted that the Federal Circuit's "reasonable apprehension of imminent suit" test conflicted with several cases in which the Supreme Court had found that a declaratory judgment plaintiff had a justiciable controversy. 127 S. Ct. at 774 n. 11. The Supreme Court instructed that, although there is no bright-line rule for distinguishing cases that satisfy the actual controversy requirement from those that do not, all that is required is:

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Id. at 771-72 (internal citations and quotations omitted).

5

Following <u>MedImmune</u>, the Federal Circuit recognized that the Supreme Court did not approve of its reasonable-apprehension-of-suit test. <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1380 (Fed. Cir. 2007); <u>Teva Pharms</u>, 482 F.3d at 1340. The Federal Circuit discarded its "reasonable apprehension" requirement and adopted <u>MedImmune</u>'s "all circumstances" test. <u>Teva Pharms</u>, 482 F.3d at 1339 ("we follow <u>MedImmune</u>'s teaching to look at 'all the circumstances' . . . to determine whether Teva has a justiciable Article III controversy"). <u>See also</u> <u>SanDisk Corp.</u>, 480 F.3d at 1381 ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."). As one district court has noted, this change in the law with respect to the now defunct "reasonable apprehension" requirement, has "in effect lower[ed] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute." <u>Frederick Goldman, Inc. v. West</u>, 2007 WL 1989291, at *3 (S.D.N.Y.).

O2 Micro contends that, even under the Federal Circuit's revised standard, there is no actual controversy and, therefore, no jurisdiction over MPS's declaratory judgment claims. It emphasizes that it has taken not yet taken any express position with respect to whether MPS's new products infringe the '129 patent. Whether O2 Micro has publicly accused MPS's new products, which are not covered by the Stipulated Dismissal, is not dispositive to determining whether an actual controversy exists.

6

In <u>Bridgelux, Inc. v. Cree, Inc.</u>, 2007 WL 2022024, at *9 (N.D. Cal.), the court did not, as O2 Micro suggests, find that there was no actual controversy merely because the defendants had never accused the plaintiff of infringing their patents.  Rather, in concluding that, under all of the circumstances, there was no actual controversy, the court pointed out that the plaintiff provided no evidence that the defendants "had ever sued anyone" on their patents.  Further, in <u>SanDisk Corp.</u>, the Federal Circuit declined to hold that the patentee's statement that it had "absolutely no plan whatsoever to sue" the plaintiff eliminated the justiciable controversy created by patentee's actions; rather, the court concluded that the patentee "engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights" despite that statement.  480 F.3d at 1383.

O2 Micro has sued numerous parties, including MPS, accusing them of infringing the '129 patent.  O2 Micro has accused MPS of infringing its '722 and '615 patents as well.[3]  Such suits indicate "an assertion of rights and a willingness to pursue litigation" regarding the patent-in-suit.  <u>Cingular Wireless v. Freedom Wireless, Inc.</u>, 2007 WL 1876377, at *3 (D. Ariz.).  The Federal Circuit explains that "related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists on other related patents."  <u>Teva Pharms.</u>, 482 F.3d at 1344-45.  And, in <u>Cingular Wireless</u>, the court concluded that "the assertion of

---

[3] A jury recently found that, although MPS infringed claim 12 of O2 Micro's '722 patent, the '722 patent was invalid.

7

1  rights, evidenced through a prior lawsuit between the same parties
2  regarding the same technology, coupled with Defendant's knowledge
3  of the relationship between Plaintiffs, and solidified through the
4  express press release statement indicating an intent to sue alleged
5  patent infringers, presents enough evidence to establish the case
6  or controversy required for declaratory judgment jurisdiction."
7  2007 WL 1876377 at *9.  Similarly, the Court concludes that MPS
8  presents evidence establishing that, under all the circumstances,
9  "there is a substantial controversy, between parties having adverse
10 legal interests, of sufficient immediacy and reality to warrant the
11 issuance of a declaratory judgment."  See MedImmune, 127 S. Ct. at
12 772.  Therefore, the Court has jurisdiction over MPS's declaratory
13 judgment claims.
14     O2 Micro points out that the Declaratory Judgment Act provides
15 that a court "may" provide declaratory relief, not that it must.
16 28 U.S.C. § 2201(a).  It requests that the Court exercise its
17 discretion to decline jurisdiction over MPS's claims.  There are
18 boundaries to the Court's discretion.  SanDisk Corp., 480 F.3d at
19 1383.  The Federal Circuit instructs, "'When there is an actual
20 controversy and a declaratory judgment would settle the legal
21 relations in dispute and afford relief from uncertainty or
22 insecurity, in the usual circumstance the declaratory judgment is
23 not subject to dismissal.'"  Id. (quoting Genentech v. Eli Lilly &
24 Co., 998 F.2d 931, 937 (Fed. Cir. 1993)).  Further, there must be a
25 "sound basis for refusing to adjudicate an actual controversy."
26 Id.  No good reason exists for the Court to decline jurisdiction
27 over MPS's declaratory judgment claims.  This is the proper Court
28
                                    8

to resolve this dispute. As noted above, the parties have been battling before this Court for over seven years and the Court is familiar with the parties, the '129 patent and the technology at issue.

## CONCLUSION

For the foregoing reasons, O2 Micro's motion to dismiss (Docket No. 11) is DENIED. The hearing scheduled for August 16, 2007 is VACATED.

IT IS SO ORDERED.

Dated: 8/13/07

CLAUDIA WILKEN
United States District Judge