# EXHIBIT A

1  Henry C. Bunsow (SBN 060707)
   bunsowh@howrey.com
2  K.T. Cherian (SBN 133967)
   cheriank@howrey.com
3  Duane H. Mathiowetz (SBN 111831)
   mathiowetzd@howrey.com
4  Henry C. Su (SBN 211202)
   suh@howrey.com
5  HOWREY LLP
   525 Market Street, Suite 3600
6  San Francisco, California  94105
   Telephone:  (415) 848-4900
7  Facsimile:  (415) 848-4999

8  Attorneys for Defendant O2 Micro International Limited

9

                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        OAKLAND DIVISION

12

13  MONOLITHIC POWER SYSTEMS, INC.,        ) Case No. C 07-02363-CW
    a Delaware corporation,                )
                                           ) **DEFENDANT O2 MICRO**
14                                         ) **INTERNATIONAL LIMITED'S**
                 Plaintiff,                ) **[PROPOSED] FIRST AMENDED ANSWER**
15                                         ) **TO COMPLAINT AND COUNTERCLAIM**
           vs.                             )
16                                         ) **JURY TRIAL DEMANDED**
    O2 MICRO INTERNATIONAL LIMITED,        )
    a Cayman Islands corporation,          )
17                                         )
18               Defendant.                )
                                           )
19  _____)

20

21

22

23

24

25

26

27

28

Def. O2 Micro's [Proposed] Amended Answer to
Complaint and Counterclaim
Case No. C 07-02363-CW

1    Defendant O2 Micro International Limited ("O2 Micro") hereby answers the Complaint filed

2    by Plaintiff Monolithic Power Systems, Inc. ("MPS").

3        1.    In response to Paragraph 1 of the Complaint, O2 Micro admits that the Complaint

4    purports to seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 but denies, for the

5    reasons previously stated in its Motion to Dismiss papers (Docs. Nos. **11 & 29**), that the Complaint

6    "presents an actual case or controversy under Article III of the United States Constitution and serves a

7    useful purpose in clarifying and settling the legal rights at issue."

8        2.    In response to Paragraph 2 of the Complaint, O2 Micro admits, without intending to

9    waive its objections as to the existence of declaratory judgment jurisdiction, that subject matter

10   jurisdiction otherwise exists under 28 U.S.C. § 1338(a).

11       3.    O2 Micro admits the allegations of Paragraph 3 of the Complaint.

12       4.    O2 Micro admits, without intending to waive its objections as to the existence of

13   declaratory judgment jurisdiction, the allegations of Paragraph 4 of the Complaint.

14       5.    In response to Paragraph 5 of the Complaint, O2 Micro admits that MPS designs and

15   sells power inverter controllers for use in DC to AC converters.  O2 Micro lacks sufficient information

16   to admit or deny the remaining allegations of Paragraph 5 and on that basis denies them.

17       6.    O2 Micro admits the allegations of Paragraph 6 of the Complaint.

18       7.    O2 Micro admits, without intending to waive its objections as to the existence of

19   declaratory judgment jurisdiction, the allegations of Paragraph 7 of the Complaint.

20       8.    O2 Micro lacks sufficient information to admit or deny the allegations of Paragraph 8 of

21   the Complaint and on that basis denies them.  More particularly, Paragraph 8 fails to identify which O2

22   Micro patents have allegedly been "repeatedly asserted" and which MPS customers and end-users of

23   MPS's power inverter controller products have been the recipients of such "repeated assertions."

24       9.    O2 Micro admits the allegations of Paragraph 9 of the Complaint insofar as they refer to

25   the following lawsuits in which MPS products and O2 Micro patents, including the '129 patent, have

26   been or are at issue: (1) *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., et al.,* Case Nos. 2:04-cv-

27   00359-TJW (E.D. Tex.) & C 06-02929-CW (N.D. Cal.); (2) *O2 Micro Int'l Ltd. v. Samsung Elecs. Co.,*

28   *Ltd., et al.,* Case No. 2:04-cv-00323-TJW (E.D. Tex.); and *O2 Micro Int'l Ltd. v. Hon Hai Precision*

1   *Indus. Co., Ltd., et al.,* No. 2:05-cv-00323-CE (E.D. Tex.). Except as specifically admitted herein, O2

2   Micro denies the allegations of Paragraph 9.

3       10.    O2 Micro lacks sufficient information to admit or deny the allegations of Paragraph 10

4   of the Complaint and on that basis denies them. More specifically, Paragraph 10 fails to identify with

5   any modicum of particularity the MPS power inverter controller products that are the apparent subject

6   of this allegation, and it has only been through discovery served in this action that O2 Micro, through

7   its outside counsel, has obtained any specific, substantive information about the MPS power inverter

8   controller products that are the apparent subject of this allegation.

9       11.    O2 Micro lacks sufficient information to admit or deny the allegations of Paragraph 11

10  of the Complaint and on that basis denies them. O2 Micro further avers that (1) at no point prior to the

11  filing of the Complaint did it have any knowledge or awareness of the MPS power inverter controller

12  products, and devices built using these unspecified products, that are the apparent subject of this

13  allegation, and (2) it has not communicated to MPS, or caused to be communicated to MPS on its

14  behalf, any contention of infringement regarding these unspecified products and devices. It has only

15  been through discovery served in this action that O2 Micro, through its outside counsel, has obtained

16  any specific, substantive information about the MPS power inverter controller products that are the

17  apparent subject of this allegation.

18      12.    O2 Micro lacks sufficient information to admit or deny the allegations of Paragraph 12

19  of the Complaint and on that basis denies them.

20      13.    Paragraph 13 of the Complaint does not require a separate response from O2 Micro.

21      14.    O2 Micro denies the allegations of Paragraph 14 of the Complaint insofar as they relate

22  to the facts and circumstances as of the date the Complaint was filed.

23      15.    O2 Micro denies the allegations of Paragraph 15 of the Complaint.

24      16.    Paragraph 16 of the Complaint does not require a separate response from O2 Micro.

25      17.    O2 Micro denies the allegations of Paragraph 17 of the Complaint.

26      18.    O2 Micro denies the allegations of Paragraph 18 of the Complaint.

27      19.    O2 Micro denies the allegations of Paragraph 19 of the Complaint because the

28  particular details concerning a transformer designed specifically for use in a particular commercial

1 | application in no way implicate the best mode of carrying out the invention of the '129 patent or other

2 | patents in the same family. O2 Micro further denies the allegations of Paragraph 19 because the

3 | transformer in question was not even designed with the intent that it be used with the inverter circuits

4 | claimed in the '129 patent (which was not even applied for until February 11, 2004), and hence it bears

5 | no relation to the invention of the '129 patent.

6 |      20.     In response to the allegations of Paragraph 20 of the Complaint, O2 Micro admits that it

7 | safeguarded the CIUH8D transformer design specifications as a trade secret. O2 Micro denies the

8 | remaining allegations of Paragraph 20 because the particular details concerning a transformer designed

9 | specifically for use in a particular commercial application in no way implicate the best mode of

10 | carrying out the invention of the '129 patent or other patents in the same family. O2 Micro further

11 | denies the remaining allegations of Paragraph 20 because the transformer in question was not even

12 | designed with the intent that it be used with the inverter circuits claimed in the '129 patent, and hence

13 | it bears no relation to the invention of the '129 patent.

14 |      21.     O2 Micro denies the allegations of Paragraph 21 of the Complaint.

15 |      22.     O2 Micro denies the allegations of Paragraph 22 of the Complaint because the

16 | particular details concerning a transformer designed specifically for use in a particular commercial

17 | application in no way implicate the best mode of carrying out the invention of the '129 patent or other

18 | patents in the same family. O2 Micro further denies the allegations of Paragraph 22 because the

19 | transformer in question was not even designed with the intent that it be used with the inverter circuits

20 | claimed in the '129 patent, and hence it bears no relation to the invention of the '129 patent.

21 |      23.     In response to the allegations of Paragraph 23 of the Complaint, O2 Micro admits that

22 | Dr. Lin, the inventor of the patents-in-suit, testified in connection with Case Nos. C 00-04071 CW and

23 | C 01-03995 CW, which were previously pending in this Court. O2 Micro denies the remaining

24 | allegations of Paragraph 23 because they are misleading. MPS is selectively citing to and

25 | mischaracterizing snippets from Dr. Lin's trial testimony without providing the proper context, and

26 | while ignoring other, more pertinent testimony and evidence.

27 |      24.     O2 Micro denies the allegations of Paragraph 24 of the Complaint.

28 |      25.     O2 Micro denies the allegations of Paragraph 25 of the Complaint.

1    26.    O2 Micro denies the allegations of Paragraph 26 of the Complaint.

2    27.    O2 Micro admits the allegations of Paragraph 27 of the Complaint.

3    28.    O2 Micro admits the allegations of Paragraph 28 of the Complaint.

4    29.    O2 Micro denies the allegations of Paragraph 29 of the Complaint because Dr. Lin's

5    doctoral dissertation is not a material prior art to the '129 patent or other patents in the same family.

6    30.    O2 Micro denies the allegations of Paragraph 30 of the Complaint because Dr. Lin's

7    doctoral dissertation is not a material prior art to the '129 patent or other patents in the same family.

8    31.    O2 Micro denies the allegations of Paragraph 31 of the Complaint.

9    32.    O2 Micro denies the allegations of Paragraph 32 of the Complaint.

10    33.    O2 Micro denies the allegations of Paragraph 33 of the Complaint.

11    34.    O2 Micro denies the allegations of Paragraph 34 of the Complaint because they

12    misleadingly suggest that the OZ960A, OZ960AS and OZ962 were each on sale or offered for sale in

13    this country beginning in or about 1996.

14    35.    O2 Micro denies the allegations of Paragraph 35 because they misleadingly suggest that

15    the OZ960A, OZ960AS and OZ962 disclose the feedback control circuitry and open lamp protection

16    circuitry of the '129 patent or other patents in the same family.

17    36.    In response to the allegations of Paragraph 36 of the Complaint, O2 Micro admits that

18    under the patent laws of the United States, a patent is invalid if its claimed subject matter was

19    described in a printed publication, in public use, or on sale in this country more than one year prior to

20    the date of the application for patent in the United States.  O2 Micro denies the remaining allegations

21    of Paragraph 36 because the OZ960A, OZ960AS and OZ962 are not prior art— much less material

22    prior art— to the '129 patent or other patents in the same family.

23    37.    O2 Micro denies the averments of Paragraph 37 because the OZ960A, OZ960AS and

24    OZ962 are not prior art— much less material, non-cumulative prior art— to the '129 patent or other

25    patents in the same family, and hence cannot be said to have been material to the prosecution of the

26    '129 patent.

27    38.    O2 Micro denies the allegations of Paragraph 38 of the Complaint.

28    39.    O2 Micro denies the allegations of Paragraph 39 of the Complaint.

1    40.    O2 Micro denies the allegations of Paragraph 40 of the Complaint.

2    41.    In response to the allegations of Paragraph 41 of the Complaint, O2 Micro admits that

3    on or about October 2001, it filed a civil action against MPS in the United States District Court for the

4    Northern District of California alleging that MPS's CCFL inverter products infringed the '615 patent,

5    Case No. C-01-3995 ("the '615 action").  O2 Micro denies the remaining allegations of Paragraph 41

6    because O2 Micro lacks sufficient knowledge about the product identified only as the "MP1010."

7    42.    O2 Micro denies the allegations of Paragraph 42 of the Complaint because MPS did not

8    produce any evidence in the '615 action showing that the MP1010 was a material prior art to the '615

9    patent.

10    43.    Paragraph 43 does not require a separate response from O2 Micro.

11    44.    O2 Micro denies the allegations of Paragraph 44 of the Complaint because the MP1010

12    is not a material prior art to the '722 and '129 patents.

13    45.    O2 Micro denies the allegations of Paragraph 45 of the Complaint because the MP1010

14    is not a material prior art to the '722 and '129 patents.

15    46.    O2 Micro denies the allegations of Paragraph 46 of the Complaint because the MP1010

16    is not a material prior art to the '722 and '129 patents.

17    47.    In response to Paragraph 47 of the Complaint, O2 Micro admits that under the patent

18    laws of the United States, a patent is invalid if its claimed subject matter was known or used by another

19    in the United States, or was made in the United States by another who had not abandoned, suppressed

20    or concealed the claimed subject matter, before the invention date of the applicant for the patent.  O2

21    Micro denies the remaining allegations of Paragraph 47 because the MP1010 is not a material prior art

22    to the '722 and '129 patents.

23    48.    O2 Micro denies the allegations of Paragraph 48 of the Complaint because the MP1010

24    is not a material prior art to the '722 and '129 patents.

25    49.    O2 Micro denies the allegations of Paragraph 49 of the Complaint.

26    50.    O2 Micro denies the allegations of Paragraph 50 of the Complaint.

27    51.    O2 Micro denies the allegations of Paragraph 51 of the Complaint.

28

1    52.    The section of MPS's Complaint that constitutes its Prayer for Relief does not require a

2    separate response from O2 Micro.  To the extent that this section may be deemed to allege any facts or

3    any factual or legal entitlements to the relief requested, O2 Micro denies each and every such

4    allegation.  O2 Micro denies that MPS is entitled to any relief, either as requested in MPS's Complaint

5    or otherwise.

6                                    **GENERAL DENIAL**

7    53.    O2 Micro further denies any of the allegations in MPS's Complaint not specifically

8    admitted in the responses set forth above in Paragraphs 1-52.

9                                   **AFFIRMATIVE DEFENSES**

10                                 **First Affirmative Defense**

11    54.    MPS's Complaint fails to state a claim upon which relief can be granted.

12                                **Second Affirmative Defense**

13    55.    MPS's Complaint fails to state an actual case or controversy sufficient to invoke

14    jurisdiction under the Declaratory Judgment Act.

15                                 **Third Affirmative Defense**

16    56.    MPS's Complaint is barred by the equitable doctrines of laches, unclean hands, waiver

17    and estoppel.

18                                **Fourth Affirmative Defense**

19    57.    MPS's Complaint is barred by the doctrines of res judicata and collateral estoppel.

20                                 **Fifth Affirmative Defense**

21    58.    Whatever conduct O2 Micro has been accused of engaging in with respect to the '129

22    patent is lawful, privileged and immune as a proper exercise of its right to exclude granted by 35

23    U.S.C. § 271 and other provisions of the Patent Act.

24                                 **Sixth Affirmative Defense**

25    59.    The '129 patent is valid and enforceable, and is presumed to be valid and enforceable

26    under 35 U.S.C. § 282.

27

28

**Seventh Affirmative Defense**

60.     Dr. Lin's Ph.D. dissertation, the OZ960A/AS and OZ962 inverters and the MP1010 integrated circuit are not material and non-cumulative prior art as to any of the asserted patents.  Nor is any of these references invalidating prior art.

**Eighth Affirmative Defense**

61.     Any alleged omission of Dr. Lin's Ph.D. dissertation, the OZ960A/AS, OZ962 and OZ969 inverters and/or the MP1010 integrated circuit from an information disclosure statement submitted in a patent application related to any of the '615, '722 and '129 patents was neither knowingly nor willfully fraudulent.  Any alleged omission of any of these references from an information disclosure statement submitted in a patent application related to any of the '615, '722 or '129 patent was not made with the clear intent to deceive the patent examiner.  *See* 03/21/07 Memorandum Opinion and Order, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., et al.,* Case No. 2:04-cv-00032-TJW (E.D. Tex.) (Doc. No. **424**); 09/28/07 Findings of Fact and Conclusions of Law Regarding Defendants' Inequitable Conduct Defense, *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* Case No. C-04-02000-CW (N.D. Cal.) (Doc. No. **1168**).

**Ninth Affirmative Defense**

62.     O2 Micro has neither violated the best mode requirement nor committed any inequitable conduct by allegedly failing to disclose the details of its CIUH8D transformer design to the Patent and Trademark Office in connection with a patent application related to any of the '615, '722 and '129 patents.  The CIUH8D transformer design is not a relevant— much less material— aspect of the disclosure of the invention of the '615, '722 and '129 patents, and its alleged nondisclosure or omission from the specification was not knowingly or willfully fraudulent, nor made with the clear intent to deceive the patent examiner.  *See* 02/08/07 Order Denying MPS's Mot. Summ. J. of Invalidity of the '722 Patent and Denying ASUSTeK's Mot. Summ. J., *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* Consolidated Case No. C 04-02000-CW (N.D. Cal.) (Doc. No. **742**).

**Tenth Affirmative Defense**

63.     MPS's Complaint lacks a good faith basis under Rule 11 of the Federal Rules of Civil Procedure.

**COUNTERCLAIM**

64.    O2 Micro incorporates by reference its responses set forth in Paragraphs 1-63 above.

**Parties**

65.    Counterclaimant, O2 Micro, is a corporation organized is a corporation duly organized and existing under the laws of the Cayman Islands, having a principal place of business at Grand Pavilion Commercial Centre, West Bay Road, P.O. Box 32331 5MB, George Town, Grand Cayman, Cayman Islands.

66.    Counterclaim Defendant, MPS, is a corporation duly organized and existing under the laws of Delaware, having a regular and established place of business at 983 University Avenue, Building A, Los Gatos, California.

**Jurisdiction and Venue**

67.    This is an action arising under the patent laws of the United States.  Accordingly, **this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a).**

68.    This Court has personal jurisdiction over MPS based on minimum contacts and purposeful availment.  Specifically, on information and belief, MPS is headquartered within this judicial district, and designs and develops inverter controller products that are the subject of this action within this judicial district.  Moreover, MPS has voluntarily y subjected itself to this Court's jurisdiction by filing this action and purposefully availing itself of the laws and procedures of this forum.

69.    For the reasons set forth in Paragraphs 66 and 68 above, venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and (d) and 1400(b).

**Factual Allegations**

70.    United States Patent No. 6,804,129 ("the '129 patent"), entitled *High-Efficiency Adaptive DCIAC Converter,* was duly and lawfully issued October 12, 2004.  A true and correct copy of the '129 patent is attached hereto as Attachment 1.

71.    O2 Micro is the current owner of all rights, title, and interest in the '129 patent.

72.    **O**2 Micro is and has been engaged in the business of designing, manufacturing, and selling electronics hardware, including integrated circuits that efficiently convert direct current ("DC")

1  voltage to alternating current ("AC") voltage, which is and can be used to power an electronic device

2  such as, for example, a cold cathode fluorescent lamp in a liquid crystal display.

3      73.     MPS is also engaged in the business of designing, manufacturing, and selling

4  electronics hardware, including integrated circuits that convert DC voltage to AC voltage, such as **DC-**

5  **to-AC inverter controller circuits.**

6                          **Count One – Infringement of the '129 Patent**

7      74.     O2 Micro incorporates by reference its responses set forth in Paragraphs 1-73 above.

8      75.     Rule 13(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a]

9  pleading shall state as a counterclaim any claim which *at the time of serving the pleading the pleader*

10 *has against any opposing party,* if it arises out of the transaction or occurrence that is the subject

11 matter of the opposing party's claim and does not require for its adjudication the presence of third

12 parties of whom the court cannot acquire jurisdiction."  (Emphasis added.)

13     76.     As stated in Paragraphs 10 and 11 above, when MPS filed this action, O2 Micro did not

14 have specific information regarding any MPS power inverter controller products, and devices built

15 using these unspecified products, that are the apparent subject of MPS's Complaint.  Nor did O2 Micro

16 have any such information when it originally answered MPS's Complaint.

17     77.     On information and belief, none of the technical information concerning these

18 unspecified products, including part numbers, data sheets and schematics, is publicly available, as

19 evidenced by the filing under seal of Exhibit 10 to the July 26, 2007 Declaration of Matthew J.

20 Brigham in Support of MPS's Opposition to O2 Micro's Motion to Dismiss.  *See* 07/26/07 Brigham

21 Decl. in Support of MPS's Admin. Mot. to File under Seal ¶ 4 (Doc. No. **21**) (stating that Exhibit 10

22 "contains technical information related to an MPS inverter controller product that MPS considers to be

23 highly confidential").

24     78.     Through discovery served in this action, however, O2 Micro, through its outside

25 counsel, has obtained some limited, technical and sales information about the MPS power inverter

26 controllers that are the apparent subject of this allegation.  MPS has designated this information as

27 highly confidential and available only to O2 Micro's outside counsel, pursuant to Patent Local Rule 2-

28 2 of this Court.

79.    The highly confidential, technical and sales information provided by MPS consists of: (a) an identification by part number of sixteen inverter controllers that MPS seeks to put into issue in this action; (b) for eight of the identified inverter controllers a date of first sale and a first customer, and for the other eight inverter controllers, the notation "N/A;" (c) samples of fourteen of the inverter controllers at issue; and (d) datasheets for thirteen of the inverter controllers at issue.  Most of the datasheets explicitly bear the legend "internal use only," and some of the datasheets also have the words "confidential" and/or "proprietary."  Moreover, six of the datasheets bear the label "preliminary specifications subject to change" or "initial release – specifications subject to change," and three of the datasheets include the legend "Attorney Work Privileged."

80.    Based only on its outside counsel's review of this limited set of technical and sales information, O2 Micro makes the following allegations set forth in Paragraphs 81-83.  O2 Micro further specifically avers, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, that the following allegations set forth in Paragraphs 81-83 are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.  Such investigation and discovery would seek, for example, information regarding which of the inverter controllers identified by MPS are actual products ready for commercial sale as opposed to working, experimental designs, and what specific acts MPS has taken with respect to any of these identified inverter controllers that would fall within the jurisdictional ambit of 35 U.S.C. § 271.

81.    MPS, by manufacturing, testing, using, and/or selling electronics hardware, including DC-to-AC inverter controller circuits, which embody, or when used, practice one or more claims of the '129 patent, without license or permission from O2 Micro, has directly infringed, induced infringement and/or contributed to the infringement of the '129 patent.  Accordingly, MPS is liable for infringement of the '129 patent pursuant to 35 U.S.C. § 271.

82.    MPS will continue to directly infringe, induce infringement and/or contribute to the infringement of the '129 patent, continuing to damage O2 Micro's business and **causing irreparable harm unless** enjoined by this Court.

83.    MPS's acts of infringement have caused and will cause damage to O2 Micro and O2 Micro is entitled to recover from MPS the damages sustained by O2 Micro as a result of MPS's wrongful acts in an amount subject to proof at trial.

## JURY DEMAND

84.    Under Rule 38 of the Federal Rules of Civil Procedure, O2 Micro hereby demands a trial by jury of any and all issues so triable that arise out of or relate to MPS's Complaint and/or O2 Micro's affirmative defenses and counterclaim thereto.

WHEREFORE, O2 Micro prays for judgment and seeks relief against MPS as follows:

(a)    For judgment that the '129 patent is valid and enforceable, and has been and/or continues to be infringed by MPS;

(b)    For an accounting of all damages sustained by O2 Micro as a result of MPS's acts of infringement;

(c)    For preliminary and permanent injunctions enjoining any proven acts of infringement by MPS, its officers, agents, servants, employees, subsidiaries, successors, assigns, and all other persons acting in concert or participation with MPS, including related individuals and entities, customers, representatives, dealers, distributors, and importers;

(d)    For actual damages together with prejudgment interest;

(e)    For an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

(f)    For all costs of suit, including an award of costs for vexatious litigation under 28 U.S.C. § 1927; and

(g)    For such other and further relief as the Court may deem just and proper.

Dated:  January 10, 2008                    HOWREY LLP


                                            By:   /s/Henry C. Su_____
                                                        Henry C. Su

                                            Attorneys for Plaintiff
                                            O2 Micro International Limited

# Attachment 1

US006804129B2

(12) **United States Patent**         (10) **Patent No.:**     **US 6,804,129 B2**
     Lin                              (45) **Date of Patent:**    **\*Oct. 12, 2004**

(54) **HIGH-EFFICIENCY ADAPTIVE DC/AC CONVERTER**

(75) Inventor: **Yung-Lin Lin**, Palo Alto, CA (US)

(73) Assignee: **02 Micro International Limited**, Grand Cayman (KY)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/776,417**

(22) Filed: **Feb. 11, 2004**

(65) **Prior Publication Data**

US 2004/0160794 A1 Aug. 19, 2004

**Related U.S. Application Data**

(63) Continuation of application No. 10/132,016, filed on Apr. 24, 2002, which is a continuation of application No. 09/850, 222, filed on May 7, 2001, now Pat. No. 6,396,722, which is a continuation of application No. 09/437,081, filed on Nov. 9, 1999, now Pat. No. 6,259,615.

(60) Provisional application No. 60/145,118, filed on Jul. 22, 1999.

(51) Int. Cl.$^7$ ...................... **H02M 3/335**; H02M 3/24; H05B 37/02

(52) U.S. Cl. ......................... **363/98**; 363/25; 315/225; 315/307

(58) Field of Search ............................. 363/98, 25, 96, 363/97, 31, 40, 41, 95; 315/160, 127, 128, 175, 225, 307, 119

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,461,980 A    7/1984  Nilssen ...................... 315/225

| 4,535,399 A | 8/1985 | Szepesi | 363/20 |
| 4,541,041 A | 9/1985 | Park et al. | 363/41 |
| 4,672,528 A | 6/1987 | Park et al. | 363/98 |
| 4,727,469 A | 2/1988 | Kammiller | 363/56 |
| 4,794,506 A | 12/1988 | Hino et al. | 363/17 |
| 4,814,962 A | 3/1989 | Magalhaes et al. | 363/16 |
| 4,833,584 A | 5/1989 | Divan | 363/37 |
| 4,855,888 A | 8/1989 | Henze et al. | 363/132 |
| 4,860,189 A | 8/1989 | Hitchcock | 363/132 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| JP | 11-146655 | 5/1999 | 7/48 |
| JP | 2000-197368 | 7/2000 | 7/48 |

OTHER PUBLICATIONS

Case No. C013995 JCS ADR, 02Micro International Limited (Plaintiff) v. Monolithic Power Systems, Inc. (Defendant and Counterclaimant), Monolithic Power Systems' Answer to First Amended Complaint and Counterclaim, Dec. 5, 2001.

(List continued on next page.)

*Primary Examiner*—Rajnikant B. Patel
(74) *Attorney, Agent, or Firm*—Grossman, Tucker, Perreault & Pfleger, PLLC

(57)                    **ABSTRACT**

A CCFL power converter circuit is provided using a high-efficiency zero-voltage-switching technique that eliminates switching losses associated with the power MOSFETs. An optimal sweeping-frequency technique is used in the CCFL ignition by accounting for the parasitic capacitance in the resonant tank circuit. Additionally, the circuit is self-learning and is adapted to determine the optimum operating frequency for the circuit with a given load. An over-voltage protection circuit can also be provided to ensure that the circuit components are protected in the case of open-lamp condition.

**30 Claims, 11 Drawing Sheets**



**US 6,804,129 B2**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,864,483 A | 9/1989 | Divan | 363/37 |
| 4,912,622 A | 3/1990 | Steigerwald et al. | 363/98 |
| 4,935,857 A | 6/1990 | Nguyen et al. | 363/17 |
| 4,952,849 A | 8/1990 | Fellows et al. | 315/307 |
| 4,953,068 A | 8/1990 | Henze | 363/17 |
| 4,992,919 A | 2/1991 | Lee et al. | 363/17 |
| 5,012,058 A | 4/1991 | Smith | 219/10.55 |
| 5,017,800 A | 5/1991 | Divan | 307/66 |
| 5,027,263 A | 6/1991 | Harada et al. | 363/16 |
| 5,027,264 A | 6/1991 | Dedoncker et al. | 363/16 |
| 5,105,127 A | 4/1992 | Lavaud et al. | 315/291 |
| 5,113,334 A | 5/1992 | Tuson et al. | 363/25 |
| 5,132,888 A | 7/1992 | Lo et al. | 363/17 |
| 5,132,889 A | 7/1992 | Hitchcock et al. | 363/17 |
| 5,157,592 A | 10/1992 | Walters | 363/17 |
| 5,198,969 A | 3/1993 | Redl et al. | 363/17 |
| 5,208,740 A | 5/1993 | Ehsani | 363/124 |
| 5,231,563 A | 7/1993 | Jitaru | 363/98 |
| 5,235,501 A | 8/1993 | Stuart et al. | 363/17 |
| 5,268,830 A | 12/1993 | Loftus, Jr. | 363/17 |
| 5,285,372 A | 2/1994 | Huynh et al. | 363/132 |
| 5,291,382 A | 3/1994 | Cohen | 363/16 |
| 5,305,191 A | 4/1994 | Loftus, Jr. | 363/17 |
| 5,363,020 A | 11/1994 | Chen et al. | 315/209 |
| 5,384,516 A | 1/1995 | Kawabata et al. | 315/160 |
| 5,402,329 A | 3/1995 | Wittenbreder, Jr. | 363/16 |
| 5,412,557 A | 5/1995 | Lauw | 363/37 |
| 5,418,703 A | 5/1995 | Hitchcock et al. | 363/17 |
| 5,420,779 A | 5/1995 | Payne | 363/56 |
| 5,422,546 A | 6/1995 | Nilssen | 315/219 |
| 5,430,632 A | 7/1995 | Meszlenyi | 363/17 |
| 5,430,641 A | 7/1995 | Kates | 363/133 |
| 5,448,155 A | 9/1995 | Jutras | 323/285 |
| 5,448,467 A | 9/1995 | Ferreira | 363/17 |
| 5,481,160 A | 1/1996 | Nilssen | 315/209 |
| 5,510,974 A | 4/1996 | Gu et al. | 363/134 |
| 5,514,921 A | 5/1996 | Steigerwald | 307/125 |
| 5,546,300 A | 8/1996 | Lee et al. | 363/132 |
| 5,559,688 A | 9/1996 | Pringle | 363/89 |
| 5,615,093 A | 3/1997 | Nalbant | 363/25 |
| 5,619,402 A | 4/1997 | Liu | 363/20 |
| 5,638,260 A | 6/1997 | Bees | 363/17 |
| 5,646,836 A | 7/1997 | Sadarnac et al. | 363/98 |
| 5,669,238 A | 9/1997 | Devers | 62/657 |
| 5,684,683 A | 11/1997 | Divan et al. | 33/65 |
| 5,694,007 A | 12/1997 | Chen | 315/247 |
| 5,712,533 A | 1/1998 | Corti | 315/169 |
| 5,715,155 A | 2/1998 | Shahani et al. | 363/132 |
| 5,719,474 A | 2/1998 | Vitello | 315/307 |
| 5,719,759 A | 2/1998 | Wagner et al. | 363/132 |
| 5,731,652 A | 3/1998 | Shimada | 310/316 |
| 5,736,842 A | 4/1998 | Jovanovic | 323/222 |
| 5,742,495 A | 4/1998 | Barone | 363/65 |
| 5,742,496 A | 4/1998 | Tsutsumi | 363/95 |
| 5,744,915 A | 4/1998 | Nilssen | 315/209 |
| 5,748,457 A | 5/1998 | Poon et al. | 363/16 |
| 5,764,494 A | 6/1998 | Schutten et al. | 363/17 |
| 5,774,346 A | 6/1998 | Poon et al. | 363/17 |
| 5,781,418 A | 7/1998 | Chang et al. | 363/16 |
| 5,781,419 A | 7/1998 | Kutkut et al. | 363/17 |
| 5,784,266 A | 7/1998 | Chen | 363/16 |
| 5,796,598 A | 8/1998 | Nowak et al. | 363/37 |
| 5,818,172 A | 10/1998 | Lee | 315/86 |
| 5,834,889 A | 11/1998 | Ge | 313/493 |
| 5,844,540 A | 12/1998 | Terasaki | 345/102 |
| 5,854,617 A | 12/1998 | Lee et al. | 345/102 |
| 5,856,916 A | 1/1999 | Bonnet | 363/20 |
| 5,875,103 A * | 2/1999 | Bhagwat et al. | 363/17 |
| 5,880,940 A | 3/1999 | Poon | 363/20 |
| 5,886,477 A | 3/1999 | Honbo et al. | 315/209 |
| 5,886,884 A | 3/1999 | Baek et al. | 363/48 |
| 5,894,412 A | 4/1999 | Faulk | 363/56 |
| 5,910,709 A | 6/1999 | Stevanovic et al. | 315/225 |
| 5,917,722 A | 6/1999 | Singh | 363/132 |
| 5,923,129 A | 7/1999 | Henry | 315/307 |
| 5,930,121 A * | 7/1999 | Henry | 363/16 |
| 5,932,976 A | 8/1999 | Maheshwari et al. | 315/291 |
| 5,939,830 A | 8/1999 | Praiswater | |
| 5,946,200 A | 8/1999 | Kim et al. | 363/17 |
| 6,011,360 A | 1/2000 | Gradzki et al. | 315/244 |
| 6,051,940 A | 4/2000 | Arun | 315/307 |
| 6,114,814 A | 9/2000 | Shannon et al. | 315/219 |
| 6,151,232 A | 11/2000 | Furuhashi et al. | 363/97 |
| 6,316,881 B1 * | 11/2001 | Shannon et al. | 315/219 |
| 6,570,344 B2 * | 5/2003 | Lin | 315/224 |

## OTHER PUBLICATIONS

Case No. CV–00–4071 CW (EDL), O2Micro International Limited (Plaintiff) v. Monolithic Power Systems, Inc. (Defendant), Defendant Monolithic Power Systems, Inc.'s Preliminary Invalidity Contentions, Jun. 7, 2002.

Case No. CV–00–4071 CW and CV–01–3995 CW, O2Micro International Limited (Plaintiff and Counterdefendants) v. Monolithic Power Systems, Inc. (Defendant and Counterclaimant), Defendant and Counterclaimant Monolithic Power Systems, Inc.'s Responsive Claim Construction Brief, Sep. 6, 2002.

Case No. CV–00–4071 CW and CV–01–3995 CW, O2Micro International Limited (Plaintiff and Counterdefendants) v. Monolithic Power Systems, Inc. (Defendant and Counterclaimant), Defendant and Counterclaimant Monolithic Power Systems, Inc.'s Surreply Claim Construction Brief, Sep. 20, 2002.

Case No. CV–00–4071 CW and CV–01–3995 CW, O2Micro International Limited (Plaintiff and Counterdefendants) v. Monolithic Power Systems, Inc. (Defendant and Counterclaimant), Order Construing Disputed Claims and Terms, Dec. 27, 2002.

Case No. CV–00–4071 CW and CV–01–3995 CW, O2Micro International Limited (Plaintiff and Counterdefendants) v. Monolithic Power Systems, Inc. (Defendant and Counterclaimant), Defendant Monolithic Power Systems, Inc.s Final Invalidity Contentions, Feb. 5, 2003.

"An Introduction to the Principles and Features of Resonant Power Conversion", Steve Freeland, from Recent Developments in Resonant Power Conversion, intertec Communications, Inc., 1988, pp. 20–43, No Date.

Zero–Voltage Switching Techniques in DC/DC Converters, Kwang–Hwa Liu and Fred C. Lee, from Recent Developments in Resonant Power Conversion, Intertec Communications, Inc., 1988, pp. 211–223, No Date.

"A New and Improved Control Technique Greatly Simplifies the Design of ZVS Resonant Inverters and DC/DC Power Supplies", Mehmet K. Nalbant, 1995 IEEE pp. 694–701, No date.

Switching Power Supply Design, Abraham I. Pressman, McGraw–Hill, 1991, pp. 93–104; 471–492, No date.

"Phase Shifted Zero Voltage Transition Design Considerations and the UC3875 PWM Controller", by Bill Andreycak, Unitrode, Application Note, May 1997, pp. 1–14.

"Fixed–Frequency, Resonant–Switched Pulse Width Modulation with Phase–Shifted Control", by Bob Mammano and Jeff Putsch, from Power Supply Design Seminar, Unitrode, 1991, pp. 5–1 to 5–7.

US 6,804,129 B2

Page 3

"Zero Voltage Switching Resonant Power Conversion", by Bill Andreycak, from Power Supply Design Seminar, Unitrode, 1991, pp. A2–1 to A2–24; and A2–1A to A2–3A, No Date.

"Resonant Mode Converter Topologies", by Bob Mammano, from Power Supply Design Seminar, Unitrode, 1991, pp. P3–1 to P3–12, No Date.

The New UC3879 Phase–Shifted PWM Controller Simplifies the Design of Zero Voltage Transition Full–Bridge Converters by Laszlo Balogh, Unitrode, Application Note, 1995, pp. 1–8, No Date.

"A Comparative Study of a Class of Full–Bridge Zero–Voltage–Switched PWM Converters", by W. Chen et al., 1995 IEEE, pp. 893–899, No Date.

Optimum ZVS Full–Bridge DC/DC Converter with PWM Phase–Shift Control: Analysis, Design Considerations, and Experimental Results, by Richard Red 1 et al., 1994 IEEE, pp. 159–165, No Date.

A Frequency/PWM Controlled Converter with Two Independently Regulated Outputs, by R.A. Fisher et al., HFPC, May 1989, pp. 459–471.

High Density Power–Hybrid Design of a Half–Bridge Multi–Resonant Converter, by Richard Farrington, et al., HFPC–Virginia Polytechnic Institute, May 1990, pp. 26–33.

Small–Signal Analysis of the Zero–Voltage Switched Full–Bridge PWM Converter, V. Vlatkovic et al., HFPC–Virginia Polytechnic Institute, May 1990, pp. 262–272.

Feasible Characteristics Evaluation of Resonant Tank PWM Inverter–Linked DC–DC High–Power Converters for Medical–Use High–Voltage Application, by H. Takano et al., 1995 IEEE, pp. 913–919, No Date.

Translation of Japanese Notification and Observations, submitted on Jun. 17, 2003 to Director General of Patent Office, Japanese Patent Application No. 2001–8143, submitted by Noriko Kido.

Translation of Japanese Notification and Observations, submitted on Jun. 16, 2003 to Director General of Patent Office, Japanese Patent Application No. 2001–8143, submitted by Mayuka Matsumae.

Translation of Japanese Notification and Observations, submitted on Jun. 9, 2003 to Commissioner of the Japanese Patent Office, Japanese Patent Application No. 2001–8143, submitted by Hiromi Goto.

Advanced Power Technology, "A New Generation of Power MOSFET Offers Improved Performance at Reduced Cost", by Ken Dierberger, 2001.

* cited by examiner



## FIG. I
### PRIOR ART



FIG. 2





FIG. 3





FIG. 4a



FIG. 4b



FIG. 4c



FIG. 4d



FIG. 4e



FIG. 4f

US 6,804,129 B2

1

# HIGH-EFFICIENCY ADAPTIVE DC/AC CONVERTER

This application is a continuation application under 37 CFR § 1.53(b) of application Ser. No. 10/132,016 filed Apr. 24, 2002, which itself is a continuation application of application Ser. No. 09/850,222 filed May 7, 2001, now U.S. Pat. No. 6,396,722, which itself is a continuation application of application Ser. No. 09/437,081 filed Nov. 9, 1999, now U.S. Pat. No. 6,295,615, all of which claim priority to Provisional Application Ser. No. 60/145,118, filed Jul. 22, 1999, all of which are incorporated herein by reference.

## FIELD OF THE INVENTION

The present invention is directed to a DC to AC power converter circuit. More particularly, the present invention provides a high efficiency controller circuit that regulates power delivered to a load using a zero-voltage-switching technique. General utility for the present invention is found as a circuit for driving one or more Cold Cathode Fluorescent Lamps (CCFLs), however, those skilled in the art will recognize that the present invention can be utilized with any load where high efficiency and precise power control is required.

## DESCRIPTION OF RELATED ART

FIG. 1 depicts a convention CCFL power supply system **10**. The system broadly includes a power supply **12**, a CCFL driving circuit **16**, a controller **14**, a feedback loop **18**, and one or more lamps CCFL associated with an LCD panel **20**. Power supply **12** supplies a DC voltage to circuit **16**, and is controlled by controller **14**, through transistor Q3. Circuit **16** is a self-resonating circuit, known as a Royer circuit. Essentially, circuit **16** is a self-oscillating dc to ac converter, whose resonant frequency is set by L1 and C1, and N1–N4 designate transformer windings and number of turns of the windings. In operation, transistors Q1 and Q2 alternately conduct and switch the input voltage across windings N1 and N2, respectively. If Q1 is conducting, the input voltage is placed across winding N1. Voltages with corresponding polarity will be placed across the other windings. The induced voltage in N4 makes the base of Q2 positive, and Q1 conducts with very little voltage drop between the collector and emitter. The induced voltage at N4 also holds Q2 at cutoff. Q1 conducts until the flux in the core of TX1 reaches saturation.

Upon saturation, the collector of Q1 rises rapidly (to a value determined by the base circuit), and the induced voltages in the transformer decrease rapidly. Q1 is pulled further out of saturation, and $V_{CE}$ rises, causing the voltage across N1 to further decrease. The loss in base drive causes Q1 to turn off, which in turn causes the flux in the core to fall back slightly and induces a current in N4 to turn on Q2. The induced voltage in N4 keeps Q1 conducting in saturation until the core saturates in the opposite direction, and a similar reversed operation takes place to complete the switching cycle.

Although the inverter circuit **16** is composed of relatively few components, its proper operation depends on complex interactions of nonlinearities of the transistors and the transformer. In addition, variations in C1, Q1 and Q2 (typically, 35% tolerance) do not permit the circuit **16** to be adapted for parallel transformer arrangements, since any duplication of the circuit **16** will produce additional, undesirable operating frequencies, which may resonate at certain harmonics. When applied to a CCFL load, this circuit produces a "beat" effect

2

in the CCFLs, which is both noticeable and undesirable. Even if the tolerances are closely matched, because circuit **16** operates in self-resonant mode, the beat effects cannot be removed, as any duplication of the circuit will have its own unique operating frequency.

Some other driving systems can be found in U.S. Pat. Nos. 5,430,641; 5,619,402; 5,615,093; 5,818,172. Each of these references suffers from low efficiency, two-stage power conversion, variable-frequency operation, and/or load dependence. Additionally, when the load includes CCFL(s) and assemblies, parasitic capacitances are introduced, which affects the impedance of the CCFL itself. In order to effectively design a circuit for proper operation, the circuit must be designed to include consideration of the parasitic impedances for driving the CCFL load. Such efforts are not only time-consuming and expensive, but it is also difficult to yield an optimal converter design when dealing with various loads. Therefore, there is a need to overcome these drawbacks and provide a circuit solution that features high efficiency, reliable ignition of CCFLs, load-independent power regulation and single frequency power conversion.

## SUMMARY OF THE INVENTION

Accordingly, the present invention provides an optimized system for driving a load, obtains an optimal operation for various LCD panel loads, thereby improving the reliability of the system.

Broadly defined, the present invention provides A DC/AC converter circuit for controllably delivering power to a load, comprising an input voltage source; a first plurality of overlapping switches and a second plurality of overlapping switches being: selectively coupled to said voltage source, the first plurality of overlapping switches defining a first conduction path, the second plurality of overlapping switches defining a second conduction path. A pulse generator is provided to generate a pulse signal. Drive circuitry receives the pulse signal and controls the conduction state of the first and second plurality of switches. A transformer is provided having a primary side and a secondary side, the primary side is selectively coupled to the voltage source in an alternating fashion through the first conduction path and, alternately, through the second conduction path. A load is coupled to the secondary side of the transformer. A feedback loop circuit is provided between the load and the drive circuitry that supplies a feedback signal indicative of power being supplied to the load. The drive circuitry alternates the conduction state of the first and second plurality of switches, and the overlap time of the switches in the first plurality of switches, and the overlap time of the switches in the second plurality of switches, to couple the voltage source to the primary side based at least in part on the feedback signal and the pulse signal.

The drive circuitry is constructed to generate a first complimentary pulse signal from the pulse signal, and a ramp signal from the pulse signal. The pulse signal is supplied to a first one of the first plurality of switches to control the conduction state thereof, and the ramp signal is compared with at least the feedback signal to generate a second pulse signal, where a controllable conduction overlap condition exists between the conduction state of the first and second switches of the first plurality of switches. The second pulse signal is supplied to a second one of the first plurality of switches and controlling the conduction state thereof The drive circuitry further generates a second complimentary pulse signal based on the second pulse signal, wherein said first and second complimentary pulse signals

US 6,804,129 B2

3

control the conduction state of a first and second ones of the second plurality of switches, respectively. Likewise, a controllable conduction overlap condition exists between the conduction state of the first and second switches of the second plurality of switches.

In method form, the present invention provides a method for controlling a zero-voltage switching circuit to deliver power to a load comprising the steps of: supplying a DC voltage source; coupling a first and second transistor defining a first conduction path and a third and fourth transistor defining a second conduction path to the voltage source and a primary side of a transformer; generating a pulse signal to having a predetermined pulse width; coupling a load to a secondary side of said transformer; generating a feedback signal from the load; and controlling the feedback signal and the pulse signal to determine the conduction state of said first, second, third and fourth transistors.

In the first embodiment, the present invention provides a converter circuit for delivering power to a CCFL load, which includes a voltage source, a transformer having a primary side and a secondary side, a first pair of switches and a second pair of switches defining a first and second conduction path, respectively, between the voltage source and the primary side, a CCFL load circuit coupled to the secondary side, a pulse generator generating a pulse signal, a feedback circuit coupled to the load generating a feedback signal, and drive circuitry receiving the pulse signal and the feedback signal and coupling the first pair of switches or the second pair of switches to the voltage source and the primary side based on said pulse signal and said feedback signal to deliver power to the CCFL load.

Additionally, the first embodiment provides a pulse generator that generates a pulse signal having a predetermined frequency. The drive circuitry includes first, second, third and fourth drive circuits; and the first pair of switches includes first and second transistors, and the second pair of switches includes third and fourth transistors. The first, second, third and fourth drive circuits are connected to the control lines of the first, second, third and fourth transistors, respectively. The pulse signal is supplied to the first drive circuit so that the first transistor is switched in accordance with the pulse signal. The third drive circuit generates a first complimentary pulse signal and a ramp signal based on the pulse signal, and supplies the first complimentary pulse signal to the third transistor so that the third transistor is switched in accordance with the first complimentary pulse signal. The ramp signal and the feedback signal are compared to generate a second pulse signal. The second pulse signal is supplied to the second drive circuit so that the second transistor is switched in accordance with the second pulse signal. The forth driving circuit generates a second complementary pulse signal based on the second pulse signal and supplies the second complementary pulse signal to the fourth transistor so that the fourth transistor is switched in accordance with the second complimentary pulse signal. In the present invention, the simultaneous conduction of the first and second transistors, and the third and fourth transistors, respectively, controls the amount of power delivered to the load. The pulse signal and the second pulse signal are generated to overlap by a controlled amount, thus delivering power to the load along the first conduction path. Since the first and second complementary pulse signals are generated from the pulse signal and second pulse signal, respectively, the first and second complementary pulse signals are also generated to overlap by a controlled amount, power is delivered to the load along the second conduction path, in an alternating fashion between the first and second conduction paths.

4

Also, the pulse signal and first complementary pulse signal are generated to be approximately 180° out of phase, and the second pulse signal and the second complementary signal are generated to be approximately 180° out of phase, so that a short circuit condition between the first and second conduction paths is avoided

In addition to the converter circuit provided in the first embodiment, the second embodiment includes a flip-flop circuit coupled to the second pulse signal, which triggers the second pulse signal to the second drive signal only when the third transistor is switched into a conducting state. Additionally, the second embodiment includes, a phase-lock loop (PLL) circuit having a first input signal from the primary side and a second input signal using the feedback signal. The PLL circuit compares the phase difference between these two signals and supplies a control signal to the pulse generator to control the pulse width of the pulse signal based on the phase difference between the first and second inputs.

In both embodiments, the preferred circuit includes the feedback control loop having a first comparator for comparing a reference signal with the feedback signal and producing a first output signal. A second comparator is provided for comparing said first output signal with the ramp signal and producing said second pulse signal based on the intersection of the first output signal and the ramp signal. The feedback circuit also preferably includes a current sense circuit receiving the feedback signal and generating a trigger signal, and a switch circuit between the first and second comparator, the switch circuit receiving the trigger signal and generating either the first output signal or a predetermined minimum signal, based on the value of the trigger signal. The reference signal can include, for example, a signal that is manually generated to indicate a desires power to be delivered to the load. The predetermined minimum svoltage signal can include a programmed minimum voltage supplied to the switches, so that an overvoltage condition does not appear across the load.

Likewise, in both embodiments described herein, an overcurrent protection circuit can be provided that receives the feedback signal and controls the pulse generator based on the value of said feedback signal. An overvoltage protection can be provided to receive a voltage signal from across the load and the first output signal and compare the voltage signal from across the load and the first output signal, to control the pulse generator based on the value of the voltage signal from across the load.

It will be appreciated by those skilled in the art that although the following Detailed Description will proceed with reference being made to preferred embodiments and methods of use, the present invention is not intended to be limited to these preferred embodiments and methods of use. Rather, the present invention is of broad scope and is intended to be limited as only set forth in the accompanying claims.

Other features and advantages of the present invention will become apparent as the following Detailed Description proceeds, and upon reference to the Drawings, wherein like numerals depict like parts, and wherein:

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a conventional DC/AC converter circuit;

FIG. 2 is one preferred embodiment of a DC/AC converter circuit of the present invention;

FIGS. 2a–2f is an exemplary timing diagram of the circuit of FIG. 2;

US 6,804,129 B2

5                                                                   6

FIG. 3 is another preferred embodiment of a DC/AC converter circuit of the present invention;

FIGS. 3a–3f is an exemplary timing diagram of the circuit of FIG. 3; and

FIGS. 4a–4f depict emulation diagrams for the circuits shown in FIGS. 2 and 3.

## DETAILED DESCRIPTION OF THE INVENTION

While not wishing to be bound by example, the following Detailed Description will proceed with reference to a CCFL panel as the load for the circuit of the present invention. However, it will be apparent that the present invention is not limited only to driving one or CCFLs, rather, the present invention should be broadly construed as a power converter circuit and methodology independent of the particular load for a particular application.

As an overview, the present invention provides circuitry to controllably deliver power to a load using feedback signals and pulse signals to adjust the ON time of two pairs of switches. When one pair of switches are controllably turned ON such that their ON times overlap, power is delivered to a load (via a transformer), along a conduction path defined by the pair of switches. Likewise, when the other pair of switches are controllably turned ON such that their ON times overlap, power is delivered to a load (via a transformer), along a conduction path defined by other pair of switches. Thus, by selectively turning ON switches and controlling the overlap between-switches, the present invention can precisely control power delivered to a given load. Additionally, the present invention includes over-current and over-voltage protection circuits, which discontinues power to the load in the event of a short circuit or open circuit condition. Moreover, the controlled switching topology described herein enables the circuit to operate irrespective of the load, and with a single operating frequency independent of the resonant effects of the transformer arrangement. These features are discussed below with reference to the drawings.

The circuit diagram shown in FIG. 2 illustrates one preferred embodiment of a phase-shift, full-bridge, over-voltage-switching power converter of the present invention. Essentially, the circuit shown in FIG. 2 includes a power source 12, a plurality of switches 80 arranged as diagonal pairs of switches defining alternating conduction paths, drive circuitry 50 for driving each of the switches, a frequency sweeper 22 which generates a square wave pulse to the drive circuitry 50, a transformer TX1 (with an associated resonant tank circuit defined by the primary side of TX1 and C1) and a load. Advantageously, the present invention also includes an overlap feedback control loop 40 which controls the ON time of at least one of each pair of switches, thereby permitting controllable power to be delivered to the load.

A power source 12 is applied to the system. Initially, a bias/reference signal 30 is generated for the control circuitry (in control loop 40) from the supply. Preferably, a frequency sweeper 22 generates a 50% duty-cycle pulse signal, starting with an upper frequency and sweeping downwards at a pre-determined rate and at pre-determined steps (i.e., square wave signal of variable pulse width). The frequency sweeper 22 preferably is a programmable frequency generator, as is known in the art. The pulse signal 90 (from the sweeper 22) is delivered to B_Drive (which drives the Switch_B, i.e., controls the gate of Switch_B), and is delivered to A_Drive, which generates a complementary pulse signal 92 and a ramp signal 26. The complementary pulse signal 92 is approximately 180° out of phase with pulse signal 90, and the ramp signal 26 is approximately 90° out of phase with pulse signal, as will be described below. The ramp signal is preferably a sawtooth signal, as shown in the Figure. The ramp signal 26 is compared with the output signal 24 (referred to herein as CMP) of the error amplifier 32, through comparator 28, thus generating signal 94. The output signal 94 of the comparator 28 is likewise a 50% duty pulse delivered to C_Drive to initiate the turning on of Switch_C which, in turn, determines the amount of overlap between the switches B and C, and switches A and D. Its complimentary signal (phased approximately 180°) is applied to Switch_D, via D_Drive. It will be understood by those skilled in the art that circuits Drive_A–Drive_D are connected to the control lines (e.g., gate) of Switch_A–Switch_D, respectively, which permits each of the switches to controllably conduct, as described herein. By adjusting the amount of overlap between switches B, C and A, D, lamp-current regulation is achieved. In other words, it is the amount of overlapping in the conduction state of the pairs of switches that determines the amount of power processed in the converter. Hence, switches B and C, and switches A and D, will be referred to herein as overlapping switches.

While not wishing to be bound by example, in this embodiment, B_Drive is preferably formed of a totem pole circuit, generic low-impedance op-amp circuit, or emitter follower circuit. C_Drive is likewise constructed. Since both A-Drive and D_Drive are not directly connected to ground (i.e., floating), it is preferred that these drives are formed of a boot-strap circuit, or other high-side drive circuitry known in the art. Additionally, as stated above, A_Drive and D_Drive include an inverter to invert (i.e., phase) the signal flowing from B_Drive and C_Drive, respectively.

High-efficiency operation is achieved through a zero-voltage-switching technique. The four MOSFETs (Switch_A–Switch_D) 80 are turned on after their intrinsic diodes (D1–D4) conduct, which provides a current flowing path of energy in the transformer/capacitor.(TX1/C1) arrangement, thereby ensuring that a zero voltage is across the switches when they are turned on. With this controlled operation, switching loss is minimized and high efficiency is maintained.

The preferred switching operation of the overlapping switches 80 is shown with reference to the timing diagrams of FIGS. 2a–2f. Switch C is turned off at certain period of the conduction of both switches B and C (FIG. 2f). The current flowing in the tank (refer to FIG. 2) is now flowing through diode D4 (FIG. 2e) in Switch_D the primary of transformer, C1, and Switch_B, after Switch_C is turned off, thereby resonating the voltage and current in capacitor C1 and the transformer as a result of the energy delivered when switches B and C were conducting (FIG. 2f). Note that this condition must occur, since an instantaneous change in current direction of the primary side of the transformer would violate Faraday's Law. Thus, current must flow through D4 when Switch_C turns off. Switch_D is turned on after D4 has conducted. Similarly, Switch_B is turned off (FIG. 2a), the current diverts to Diode D1 associated with Switch_A before Switch_A is turned on (FIG. 2e). Likewise, Switch_D is turned off (FIG. 2d), and the current is now flowing now from Switch_A, through C1, the transformer primary and Diode D3. Switch_C is turned on after D3 has conducted (FIG. 2c). Switch_B is turned on after Switch_A is turned off which allows the diode D2 to conduct first before it is turned on. Note that the overlap of

US 6,804,129 B2

7

8

turn-on time of the diagonal switches B,C and A,D determines the energy delivered to the transformer, as shown in FIG. 2f.

In this embodiment, FIG. 2b shows that the ramp signal 26 is generated only when Switch_A is turned on. Accordingly, Drive_A, which generates the ramp signal 26, preferably includes a constant current generator circuit (not shown) that includes a capacitor having an appropriate time constant to create the ramp signal. To this end, a reference current (not shown) is utilized to charge the capacitor, and the capacitor is grounded (via, for example a transistor switch) so that the discharge rate exceeds the charge rate, thus generating the sawtooth ramp signal 26. Of course, as noted above, this can be accomplished by integrating the pulse signal 90, and thus, the ramp signal 26 can be formed using an integrator circuit (e.g., op-amp and capacitor).

In the ignition period, a pre-determined minimum overlap between the two diagonal switches is generated (i.e., between switches A,D and B,C). This gives a minimum energy from the input to the tank circuit including C1, transformer, C2, C3 and the CCFL load. Note that the load can be resistive and/or capacitive. The drive frequency starts at a predetermined upper frequency until it approaches the resonant frequency of the tank circuit and equivalent circuit reflected by the secondary side of the transformer, a significant amount of energy is delivered to the load where the CCFL is connected. Due to its high-impedance characteristics before ignition, the CCFL is subjected to high voltage from the energy supplied to the primary side. This voltage is sufficient to ignite the CCFL. The CCFL impedance decreases to its normal operating value (e.g., about 100 Kohm to 130 Kohm), and the energy supplied to the primary side based on the minimum-overlap operation is no longer sufficient to sustain a steady state operation of the CCFL. The output of the error amplifier 26 starts is regulating function to increase the overlap. It is the level of the error amplifier output determines the amount of the overlap. For example:

Referring to FIGS. 2b and 2c and the feedback loop 40 of FIG. 2, it is important to note that Switch_C is turned on when the ramp signal 26 (generated by Drive_A) is equal to the value of signal CMP 24 (generated by error amplifier 32), determined in comparator 28. This is indicated as the intersection point 36 in FIG. 2b. To prevent a short circuit, switches A,B and C,D must never be ON simultaneously. By controlling the CMP level, the overlap time between switches A,D and B,C regulates the energy delivered to the transformer. To adjust the energy delivered to the transformer (and thereby adjust the energy delivered to the CCFL load), switches C and D are time-shifted with respect to switches A and B, by controlling the error amplifier output, CMP 24. As can be understood by the timing diagrams, if the driving pulses from the output of comparator 28 into switches C and D are shifted to the right by increasing the level of CMP, an increase in the overlap between switches A,C and B,D is realized, thus increasing the energy delivered to the transformer. In practice, this corresponds to the higher-lamp current operation. Conversely, shifting the driving pulses of switches C and D to the left (by decreasing the CMP signal) decreases the energy delivered.

To this end, error amplifier 32 compares the feedback signal FB with a reference voltage REF. FB is a measure of the current value through the sense resistor Rs, which is indicative of the total current through the load 20. REF is a signal indicative of the desired load conditions, e.g., the desired current to flow through the load. During normal operation, REF=FB. If, however, load conditions are intentionally offset, for example, from a dimmer switch associated with an LCD panel display, the value of REF will increase/decrease accordingly. The compared value generates CMP accordingly. The value of CMP is reflective of the load conditions and/or an intentional bias, and is realized as the difference between REF and FB (i.e., REF−FB).

To protect the load and circuit from an open circuit condition at the load (e.g., open CCFL lamp condition during normal operation) the FB signal is also preferably compared to a reference value (not shown and different from the REF signal described above) at the current sense comparator 42, the output of which defines the condition of switch 28, discussed below. This reference value can be programmable, and/or user-definable, and preferably reflects the minimum or maximum current permitted by the system (for example, as may be rated for the individual components, and, in particular, the CCFL load). If the value of the feedback FB signal and the reference signal is within a permitted range (normal operation), the output of the current sense comparator is 1 (or, HIGH). This permits CMP to flow through switch 38, and the circuit operates as described herein to deliver power to the load. If, however, the value of the FB signal and the reference signal is outside a predetermined range (open circuit or short circuit condition), the output of the current sense comparator is 0 (or, LOW), prohibiting the CMP signal from flowing through the switch 38. (Of course, the reverse can be true, in which the switch triggers on a LOW condition). Instead a minimal voltage Vmin is supplied by switch 38 (not shown) and applied to comparator 28 until the current sense comparator indicates permissible current flowing through Rs. Accordingly, switch 38 includes appropriate programmable voltage selection Vmin for when the sense current is 0. Turning again to FIG. 2b, the effect of this operation is a lowering of the CMP DC value to a nominal, or minimum, value (i.e., CMP=Vmin) so that a high voltage condition is not appearing on the transformer TX1. Thus, the crossover point 36 is shifted to the left, thereby decreasing the amount of overlap between complementary switches (recall Switch_C is turned ON at the intersection point 36). Likewise, current sense comparator 42 is connected to the frequency generator 22 to turn the generator 22 off when the sense value is 0 (or some other preset value indicative of an open-circuit condition). The CMP is fed into the protection circuit 62. This is to shut off the frequency sweeper 22 if the CCFL is removed during operation (open-circuit condition).

To protect the circuit from an over-voltage condition, the present embodiment preferably includes protection circuit 60, the operation of which is provided below (the description of the over current protection through the current sense comparator 42 is provided above). The circuit 60 includes a protection comparator 62 which compares signal CMP with a voltage signal 66 derived from the load 20. Preferably, voltage signal is derived from the voltage divider C2 and C3 (i.e., in parallel with load 20), as shown in FIG. 2. In the open-lamp condition, the frequency sweeper continues sweeping until the OVP signal 66 reaches a threshold. The OVP signal 62 is taken at the output capacitor divider C2 and C3 to detect the voltage at the output of the transformer TX1. To simplify the analysis, these capacitors also represent the lump capacitor of the equivalent load capacitance. The threshold is a reference and circuit is being designed so that the voltage at the secondary side of the transformer is greater than the minimum striking voltage (e.g., as may be required by the LCD panel) while less than the rated voltage of the transformer. When OVP exceeds the threshold, the frequency sweeper stops the frequency sweeping. Meanwhile,

US 6,804,129 B2

9

the current-sense 42 detects no signal across the sense resistor Rs. Therefore the signal at 24, the output of a switch block 38, is set to be at minimum value so that minimum overlap between switches A,C and B,D is seen. Preferably, a timer 64 is initiated once the OVP exceeds the threshold, thereby initiating a time-out sequence. The duration of the time-out is preferably designed according to the requirement of the loads (e.g., CCFLs of an LCD panel), but could alternately be set at some programmable value. Drive pulses are disabled once the time-out is reached, thus providing safe-operation output of the converter circuit. That is, circuit 60 provides a sufficient voltage to ignite the lamp, but will shut off after a certain period if the lamp is not connected to the converter, so that erroneous high voltage is avoided at the output. This duration is necessary since a non-ignited lamp is similar to an open-lamp condition.

FIGS. 3 and 3a–3f depict another preferred embodiment of the DC/AC circuit of the present invention. In this embodiment, the circuit operates in a similar manner as provided in FIG. 2 and FIGS. 2a–2f, however this embodiment further includes a phase lock loop circuit (PLL) 70 for controlling the frequency sweeper 22, and a flip-flop circuit 72 to time the input of a signal into C_Drive. As can be understood by the timing diagrams, if the 50% driving pulses of switches C and D are shifted to the right by increasing the level of CMP, an increase in the overlap between switches A,C and B,D is realized, thus increasing the energy delivered to the transformer. In practice, this corresponds to the higher-lamp current operation (as may be required, e.g., by a manual increase in the REF voltage, described above). Conversely, shifting the driving pulses of switches C and D to the left (by decreasing the CMP signal) decreases the energy delivered. The phase-lock-loop circuit 70 maintains the phase relationship between the feedback current (through Rs) and tank current.(through TX1/C1) during normal operation, as shown in FIG. 3. The PLL circuit 70 preferably includes input signals from the tank circuit (C1 and the primary of TX1) signal 98 and Rs (FB signal, described above). Once the CCFL is ignited, and the current in the CCFL is detected through Rs, the PLL 70 circuit is activated which locks the phase between the lamp current and the current in the primary resonant tank (C1 and transformer primary). That is, the PLL is provided to adjust the frequency of the frequency sweeper 22 for any parasitic variations such as temperature effect, mechanical arrangement like wiring between the converter and the LCD panel and distance between the lamp and metal chassis of LCD panel that affect the capacitance and inductance. Preferably, the system maintains a phase difference of 180 degrees between the resonant tank circuit and the current through Rs (load current). Thus, irrespective of the particular load conditions and/or the operating frequency of the resonant tank circuit, the system finds an optimal operation point.

The operation of the feedback loop of FIG. 3 is similar to the description above for FIG. 2. However, as shown in FIG. 3b, this embodiment times the output of an initiating signal through C_Drive through flip-flop 72. For instance, during normal operation, the output of the error amplifier 32 is fed through the controlled switch block 38 (described above), resulting in signal 24. A certain amount of overlap between switches A,C and B,D is seen through comparator 28 and flip-flop 72 which drives switches C and D (recall D_Drive produces the complementary signal of C_Drive). This provides a steady-state operation for the CCFL (panel) load. Considering the removal of the CCFL (panel) during the normal operation, CMP rises to the rail of output of the error amplifier and triggers the protection circuit immediately. This function is inhibited during the ignition period.

Referring briefly to FIGS. 3a–3f, the triggering of switches C and D, through C-Drive and D_Drive, is, in this

10

embodiment, alternating as a result of the flip-flop circuit 72. As is shown in FIG. 3b, the flip-flop triggers every other time, thereby initiating C_Drive (and, accordingly, D_Drive). The timing otherwise operates in the same way as discussed above with reference to FIGS. 2a–2f

Referring now to FIGS. 4a–4f, the output circuit of FIG. 2 or 3 is emulated. For example, FIG. 4a shows that at 21V input, when the frequency sweeper approaches 75.7 KHz (0.5 us overlapping), the output is reaching 1.67 KVp-p. This voltage is insufficient to turn on the CCFL if it requires 3300 Vp-p to ignite. As the frequency decreases to say 68 KHz, the minimum overlap generates about 3.9 KVp-p at the output, which is sufficient to ignite the CCFL. This is illustrated in FIG. 4b. At this frequency, the overlap increases to 1.5 us gives output about 1.9 KVp-p to operate the 130 Kohm lamp impedance. This has been shown in FIG. 4c. As another example, FIG. 4d illustrates the operation while the input voltage is 7V. At 71.4 KHz, output is 750 Vp-p before the lamp is striking. As the frequency decreases, the output voltage increases until the lamp ignites. FIG. 4e shows that at 65.8 KHz, the output reaches 3500 Vp-p. The regulation of the CCFL current is achieved by adjusting the overlap to support 1130 Kohm impedance after ignition. The voltage across the CCFL is now 1.9 KVp-p for a 660 Vrms lamp. This is also illustrated in FIG. 4f. Although not shown, the emulation of the circuit of FIG. 3 behaves in a similar manner.

It should be noted that the difference between the first and second embodiments (i.e., by the addition of the flip flop and the PLL in FIG. 3) will not effect the overall operational parameters set forth in FIGS. 4a–4f However, the addition of the PLL has been determined to account for non-ideal impedances that develop in the circuit, and may be added as an alternative to the circuit shown in FIG. 2. Also, the addition of the flip-flop permits the removal of the constant current circuit, described above.

Thus, it is evident that there has been provided a high efficiency adaptive DC/AC converter circuit that satisfies the aims and objectives stated herein. It will be apparent to those skilled in the art that modifications are possible. For example, although the present invention has described the use of MOSFETs for the switched, those skilled in the art will recognize that the entire circuit can be constructed using BJT transistors, or a mix of any type of transistors, including MOSFETs and BJTs. Other modifications are possible. For example, the drive circuitry associated with Drive_B and Drive_D may be comprised of common-collector type circuitry, since the associated transistors are coupled to ground and are thus not subject to floating conditions. The PLL circuit described herein is preferably a generic PLL circuit 70, as is known in the art, appropriately modified to accept the input signal and generate the control signal, described above. The pulse generator 22 is preferably a pulse width modulation circuit (PWM) or frequency width modulation circuit (FWM), both of which are well known in the art. Likewise, the protection circuit 62 and timer are constructed out of known circuits and are appropriately modified to operate as described herein. Other circuitry will become readily apparent to those skilled in the art, and all such modifications are deemed within the spirit and scope of the present invention, only as limited by the appended claims.

What is claimed is:

1. A DC to AC cold cathode fluorescent lamp inverter circuit comprising:

a plurality of switches for selective coupling to a voltage line;

a transformer having a primary side and a secondary side, said primary side for selective coupling to said voltage line in an alternating fashion through said switches;

US 6,804,129 B2

11

a feedback signal line receiving a feedback signal indicative of an electrical condition at a cold cathode fluorescent lamp load; and

a feedback control circuit coupled to said feedback signal line and said switches for adjusting the power delivered to said load only if said electrical condition is outside a predetermined range.

**2.** A circuit as claimed in claim **1**, wherein said electrical condition is the current through said load.

**3.** A circuit as claimed in claim **2**, wherein said predetermined range is zero amps to a first predetermined current value.

**4.** A circuit as claimed in claim **1**, wherein said electrical condition is the power through said load.

**5.** A circuit as claimed in claim **4**, wherein said predetermined range is zero watts to a first predetermined power value.

**6.** A circuit as claimed in claim **1**, wherein said electrical condition is the voltage across said load.

**7.** A circuit as claimed in claim **6**, wherein said predetermined range is zero volts to a first predetermined voltage value.

**8.** A circuit as claimed in claim **1**, wherein said electrical condition is the impedance of said load.

**9.** A circuit as claimed in claim **8**, wherein said predetermined range is an impedance greater than 130 kiloohm.

**10.** A circuit as claimed in claim **1**, wherein said feedback control circuit reduces power to said load to a first power level when said electrical condition is outside a predetermined range.

**11.** A circuit as claimed in claim **1**, wherein said feedback control circuit reduces power to said load to zero when said electrical condition is outside a predetermined range.

**12.** A circuit as claimed in claim **1**, wherein said feedback control circuit reduces current to said load to a first current level when said electrical condition is outside a predetermined range.

**13.** A circuit as claimed in claim **1**, wherein said predetermined range indicates an open lamp condition at said load.

**14.** A circuit as claimed in claim **1**, wherein said predetermined range indicates a short circuit condition at said load.

**15.** A DC to AC cold cathode fluorescent lamp inverter controller integrated circuit comprising:

a plurality of outputs for controlling a plurality of switches to selectively couple said switches to a voltage line;

a feedback signal input receiving a feedback signal indicative of an electrical condition at a cold cathode fluorescent lamp load; and

a feedback control circuit coupled to said feedback signal input and said outputs for adjusting the power delivered to said load only if said electrical condition is outside a predetermined range.

**16.** A circuit as claimed in claim **15**, wherein said electrical condition is the current through said load.

**17.** A circuit as claimed in claim **1**, wherein said electrical condition is the voltage across said load.

**18.** A circuit as claimed in claim **15**, wherein said electrical condition is the impedance of said load.

**19.** A circuit as claimed in claim **15**, wherein said feedback control circuit reduces power to said load to a first power level when said electrical condition is outside a predetermined range.

**20.** A circuit as claimed in claim **15**, wherein said feedback control circuit reduces current to said load to a first

12

current level when said electrical condition is outside a predetermined range.

**21.** A circuit as claimed in claim **15**, wherein said predetermined range indicates an open lamp condition at said load.

**22.** A circuit as claimed in claim **15**, wherein said predetermined range indicates a short circuit condition at said load.

**23.** A liquid crystal display unit comprising:

a liquid crystal screen;

a cold cathode fluorescent lamp for illuminating said liquid crystal screen;

a plurality of switches for selective coupling to a voltage line;

a transformer having a primary side and a secondary side, said primary side for selective coupling to said voltage line in an alternating fashion through said switches and said secondary side coupled to said cold cathode fluorescent lamp;

a feedback signal line receiving a feedback signal indicative of an electrical condition at said cold cathode fluorescent lamp; and

a feedback control circuit coupled to said feedback signal line and said switches for adjusting the power delivered to said cold cathode fluorescent lamp only if said electrical condition is outside a predetermined range.

**24.** The liquid crystal display unit as claimed in claim **23** further comprising:

a graphics controller coupled to said liquid crystal screen for controlling images on said liquid crystal screen;

a microprocessor coupled to said graphics controller for controlling said graphics controller;

random access memory coupled to said microprocessor for storing instructions from said microprocessor; and

a hard disk drive coupled to said microprocessor for storing data from said microprocessor.

**25.** A method for controlling a DC to AC cold cathode fluorescent lamp inverter circuit comprising:

providing a first pulse signal to a first transistor;

selectively coupling said first transistor to a voltage;

providing a second pulse signal to a second transistor;

selectively coupling said second transistor to said voltage;

receiving a feedback signal indicative of an electrical condition at a cold cathode fluorescent lamp load; and

adjusting the power delivered to said load only if said electrical condition is outside a predetermined range.

**26.** A method as claimed in claim **25**, wherein said electrical condition is the current through said load.

**27.** A method as claimed in claim **25**, wherein said electrical condition is the voltage across said load.

**28.** A method as claimed in claim **25**, wherein said feedback control circuit reduces power to said load to a first power level when said electrical condition is outside a predetermined range.

**29.** A method as claimed in claim **25**, wherein said feedback control circuit reduces current to said load to a first current level when said electrical condition is outside a predetermined range.

**30.** A method as claimed in claim **25** further comprising:

detecting an open lamp condition at said load; and

reducing power delivered to said load after such open lamp condition.

* * * * *