# EXHIBIT C

```
1  Henry C. Bunsow (SBN 060707)
   bunsowh@howrey.com
2  K.T. Cherian (SBN 133967)
   cheriank@howrey.com
3  Duane H. Mathiowetz (SBN 111831)
   mathiowetzd@howrey.com
4  Henry C. Su (SBN 211202)
   suh@howrey.com
5  HOWREY LLP
   525 Market Street, Suite 3600
6  San Francisco, California 94105
   Telephone: (415) 848-4900
7  Facsimile: (415) 848-4999

8  Attorneys for Defendant O2 Micro International Limited
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>Defendant. | Case No. C 07-02363-CW<br><br>**O2 MICRO INTERNATIONAL LIMITED'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO MONOLITHIC POWER SYSTEMS, INC. (NOS. 1-26)** |

HOWREY LLP

O2 MICRO'S FIRST SET OF REQUESTS FOR
PRODUCTION TO MPS
Case No. C 07-02363

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant O2 Micro International Limited ("O2 Micro") hereby serves this First Set of Requests for Production of Documents and Things upon Plaintiff Monolithic Power Systems, Inc. ("MPS") and requests that MPS produce the requested documents and things for inspection and/or copying at the offices of Howrey LLP, 1950 University Avenue, 4th Floor, East Palo Alto, CA 94303 within thirty (30) days of service hereof.

**DEFINITIONS**

1. "O2 Micro" or "Defendant" means O2 Micro International Limited.

2. "MPS," "you" or "your" means Monolithic Power Systems, Inc. and/or any other company name under which MPS is doing business, and includes any parents, predecessors-in-interest (including all entities acquired by MPS), successors-in-interest, consultants, accountants, subsidiaries, affiliates, divisions, associated organizations, joint ventures, present and former officers, directors, trustees, employees, staff members, agents, or other representatives, including counsel and patent agents acting on behalf of MPS, in any country.

3. "The '129 patent" means U.S. Patent No. 6,804,129, issued on October 12, 2004.

4. The term "available" includes, but is not limited to, the following meanings: accessible; obtainable; at hand; derivable from; getable; procurable; and securable.

5. "Communication" means any exchange or transfer of information between two or more persons, whether written, oral, electronic, digital or any other form of transferring information.

6. "Document" is defined to be synonymous in meaning and equal in scope to the use of that term in Fed. R. Civ. P. 34, and includes all tangible things, all originals (or, if originals are not available, identical copies thereof), all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in your actual or constructive possession or control, regardless of the medium on which they are produced, reproduced, or stored (including without limitation computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Fed. R. Evid. 1001.

1 Any document bearing marks, including without limitation, initials, stamped initials, comments, or
2 notations not a part of the original text or photographic reproduction thereof, is a separate document.
3     7.    "End-user device" means a product sold to consumers through retail channels.
4     8.    The term "identify," when used with respect to any natural person, means to state the
5 person's full name and the person's present or last-known address, telephone number,
6 position/occupation and employer.
7     9.    The term "identify" when used with respect to any legal entity (such as a corporation,
8 company, or person other than a natural person) means to state the entity's name, the place of
9 incorporation or organization, the principal place of business and the nature of the business conducted
10 by that legal entity.
11     10.    The term "identify," when used with respect to any document means to state the
12 document's title and subject matter, form (e.g., letter, memorandum, e-mail, etc.), document
13 production number range, date, author(s), addressee(s), recipient(s), and name of its present custodian.
14     11.    The term "identify," when used with respect to any communication means to identify
15 the sender(s), recipient(s), and/or participant(s) of the communication and to state the date, subject
16 matter, and nature (e.g., telephone call, meeting, letter, etc.) of the communication. If the
17 communication was in person, also state the location.
18     12.    "Including" means "including but not limited to."
19     13.    "Inverter Controller" means a half-bridge or full-bridge configuration DC to AC
20 inverter integrated circuit (IC) chip for use in delivering AC power to a cold cathode fluorescent lamp
21 (CCFL).
22     14.    "Inverter Module" means a device that incorporates an Inverter Controller and delivers
23 AC power to a cold cathode fluorescent lamp (CCFL).
24     15.    "MPS Asserted Product" means any product for which MPS seeks a declaratory
25 judgment of non-infringement of the '129 patent in this case, and includes Inverter Controllers
26 designed and developed by MPS and Inverter Modules incorporating such inverter controllers.
27
28

16. "Person" means any individual or firm, association, organization, joint venture, partnership, corporation, or other collective organization or entity.

17. "Third party" means any entity other than O2 Micro and MPS.

18. The terms "relating" or "referring" include but are not limited to the following meanings: pertaining; concerning; discussing; mentioning; containing; reflecting; evidencing; constituting; describing; displaying; showing; identifying; proving; disproving; consisting of; supporting; contradicting; in any way legally, logically, or factually connected with the matters referenced; or having a tendency to prove or disprove any matter referenced.

19. The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of these requests all facts, documents, things or Communications that might otherwise be construed as outside the scope of these requests.

20. The use of a verb in any tense shall be construed as the use of that verb in all other tenses necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as outside its scope.

21. A plural noun shall be construed as a singular noun and a singular noun shall be construed as a plural noun whenever necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as outside its scope.

22. The disjunctive shall be construed as the conjunctive, the conjunctive shall be construed as the disjunctive, and the term "and/or" shall be construed as both conjunctive and disjunctive whenever necessary to bring within the scope of the interrogatory all responses that might otherwise be construed as outside its scope.

## INSTRUCTIONS

The following instructions apply to the requests for production below and should be considered as part of each such request.

1. All responsive documents within your possession, custody or control, as defined above, shall be produced.

2. Each responsive document or portion thereof that you claim to be privileged against discovery on any ground shall be identified by providing:

    a. description of the general type of the document, i.e. letter, memorandum, report, miscellaneous note, etc.;

    b. the date the document was created;

    c. the author;

    d. all addressees, recipients, copyholders and other distributees;

    e. the organization, if any, with which each author, addressee, recipient, or distributee was then connected to and his or her job title or description;

    f. the number of pages;

    g. a general summary of the subject matter; and

    h. the grounds for refusing to produce the document or portion thereof.

3. In the event you claim that a request is overly broad, you are requested to respond to that portion of the request which is unobjectionable and specifically identify the respect in which the request is allegedly overly broad.

4. In the event you claim that a request is unduly burdensome, you are requested to respond to that portion of the request which is unobjectionable and specifically identify the respect in which the request is allegedly unduly burdensome.

5. For any requested document that has been destroyed after the commencement of this suit, you shall identify each document, set forth the contents of each destroyed document, the date of such destruction, the identity of any individuals who authorized the destruction, and the circumstances related to such destruction.

6. For purposes of these requests, terms not specifically defined shall be given their ordinary meaning as you understand them to be used in the trade.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Separately for each MPS Asserted Product, all schematics, datasheets, specifications, application notes, engineering diagrams, technical diagrams, pilot run reports, product drawings, engineering change orders, engineering change requests, and manufacturing documents for the product, and all other documents relating to the design, development, manufacture, operation and/or function of the product.

**REQUEST FOR PRODUCTION NO. 2:**

Separately for each MPS Asserted Product, all engineering notes, engineering notebooks, lab notes, lab notebooks, lab reports, and lab review meeting minutes/summaries relating to the product.

**REQUEST FOR PRODUCTION NO. 3:**

Separately for each MPS Asserted Product, all technical manuals, customer manuals, user manuals, operating manuals, engineering manuals, process manuals, or service manuals, or any other manual containing information regarding the manufacture, use, testing, marketing or sale of the product.

**REQUEST FOR PRODUCTION NO. 4:**

Separately for each MPS Asserted Product, all design, development, and testing documents and things for the product, including documents relating to demonstrations, demonstration boards, and evaluation boards for the product.

**REQUEST FOR PRODUCTION NO. 5:**

Separately for each MPS Asserted Product, all documents relating to a theory of operation or method or manner of operation of the product.

**REQUEST FOR PRODUCTION NO. 6:**

Separately for each MPS Asserted Product, all documents relating to reference designs for the product.

**REQUEST FOR PRODUCTION NO. 7:**

Two samples of each MPS Asserted Product.

**REQUEST FOR PRODUCTION NO. 8:**

Separately for each MPS Asserted Product, all documents discussing any similarities or differences between the MPS Asserted Product and any other MPS product.

**REQUEST FOR PRODUCTION NO. 9:**

Separately for each MPS Asserted Product, all documents discussing any similarities or differences between the MPS Asserted Product and any O2 Micro product or device built using an O2 Micro product.

**REQUEST FOR PRODUCTION NO. 10:**

Separately for each MPS Asserted Product, all documents discussing any similarities or differences between the MPS Asserted Product and any Inverter Controller or Inverter Module designed and developed by any third party.

**REQUEST FOR PRODUCTION NO. 11:**

Separately for each MPS Asserted Product, all marketing materials for the product, including all advertisements, press releases, product announcements, solicitations, articles, speech or lecture texts, sales presentations, product brochures, and catalogs.

**REQUEST FOR PRODUCTION NO. 12:**

Separately for each MPS Asserted Product, all documents discussing whether the product infringes any United States patent.

**REQUEST FOR PRODUCTION NO. 13:**

Separately for each Inverter Controller that is an MPS Asserted Product, all documents discussing the potential or actual use of the product in any Inverter Module.

**REQUEST FOR PRODUCTION NO. 14:**

Separately for each MPS Asserted Product, all documents discussing the potential or actual use of the product in any end-user device.

**REQUEST FOR PRODUCTION NO. 15:**

Separately for each Inverter Controller that is an MPS Asserted Product, documents sufficient to identify all of the customers who have purchased the product from MPS.

**REQUEST FOR PRODUCTION NO. 16:**

Separately for each Inverter Module that is an MPS Asserted Product, documents sufficient to identify all of the customers who have purchased the product from the company that designs and manufactures the modules.

**REQUEST FOR PRODUCTION NO. 17:**

Separately for each Inverter Module that is an MPS Asserted Product, documents sufficient to identify all of the end-user devices that incorporate such modules.

**REQUEST FOR PRODUCTION NO. 18:**

Separately for each MPS Asserted Product, documents sufficient to show every location to which the product has been shipped.

**REQUEST FOR PRODUCTION NO. 19:**

Separately for each MPS Asserted Product, all agreements relating to the manufacture of the product.

**REQUEST FOR PRODUCTION NO. 20:**

Separately for each MPS Asserted Product, all agreements relating to the distribution of the product.

**REQUEST FOR PRODUCTION NO. 21:**

Separately for each MPS Asserted Product, all documents relating to any visits, meetings, and presentations made by MPS employees or sales representatives to any potential or actual customer for the product.

**REQUEST FOR PRODUCTION NO. 22:**

Separately for each MPS Asserted Product, all documents relating to any technical support provided by MPS to any customer for the product.

**REQUEST FOR PRODUCTION NO. 23:**

Separately for each MPS Asserted Product, all documents regarding any communications between MPS and any potential or actual customer regarding the product.

**REQUEST FOR PRODUCTION NO. 24:**

1 | Separately for each MPS Asserted Product, all documents relating to customer requirements for the product, including but not limited to qualification plans, documents relating to acceptance testing, and documents relating design and/or operational requirements imposed by customers and/or standards bodies.

**REQUEST FOR PRODUCTION NO. 25:**

All communications concerning the validity or enforceability of the '129 patent.

**REQUEST FOR PRODUCTION NO. 26:**

Separately for each MPS Asserted Product, all documents received from O2 Micro or someone on behalf of O2 Micro regarding the product.

Dated: September 21, 2007

HOWREY LLP

By: _____Richard L._____
Richard C. Lin

Attorneys for Defendant
O2 Micro International Limited

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document has been sent to the following counsel of record by ECF and/or electronic mail (for filings) or by electronic mail and U.S. Mail (for discovery) on September 21, 2007.

Thomas J. Friel, Jr.
tfriel@cooley.com
Matthew J. Brigham
mbrigham@cooley.com
Matthew P. Gubiotti
mgubiotti@cooley.com
COOLEY GODWARD KRONISH LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA 94306
Telephone: 650-843-5000
Facsimile: 650-857-0663

Brian E. Mitchell
bmitchell@cooley.com
COOLEY GODWARD KRONISH LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: 415-693-2000
Facsimile: 415-693-2222

James P. Brogan
jbrogan@cooley.com
COOLEY GODWARD KRONISH LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone: 720-566-4000
Facsimile: 720-566-4099

I also caused to be personally served, on September 21, 2007, a copy of the foregoing document on:

Matthew J. Brigham
mbrigham@cooley.com
COOLEY GODWARD KRONISH LLP
3000 El Camino Real
Five Palo Alto Square
Palo Alto, CA 94306
Telephone: 650-843-5000
Facsimile: 650-857-0663

_____
Gail Quon