1  COUNSEL LISTED ON SIGNATURE PAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>Defendant. | Case No. C 07-02363 CW<br><br>**PLAINTIFF MONOLITHIC POWER SYSTEMS, INC.'S MEMORANDUM IN OPPOSITION TO DEFENDANT O2 MICRO INTERNATIONAL LIMITED'S SECOND MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date:      August 7, 2008<br>Time:     2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge:    Honorable Claudia Wilken |

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

**Table of Contents**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. STATEMENT OF THE ISSUES TO BE DECIDED ....................................................2

III. RELEVANT FACTS.......................................................................................................2

    A. The Court Previously Held that Jurisdiction Is Proper and Refused to Decline Its Jurisdiction................................................................................2

    B. O2 Micro's Previous Covenant Not to Sue on the '129 Patent Resulted in Identical Claims against MPS's Customer in Texas...............................2

    C. O2 Micro's Proposed Covenant Not to sue Contains the Same Deficiencies as the Prior Covenant .......................................................................4

    D. O2 Micro Rejected MPS's Counter-Proposal, Which Addressed the Deficiencies and Exhausted the Instant Controversy..............................5

IV. LEGAL STANDARD .....................................................................................................6

V. ARGUMENT ...................................................................................................................7

    A. O2 Micro's Proposed Covenant Not to Sue Does Not Extinguish the Actual Controversy Between the Parties Over the '129 Patent. .........................7

    B. This Court Remains the Proper Forum to Resolve this Dispute............................10

VI. CONCLUSION ..............................................................................................................10

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

i.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna Life Ins. Co. v. Haworth*
  300 U.S. 227 ........................................................................................................................7

*Benitec Australia, Ltd. v. Nucleonics, Inc.*
  F.3d., Case No. 06-1122 (Fed. Cir., July 20, 2007) ..........................................................7

*Crossbow Tech., Inc. v. YH Tech., et al*, 531 F.Supp.2d 1117 .................................................4

*EMC Corp. v. Norand Corp.*
  89 F.3d 807 (Fed. Cir. 1996) ............................................................................................10

*Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*
  474 F.Supp.2d 779 (E.D. Va. 2007) .................................................................................10

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) ........................................9

*Frederick Goldman, Inc. v. West* 2007 WL 1989291 (S.D.N.Y July 6, 2007) ........................6

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
  312 U.S. 270 (1941) ...........................................................................................................7

*MedImmune, Inc., Genentech, Inc.*, 127 S. Ct. 764 (2007) ..........................................2, 6, 7, 8

*MPS v. O2 Micro*, Case No. 4:04-cv-2000 ................................................................................4

*O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc. et al.*
  Case No. 04-0359 (Oct. 12, 2004) .....................................................................................3

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ....................7, 10

*Sony Elec., Inc. v. Guardian Media Tech., Ltd.*, 497 F.3d 1271 ..............................................6

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (1995) ................................9

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*
  482 F.3d 1330 (2007) .........................................................................................................7

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F.Supp.2d 561
  (E.D. Wis. 2007 .................................................................................................................8

## STATUTES

35 U.S.C §§ 102(b) ...................................................................................................................4

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

## I. INTRODUCTION

O2 Micro International Limited ("O2 Micro") urges this Court to revisit its prior determination that—based upon the totality of circumstances—there is an actual case and controversy between O2 Micro and Monolithic Power Systems, Inc. ("MPS") over U.S. Patent No. 6,804,129 ("the '129 Patent"). In so doing, O2 Micro wholly ignores the substantial litigation history and adverse relationship between the parties that informed this Court's prior determination. Instead, O2 Micro's sole basis for its reanimated argument is a familiar covenant not to sue that fails to offer legitimate protection from O2 Micro's previously demonstrated litigation approach against MPS and its customers.

This Court and these parties have traveled this road before, and the difficult lessons of O2 Micro's prior litigation tactics are telling as to the ineffectiveness of O2 Micro's narrowly crafted covenant in extinguishing the instant controversy. Far from being "manifestly unreasonable" (Mot. at 10), MPS is taking an equitable position to secure *real* peace for itself from O2 Micro's persistent harassment using the '129 Patent. Considering the history of the parties concerning the '129 Patent and its patent family, a narrow covenant not to sue offering no protection for MPS's customers cannot extinguish the existing controversy between the parties. Nor can a narrow covenant offering no protection for functionally identical—but cosmetically distinct—products extinguish the existing controversy. Quite simply, given the unique history between the parties, O2 Micro's proffered covenant not to sue fails to provide adequate protections.

Moreover, there is no reasoned basis for revisiting the prior Order. The foundational facts underlying this Court's prior determination remain firm. O2 Micro continues to have an extensive history of litigating the '129 Patent and there continues to exist an adverse relationship between O2 Micro and MPS regarding the '129 Patent and the technology at issue. Indeed, O2 Micro does not (and cannot) dispute the facts relied upon by the Court in determining jurisdiction is proper. Accordingly, the Court should deny O2 Micro's attempt to again sidestep a legitimate and concrete controversy between the parties over the '129 Patent. If O2 Micro truly wants to end this dispute, it will agree to the covenant not to sue proposed by MPS.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

## II. STATEMENT OF THE ISSUES TO BE DECIDED

The parties present the following issues for decision:

(1) Does O2 Micro's proposed covenant not to sue extinguish the "substantial controversy" existing between MPS and O2 Micro concerning the '129 Patent?

(2) If not, should this Court nevertheless decline to hear MPS's claims?

## III. RELEVANT FACTS

### A. The Court Previously Held that Jurisdiction Is Proper and Refused to Decline Its Jurisdiction.

On August 13, 2007, the Court denied O2 Micro's motion to dismiss for a lack of subject matter jurisdiction. (D.I. 33 ["Order"].) Applying the "all circumstances" test of *MedImmune*, the Court held that the Court had jurisdiction over MPS's declaratory judgment claims:

> [T]he Court concludes that MPS presents evidence establishing that, under all the circumstances, 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'

(Order at 6-8) (quoting *MedImmune, Inc., Genentech, Inc.*, 127 S. Ct. 764 (2007)). The Court placed substantial weight on O2 Micro's history of litigating the '129 Patent against "numerous parties" and the adverse relationship between MPS and O2 Micro regarding the technology at issue. (*Id.* at 7-8.)[1] The Court also declined O2 Micro's request that the Court exercise its discretion to refuse jurisdiction. (*Id.* at 8-9) ("This is the proper Court to resolve this dispute.")

### B. O2 Micro's Previous Covenant Not to Sue on the '129 Patent Resulted in Identical Claims against MPS's Customer in Texas.

On its face, a covenant not to sue may appear to extinguish the controversy between the parties. However, history tells us that the covenant proposed here is inadequate to protect MPS and its customers from O2 Micro's predatory litigation tactics.

---

[1] The Court is well aware of the extensive litigation history between the parties. (*See, e.g.,* Order Denying O2 Micro's Motion to Dismiss [D.I. 33] at 9) (noting that "the parties have been battling before this Court for over seven years and the Court is familiar with the parties, the '129 patent and the technology at issue."). Accordingly, the complete history of related litigation between MPS and O2 is not again restated here.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

2.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

In particular, O2 Micro has previously used a covenant not to sue strategically to avoid litigating the '129 Patent in this Court. The first '129 Patent dispute began when O2 Micro sued MPS in the Eastern District of Texas the day the '129 Patent issued. *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc. et al.*, Case No. 04-0359 (filed Oct. 12, 2004). Judge Ward subsequently transferred the Texas case to this Court, where it was consolidated with the related '722 Patent litigation on August 9, 2006. *Monolithic Power Systems, Inc. v. O2 Micro Int'l, Ltd.*, Case No. 06-2929 (consolidated with Case No. 04-2000 on Aug. 6, 2006).

Following the transfer and consolidation, O2 Micro dismissed its claims under the '129 Patent and a stipulation was entered on October 11, 2006 ["*Oakland* covenant"]. The relevant portion of the *Oakland* covenant reads:

> O2 Micro covenants not to assert or reassert its '129 patent **against named defendants** for infringement by MPS full bridge inverter controllers (and products incorporating said controllers) made, used, imported, offered for sale or sold previously or currently having product designations [model numbers of twenty power inverter controller products and ten evaluation boards incorporating same].

(Mot. at 3) (emphasis added).[2] Notably, the *Oakland* covenant did not expressly extend to MPS's customers, nor did it expressly extend to functionally identical products with different product designations. The *Oakland* covenant also lacked language requiring O2 Micro to bring future '129 Patent claims before this Court.

O2 Micro furtively used the absence of explicit terms defining these rights to its advantage. Subsequent to the *Oakland* covenant, O2 Micro sought to amend its infringement contentions in a related Texas case against an MPS customer, Hon Hai Precision Industry Co. ("Hon Hai"). *O2 Micro Int'l, Ltd. v. Hon Hai Precision Industry Co.,* Case No. 05-0323 (filed July 18, 2005). The amendment accused Hon Hai of infringing the '129 Patent through its use of MPS products expressly named in the *Oakland* covenant. (*See* MPS's Memorandum in Opposition to O2 Micro's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction

---

[2] A copy of the Stipulated Dismissal is attached as Exhibit A to the Declaration of Henry Su In Support of O2 Micro's Second Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction ("Su Decl."). (D.I. 65.)

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

3.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

[D.I. 22] at 4) ("MPS Opposition").

When Hon Hai moved for summary judgment—arguing the *Oakland* covenant resulted in an implied license to certain products—O2 Micro opposed, taking an unduly narrow interpretation of the stipulation:

> The [*Oakland* covenant] does not confer on MPS the right to practice the '129 patent or to sublicense its customers to do so. **Rather, it merely contains a promise by O2 Micro not to sue MPS for infringing the '129 patent with certain products**…. All that the [*Oakland* covenant] provides to MPS is personal immunity from suit for ***these particular acts of infringement***.
>
> \* \* \*
>
> O2 Micro's covenant not to sue MPS on the '129 patent does not permit MPS to make unconditioned sales of patented products.

(*See* Declaration of Matthew J. Brigham In Support of MPS's Memorandum in Opposition to O2 Micro's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction [D.I. 23], Ex. 6 [O2 Micro's Sur-Reply to Hon Hai's Motion for Summary Judgment], at 4, 7) (emphasis added).

Plainly stated, O2 Micro dismissed its '129 Patent claims against MPS in this District to limit its risk in a failing suit,[3] only to leverage perceived ambiguities in the covenant not to sue to resurrect the exact same claims against MPS's customer in its preferred forum, the Eastern District of Texas. O2 Micro should not be permitted to do the same thing here.

### C. O2 Micro's Proposed Covenant Not to sue Contains the Same Deficiencies as the Prior Covenant.

Despite a history of taking advantage of ambiguities in language to engage in forum shopping, O2 Micro urges that this time will be different. O2 Micro offers a narrowly tailored covenant not to sue in an attempt to divest this Court of jurisdiction.[4] The relevant language of O2 Micro proposed covenant is eerily familiar:

---

[3] In *Oakland*, this Court entered final judgment that all asserted claims of U.S. Patent No. 6,396,722, the parent of the '129 Patent which shares a common specification, were invalid under 35 U.S.C §§ 102(b) and 103. (*See* Final Judgment [D.I. 1171], *MPS v. O2 Micro*, Case No. 4:04-cv-2000 (entered Oct. 24, 2007).)

[4] Inapposite to the case law upon which it relies, O2 Micro is yet to file its covenant not to sue. *See, e.g., Crossbow Tech., Inc. v. YH Tech., et al*, 531 F.Supp.2d 1117, 1119 (covenant filed *before* moving to dismiss declaratory judgment counterclaims). The language of the Su Declaration states only that O2 Micro "is willing to grant MPS an additional covenant not to sue." (Su Decl. at ¶ 7.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

4.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

> O2 Micro covenants not to assert or reassert its '129 patent against MPS for infringement by MPS power inverter controller products [model numbers of the sixteen power inverter controller products specifically identified by MPS] in the form currently in existence (and inverter modules and end-user devices incorporating such inverter controllers in a manner consistent with MPS's reference diagrams produced in this litigation) made, used, imported, offered for sale or sold by MPS. ***O2 Micro does not intend this stipulation to apply to any other parties besides MPS*** and does not intend this stipulation to have preclusive effect (such as collateral estoppel or res judicata) as to any issue or claim asserted in the future except as expressly set forth herein.

(Su Decl., D.I. 65, ¶ 7.) (emphasis added).

With the exception of addressing an updated set of MPS products, O2 Micro's proposal is substantively identical to the *Oakland* covenant. O2 Micro's narrow proposal excludes protection for MPS's customers and does not extend protection to functionally identical products with different product designations. Nor does the proposal contain language to require O2 Micro to bring future '129 Patent claims before this Court. Plainly put, considering recent history, the proposal lacks reasonable protections for MPS and its customers to avoid a repeat of the *Hon Hai* situation.

### D. O2 Micro Rejected MPS's Counter-Proposal, Which Addressed the Deficiencies and Exhausted the Instant Controversy.

Tellingly, O2 Micro neglects to mention—much less address—MPS's counter-proposal. Shortly after receiving O2 Micro's proposed covenant, MPS provided its revisions, which were tailored to avoid the undesirable result of facing an identical suit on the '129 Patent against its customers before a different court. MPS's proposal also promoted judicial efficiency – seeking to avoid future litigation over substantively identical products and/or motions to transfer venue. The MPS proposal acknowledges recent history, and seeks reasonable protections against O2 Micro's demonstrated tactics. (*See* Declaration of Matthew J. Brigham In Support of MPS's Memorandum in Opposition to O2 Micro's Second Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, Ex. A [MPS proposal].) In particular, the MPS proposal:

- Extends the covenant not to sue to MPS's direct and indirect customers;
- Extends the covenant not to sue to inverter controller products incorporating insubstantial changes to the design and relevant operation of the products; and

- Requires O2 Micro to bring '129 Patent infringement allegations against MPS or MPS's direct and indirect customers in the Northern District of California.

(*Id.* at ¶ 4.)[5] The revisions are precise attempts to close several loopholes in the language of the O2 Micro proposal that would undermine any protection afforded by the covenant not to sue. Tellingly, O2 Micro refused to grant these reasonable protections, instead bringing a second motion to dismiss before the Court.

## IV. LEGAL STANDARD

In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court clarified the relationship between Article III's jurisdictional requirements and the Declaratory Judgment Act. 127 S.Ct. 764 (2007). The Court in *MedImmune* rejected the Federal Circuit's "reasonable apprehension of suit" test as restrictive and inconsistent with precedent. *Id.* at 774, n.11. The Court instead advanced a broader standard reflecting the historical purpose of the Declaratory Judgment Act The new standard requires only that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 771. This broader standard provides a challenger with an alternative to the Hobson's choice between "abandoning his rights or risking prosecution." *Id.* at 773.

*MedImmune* has been interpreted as "lowering the bar for a plaintiff [bringing] a declaratory judgment action in a patent dispute." *Frederick Goldman, Inc. v. West*, 2007 WL 1989291, at *3 (S.D.N.Y July 6, 2007).[6] Under *MedImmune*, a dispute is justiciable if it is "real and substantial" and seeks "a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." 127 S.Ct. at 771 (citing *Aetna*

---

[5] MPS's proposal also included a provision that prevented future actions until re-examinations before the Patent Office had concluded. While not absolutely necessary, this clause was also designed to promote judicial efficiency by reducing the need for motions to stay and proceedings based on patent claims that may be changed or cancelled.

[6] The Federal Circuit acknowledges that a reduced standard applied to post-*MedImmune* decisions. *Sony Elec., Inc. v. Guardian Media Tech., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) ("[O]ur post-*MedImmune* decisions, while not attempting to define the outer boundaries of declaratory judgment jurisdiction, have made clear that a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties.")

*Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The standard is pragmatic and looks to the totality of circumstances surrounding a particular dispute:

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 771 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Federal Circuit addresses the question of declaratory jurisdiction "strictly on the framework of *MedImmune*." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed. Cir., 2007). The Federal Circuit has since applied *MedImmune* to expand declaratory jurisdiction. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (2007) (reversing dismissal of declaratory judgment action); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330 (2007) (same). Indeed, under the current legal framework, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk,* 480 F.3d at 1381. To determine if jurisdiction is proper, a court must look at the totality of the circumstances, including the patentee's course of conduct. *Id.* at 1383.

### V.   ARGUMENT

#### A.   O2 Micro's Proposed Covenant Not to Sue Does Not Extinguish the Actual Controversy Between the Parties Over the '129 Patent.

The facts underlying this Court's prior determination that there is an actual controversy between MPS and O2 Micro remain unchanged. (*See* MPS Opposition at 2-4; Order at 7-8.) O2 Micro continues to have an extensive history of litigating the '129 Patent against MPS and others. (MPS Opposition at 7-8.) O2 Micro continues to have a history of threatening MPS's customers with the '129 Patent. (*Id.* at 11.) And, particularly significant for purposes of this dispute, O2 Micro has an established history of narrowly interpreting covenants not to sue to strategically engage in litigation against MPS's customers in its preferred forum, the Eastern District of Texas. (*Id.* at 9-10.) Plainly stated, considering the totality of the circumstances, O2 Micro's proposed covenant not to sue fails to extinguish the "definite and concrete" dispute between the parties over

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

7.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

the '129 Patent and the technology at issue. *MedImmune,* 127 S.Ct. at 771.

For example, MPS continues to have a protectable interest in its customer relationships sufficient to confer jurisdiction. *See, e.g., WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F.Supp.2d 561 (E.D. Wis. 2007).[7] In *Global*, the patentee moved to dismiss (for the *fourth* time) arguing that its amended covenant not to sue divested the court of jurisdiction over the declaratory judgment plaintiff's ["WS"] claims. *Id.* at 564. The patentee's most recent amendment to the covenant added protection against suit for certain WS customers. *Id.*

The court denied the motion to dismiss. Under *MedImmune*, jurisdiction remained proper because the patentee's threats against WS's customers were causing injury in the form of potential loss of customers and reputation. *Id.* at 565-66. Considering "all the circumstances," the court decided the best approach was to let the parties clear the air so that the patentee would cease its "scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity." *Id.* at 566 (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988)). Considering O2 Micro's pattern of harassing MPS customers with the '129 Patent, the same approach should be adopted here. (*See, e.g.,* Declaration of Matthew J. Brigham In Support of MPS's Memorandum in Opposition to O2 Micro's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction [D.I. 23], Ex. 8 [Letter from R. Harkins to Ken-Ichi Baba dated November 9, 2006].)

By contrast, O2 Micro's recycled covenant ignores the unique history of its dispute with MPS. O2 Micro's proposal fails to extend protection to MPS's direct and indirect customers; fails to account for inverter controller products incorporating insubstantial changes; and fails to require O2 Micro to bring future '129 Patent claims against MPS or MPS's customers in the Northern District of California. There is good cause for these conditions—each is meant to address MPS's specific concerns resulting from O2 Micro's demonstrated tactics against MPS and its customers. Given O2 Micro's prior acts, MPS and its customers are entitled to reasonable

---

[7] Additional background on the *Global* cases is found in MPS's earlier opposition. (MPS Opposition at 12-13.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

8.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

protections to facilitate a lasting peace and to prevent a repeat of the *Hon Hai* situation.

Far from acknowledging this unique history, O2 Micro parrots language from *Super Sack* to argue that its boilerplate proposal divests this Court of jurisdiction. (Mot. at 7-8) (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (1995)). *Super Sack* is not a panacea for O2 Micro's flawed covenant not to sue. In *Super Sack*, the Federal Circuit held that a patentee's *unconditional* surrender of its patent rights divested the court of jurisdiction. *Id.* at 1056. The Court held:

> This [unconditional surrender of patent rights by the patentee] *totally removes* any current or future apprehension by [declaratory judgment plaintiff] that it will face claims of infringement regarding the patents-in-suit, and it *completely eliminates* any actual case or controversy in this case.

*Id.* (emphasis added). *Super Sack* reflects the Federal Circuit's pragmatic view of jurisdiction. When a covenant not to sue "completely eliminates" the future apprehension of suit, it divests a court of jurisdiction. It follows that an *incomplete* surrender of rights—such as that offered by O2 Micro—is ineffective to extinguish a "definite and concrete" dispute between parties. On measure, *Super Sack* demonstrates why, given the unique procedural history between the parties, the deficiencies in O2 Micro's proposed covenant fail to extinguish the instant controversy.

The Federal Circuit has also cautioned against the blanket application of *Super Sack*. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005). In *Fort James*, the district court had relied on *Super Sack* in holding that a patentee's covenant not to sue mooted the controversy between the parties. *Id.* at 1348. The Federal Circuit reversed and remanded, finding that "the district court's literal application of the holding of *Super Sack* fails to comprehend the unique procedural posture of the instant case." *Id.* at 1348. *Fort James* counsels towards looking at the totality of circumstances in determining whether a covenant not to sue adequately extinguishes a concrete controversy. Here, the unique history between MPS and O2 Micro involving the '129 Patent and its patent family demonstrates that O2 Micro's proposed covenant is ineffective to extinguish the controversy between the parties.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

9.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

### B. This Court Remains the Proper Forum to Resolve this Dispute.

A district court must have a sound basis for declining to exercise its jurisdiction over a properly brought declaratory judgment action. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007) (there must be a "sound basis for refusing to adjudicate an actual controversy"); *see also, EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) ("[T]he district court's discretion [to decline jurisdiction] is not unfettered."). Indeed, a court's discretion to grant declaratory relief "should be liberally exercised to effectuate the purposes of the Declaratory Judgment Act and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F.Supp.2d 779, 784 (E.D. Va. 2007).

There is no good reason for this Court to decline to hear MPS's claims. (*See* Order at 8.) The parties have been litigating before this Court for almost eight years, and the Court is well aware of the relevant parties, patents, and technology. And, considering that O2 Micro flatly rejected each of MPS's reasonable revisions to its proposed covenant, O2 Micro's suggestion that "the parties are engaged in serious negotiations regarding the patent" (Mot. at 10) is absurd. O2 Micro has consistently demonstrated—through its prior litigation tactics and its current position on its narrow covenant—that it intends to take extraordinary means to litigate the '129 Patent against MPS and its customer on its own terms. Under such circumstances, MPS is entitled to full relief in this Court from the uncertainty and insecurity with respect to its rights under the '129 Patent. Plainly stated, this remains "the proper Court to resolve this dispute." (Order at 8-9.)

### VI. CONCLUSION

For the foregoing reasons, O2 Micro's motion should be denied.

Dated: July 17, 2008                                  COOLEY GODWARD KRONISH LLP


                                                      By: */s/ Matthew J. Brigham*
                                                           Matthew J. Brigham

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

10.

MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW

| | |
|---|---|
| 1 | |
| 2 | THOMAS J. FRIEL, JR. (80065) (tfriel@cooley.com) |
| 3 | MATTHEW J. BRIGHAM (191428) (mbrigham@cooley.com) |
| 4 | MATTHEW P. GUBIOTTI (241833) (mgubiotti@cooley.com) |
| 5 | COOLEY GODWARD KRONISH LLP 3000 El Camino Real |
| 6 | Five Palo Alto Square Palo Alto, CA 94306 |
| 7 | Telephone: (650) 843-5000 |
| 8 | Facsimile: (650) 857-0663 |
| 9 | JAMES P. BROGAN (155906) (jbrogan@cooley.com) |
| 10 | COOLEY GODWARD KRONISH LLP |
| 11 | 380 Interlocken Crescent, Suite 900 Broomfield, CO 80021-8023 |
| 12 | Telephone: (720) 566-4000 Facsimile: (720) 566-4099 |
| 13 | |
| 14 | BRIAN E. MITCHELL (190095) (bmitchell@cooley.com) |
| 15 | COOLEY GODWARD KRONISH LLP 101 California Street, 5th Floor |
| 16 | San Francisco, CA 94111-5800 Telephone: (415) 693-2000 |
| 17 | Facsimile: (415) 693-2222 |
| 18 | Attorneys for Plaintiff Monolithic Power Systems, Inc. |
| 19 | |

775095/PA

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

11.

**MPS'S OPPOSITION TO O2'S
SECOND MOTION TO DISMISS
C 07-02363 CW**