K.T. Cherian (SBN 133967)
cheriank@howrey.com
Duane H. Mathiowetz (SBN 111831)
mathiowetzd@howrey.com
Henry C. Su (SBN 211202)
suh@howrey.com
Richard C. Lin (SBN 209233)
linrichard@howrey.com
Marilee C. Wang (SBN 232432)
wangm@howrey.com
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Telephone: (415) 848-4900
Facsimile: (415) 848-4999

Attorneys for Defendant O2 Micro International Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,

Plaintiff,

vs.

O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,

Defendant.

Case No. C 07-02363-CW

**DEFENDANT O2 MICRO INTERNATIONAL LIMITED'S REPLY IN SUPPORT OF ITS SECOND MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Date: August 7, 2008
Time: 2:00 p.m.
Room: Courtroom 2, 4th Floor
Judge: Honorable Claudia Wilken

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. MPS Accepted O2 Micro's Prior Covenant Not-to-Sue and Stipulated to a Dismissal of the '129 Patent from the '2000 Case; This Covenant Is No Different. ..... 2

II. MPS Fails to Present Any Facts Showing the Existence of a Current, Justiciable Controversy Not Resolved by O2 Micro's Covenant Not-to-Sue. ..... 4

III. MPS Cannot Maintain Jurisdiction Over This Declaratory Judgment Action to Protect Unnamed and Unascertained "Direct and Indirect" Customers. ..... 6

IV. MPS Cannot Use the Declaratory Judgment Act to Protect Cover Undeveloped, Future Products and Products Still in Development. ..... 8

V. MPS Cannot Use the Declaratory Judgment Act to Extract a Forum Selection Clause from O2 Micro. ..... 10

VI. Even If Jurisdiction Is Found to Exist, This Court Should Decline to Exercise Any Jurisdiction Over This Action. ..... 12

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999) .......... 9

*Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) .......... 5, 6

*Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871 (Fed. Cir. 2008) .......... 9, 10, 12

*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) .......... 11

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996) .......... 12

*Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579 (E.D. Mo. 2007) .......... 9

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) .......... 11

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) .......... 1

*MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000 (C.D. Cal. 2008) .......... 9

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 771 (2007) .......... 1, 6, 9

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936 (Fed. Cir. 2006) .......... 5, 7

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) .......... 11

*Predicate Logic, Inc. v. Distributive Software, LLC*, Case No. 01cv1951 WQH (WMc), 2007 WL 2070345 (S.D. Cal. July 12, 2007) .......... 9

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) .......... 5

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361 (Fed. Cir. 2004) .......... 10

*Steffel v. Thompson*, 415 U.S. 452 (1974) .......... 6

*Super Sack Mfg. Co. v. Chase Packing Corp.*,
57 F.3d 1054 (Fed. Cir. 1995) ..... 2, 9

*WS Packaging Group, Inc. v. Global Commerce Group, LLC*,
505 F. Supp. 2d 561 (E.D. Wis. 2007) ..... 7, 8

**RULES**

Fed. R. Evid. 408 ..... 4

## INTRODUCTION

With its additional demands, MPS attempts to transform this Court's role to decide a pure legal issue of jurisdiction into an audience for seeking greater rights under O2 Micro's '129 patent than are needed to dispose of any current controversy between the parties. This tactic contravenes the purpose and spirit of the Declaratory Judgment Act, which is to facilitate the resolution of actual controversies, not to serve as a tool for extortion against a patent owner. As the Supreme Court reiterated in *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S. Ct. 771 (2007), this Court's fundamental inquiry in deciding declaratory judgment jurisdiction is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*, 127 S. Ct. at 771 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). In demanding addtional concessions from O2 Micro above and beyond the proffered covenant not-to-sue, MPS distorts this Court's inquiry in several respects:

- "the facts alleged . . . [showing] a substantial controversy" – MPS fails to present any *additional facts* showing the continuing existence of a "substantial controversy" that cannot be eliminated entirely by O2 Micro's proffered covenant not-to-sue.
- "between parties having adverse legal interests" – MPS improperly expands the focus of the inquiry from the parties to this action, MPS and O2 Micro, to unnamed and unascertained "direct and indirect customers."
- "of sufficient immediacy and reality" – MPS improperly characterizes the alleged controversy as including yet-to-be developed, future inverter controller products and inverter controller products currently under development.

In other words, MPS's Opposition demonstrates its attempted misuse of the Declaratory Judgment Act as a vehicle for maintaining jurisdiction over this case until O2 Micro accedes to MPS's unreasonable and improper demands. Having misused the Declaratory Judgment Act in refusing to recognize the

lack of jurisdiction over this lawsuit, MPS is not entitled to any additional concessions, such as its choice of forum for any future lawsuits relating to the '129 patent.

For all of these reasons, this Court should recognize that O2 Micro's proffered covenant not-to-sue eliminates any current controversy between the parties, and thus grant O2 Micro's Motion to Dismiss.

## ARGUMENT

### I. MPS Accepted O2 Micro's Prior Covenant Not-to-Sue and Stipulated to a Dismissal of the '129 Patent from the '2000 Case; This Covenant Is No Different.

O2 Micro's proffered covenant not-to-sue tracks the language of the prior covenant not-to-sue, which the parties, including MPS, and this Court accepted in the '2000 Case and which resulted in the dismissal of the claims and counterclaims relating to the '129 patent from that case. *See* Case No. 4:04-cv-02000-CW, Doc. No. **579** (Oct. 11, 2006). Specifically, it is an unconditional promise by O2 Micro not to assert the '129 patent against MPS for infringement by any of the power inverter controller products specifically identified by MPS (as well as inverter modules and end-user devices incorporating such controllers in a manner consistent with MPS's reference diagrams). No different than the prior covenant, the proffered covenant not-to-sue should be accepted by this Court and MPS's Complaint in this case dismissed for lack of jurisdiction.[1]

In response, MPS raises a litany of objections to O2 Micro's proffered covenant not-to-sue, all of which are manifestly unpersuasive. First of all, MPS recasts the history of the litigation involving the '129 patent to suit its purposes. (Opp. at 2:20 to 4:16.) The covenant not-to-sue given in the '2000 Case had no cause-and-effect relationship with O2 Micro's litigation against Hon Hai, as MPS now

---

[1] In a footnote, MPS incorrectly suggests that the proffered covenant not-to-sue needs to be filed first before a motion to dismiss can be brought. (Opp. at 4 n.4.) As the Federal Circuit observed in *Super Sack Manufacturing Co. v. Chase Packing Corp.,* 57 F.3d 1054 (Fed. Cir. 1995), the inclusion of a promise not to assert the patents "as a statement of counsel in motion papers and briefs, rather than a covenant signed by Super Sack itself and filed with the court" does not deprive the promise of its power to moot the case. *Id.* at 1059 (holding that Super Sack was bound by the promise conveyed on its behalf by counsel). The situation is the same here—O2 Micro has authorized the undersigned counsel to extend a covenant not-to-sue to MPS that will eliminate any current controversy between the parties. O2 Micro's intent is that the Court accept this covenant and dismiss the case. Otherwise, this case moves forward on the claims, counterclaims and defenses of both parties.

misleadingly suggests. Importantly, when O2 Micro gave the covenant not-to-sue to MPS and the other defendants in the '2000 Case in October 2006, it had already accused Hon Hai of infringing the '129 patent (and other patents) in a separate lawsuit pending in the Eastern District of Texas (filed July 18, 2005, as MPS notes (Opp. at 3:23)). It was always O2 Micro's position that Hon Hai's infringement of the '129 patent was not strictly derivative of MPS's infringement; indeed, the Complaint broadly accused Hon Hai of infringing the '129 patent through "at least the manufacture, use, sale, and/or offer for sale of products containing DC to AC converter circuits," without limitation as to particular inverter controller model numbers or particular inverter controller suppliers. (Su Decl. Ex. D [Compl. ¶ 15].) To the extent fact discovery revealed that Hon Hai products used inverter controllers manufactured by other suppliers besides MPS and/or other MPS inverter controllers not already known through O2 Micro's own investigation, O2 Micro intended to accuse those products as well, which it did by moving for leave to amend its infringement contentions in July 2007. (Su Decl. Ex. E.) The district court in the Eastern District of Texas granted O2 Micro's motion to amend in August 2007. (Su Decl. Ex. F.)

Second, there was nothing nefarious about the covenant not-to-sue given in the '2000 Case. (Opp. at 4:2 to 5:9.) By its plain terms, it was a promise not to assert the '129 patent against the named defendants and the accused products in the '2000 Case, not a license to practice the '129 patent. (Stip. at 1:6-15.) By its plain terms, the promise was personal to the named defendants, and not intended "to apply to any parties other than those expressly identified herein" or "to have preclusive effect (such as collateral estoppel or res judicata) as to any issue or claim asserted in the future except as expressly set forth herein." (*Id.* at 1:15-18.) All of the defendants, including MPS, accepted this language as evidenced by their stipulation to the dismissal. Accordingly, for MPS now to argue that this covenant contains "perceived ambiguities" that O2 Micro exploited "to resurrect the exact same claims against MPS's customer [Hon Hai]" is simply disingenuous. (Opp. at 4:13-15.) The covenant plainly did not extend to Hon Hai, and O2 Micro's infringement claims against Hon Hai products using MPS inverter controllers were already pending and did not require any "resurrection."

Third, O2 Micro did not "neglect to mention" MPS's counter-proposal in the context of this Motion. (Opp. at 5:17.) It decided not to mention MPS's counter-proposal in obeisance to the Evidence Rule 408 privilege under which it was offered. (*See* Brigham Decl. Ex. A, at 1 (stamp showing document was subject to Rule 408).) More importantly, MPS's counter-proposal makes additional demands that are irrelevant or extraneous to the issue of declaratory judgment jurisdiction, for the reasons explained below. In characterizing its counter-proposal as "closing loopholes" and "exhausting the instant controversy," MPS is essentially telling this Court that the instant dispute is not over until MPS says it is over, i.e., not until MPS has successfully extracted additional concessions from O2 Micro. (Opp. at 5:16 & 6:3.) But that is not how the Declaratory Judgment Act works. Either there is jurisdiction as a matter of law or there is not, and a party cannot artificially maintain jurisdiction and keep the case alive by insisting that it receive more from the patentee than a promise not to sue on all products currently existing.

## II. MPS Fails to Present Any Facts Showing the Existence of a Current, Justiciable Controversy Not Resolved by O2 Micro's Covenant Not-to-Sue.

Contrary to MPS's claim, O2 Micro's proposed covenant not-to-sue properly addresses the concerns raised by this Court with respect to O2 Micro's earlier motion to dismiss. (Opp. at 7:18-21.) In the prior motion, O2 Micro pointed out that there was no "actual controversy" between the parties because O2 Micro had never taken any position as to whether MPS's new products infringe the '129 patent. (Doc. No. **11**, at 6:21-7:15; Doc. No. **29**, at 2:2-4:4.) In denying that motion, this Court reasoned that "[w]hether O2 Micro has publicly accused MPS's new products, which are not covered by the Stipulated Dismissal, is not dispositive to determining whether an actual controversy exists." (Doc. No. **33**, at 6:23-26.) This Court found that based on the history of litigation between the parties, there was a sufficient threat that O2 Micro might sue MPS for infringement of these new products. (*Id.* at 7:15-8:13.) This Court therefore concluded that there was a "substantial controversy" between the parties sufficient to confer subject matter jurisdiction over MPS's declaratory judgment claims. (*Id.*)

Without conceding that any actual controversy has ever existed, O2 Micro has now eliminated any possible controversy by unconditionally promising not to sue MPS for infringement of the '129 patent with respect to any of the sixteen new products that are purportedly the subject of MPS's

request for declaratory relief. As the Federal Circuit has explained post-*MedImmune*, an Article III case or controversy arises "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir. 2007). A covenant not-to-sue running to MPS negates the first prong of this reformulated test for controversy because it is—by definition—a promise by the patentee *not to assert* rights under the patent-in-suit based on the entirety of the other party's *identified ongoing or planned activity*.

To analyze it another way, "[a] useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff." *Benitec Australia, Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344 (Fed. Cir. 2007) (explaining that the concepts of "adverse legal interests" and "legal risk" require the existence of underlying legal cause of action that the declaratory judgment defendant could have brought against the declaratory judgment plaintiff) (quoting *Microchip Tech. Inc. v. Chamberlain Group, Inc.,* 441 F.3d 936, 943 (Fed. Cir. 2006)). A covenant not-to-sue running to MPS extinguishes any cause of action that O2 Micro may have against MPS based on infringement of the '129 patent by all of MPS's newly identified, inverter controller products. It therefore eliminates any possible substantial controversy having the requisite immediacy and reality.

MPS musters only a feeble response. It claims that O2 Micro's proffered covenant not-to-sue is not sufficient because the Federal Circuit in *Super Sack* allegedly required "an unconditional surrender of patent rights by the patentee" to divest the district court of jurisdiction. (Opp. at 9:2-16.) MPS deliberately misquotes *Super Sack*; the Federal Circuit never used the term "unconditional surrender" anywhere in its opinion. Rather, the operative term was "unconditional promise," which is exactly what O2 Micro is offering here—an unconditional promise not to assert the '129 patent against MPS with respect to any of the newly identified products. Once the covenant is accepted by the Court and this action is dismissed, MPS is completely immune from suit for infringement of the '129 patent by any of those sixteen inverter controller products it has identified.

MPS also fails to point this Court to any additional and more recent facts that would show the continuing existence of substantial controversy, notwithstanding O2 Micro's proffered covenant not-to-sue. In lieu of facts as required under *MedImmune*, MPS merely recycles its reconstructed, "unique history" of the litigation involving the '129 patent. (Opp. at 7:21-27; 8:15-26 (citing, for example, a November 9, 2006 letter to a customer), 9:22-26.) This "unique history" fails to satisfy the *MedImmune* standard, even under the "totality of the circumstances" test. 127 S. Ct. at 771. The Supreme Court has long required that "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson,* 415 U.S. 452, 459 n.10 (1974). Moreover, "[t]he burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec,* 495 F.3d at 1344. "History," by definition, does not satisfy the *MedImmune* requirement of "sufficient immediacy and reality." 127 S. Ct. at 771.

For the reasons stated above, O2 Micro's proffered covenant not-to-sue eliminates any actual or potential current controversy between the parties. This Court should therefore accept it and dismiss MPS's Complaint. As discussed below, none of the additional terms demanded by MPS have any bearing on the existence of a substantial controversy as required by *MedImmune*. On the contrary, these terms are inconsistent with the purpose and spirit of the Declaratory Judgment Act, and this Court should therefore reject them.

## III. MPS Cannot Maintain Jurisdiction Over This Declaratory Judgment Action to Protect Unnamed and Unascertained "Direct and Indirect" Customers.

The first term that MPS insists on including is an extension of the covenant not-to-sue to "MPS's direct and indirect customers." (Brigham Decl. Ex. A at 1:15.) Not only is this term vague and overbroad but MPS has not identified any specific customers who are currently at risk of being sued for infringement of the '129 patent by O2 Micro and who would be the beneficiaries of this covenant. Nor does MPS have any facts to substantiate its fear that any of its "direct and indirect" customers are currently under threat of litigation by O2 Micro. Importantly, the *Hon Hai* case settled in October 2007. (Su Decl. Ex. G.)

Given the absence of any facts suggesting that any of "MPS's direct and indirect customers" face any real and immediate "legal risk" with respect to O2 Micro's assertion of rights under the '129 patent, this Court must examine its "case or controversy" jurisdiction through the only lens appropriate under *MedImmune*: from the standpoint of the parties having adverse legal interests of any degree of immediacy and reality—MPS and O2 Micro. These are the only parties whose adverse legal interests, such that they are, can be addressed by this Court at this time. *See Microchip Tech. Inc. v. Chamberlain Group, Inc.,* 441 F.3d 936, 943 (Fed. Cir. 2006) ("While Microchip's customers may or may not have had an 'adverse legal interest' or have been at 'legal risk,' they were not parties to this action."). As explained above, O2 Micro's proffered covenant not-to-sue negates any controversy between the parties because it operates as a binding promise not to assert the '129 patent against MPS based on the sixteen inverter controller products that MPS has identified and it extinguishes any underlying infringement cause of action that O2 Micro could bring against MPS based on the '129 patent.

In *Microchip Technology,* the Federal Circuit held that in the absence of an underlying legal cause of action, "any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." 441 F.3d at 943. A legally insufficient, economic interest would include an interest on the part of the declaratory judgment plaintiff "in clarifying its customers' rights under [the defendant's] patents, which may have facilitated the sale of [the plaintiff's products]." *Id.* In this case, although MPS may have an economic interest in using the covenant not-to-sue to clarify the rights of its "direct and indirect customers" under the '129 patent, under *Microchip Technology*, that interest alone cannot sustain an actual controversy under the Declaratory Judgment Act.

MPS's reliance on *WS Packaging Group, Inc. v. Global Commerce Group, LLC*, 505 F. Supp. 2d 561 (E.D. Wis. 2007), is misplaced. (Opp. at 8:2-19.) *WS Packaging* is readily distinguishable on its facts because in that case the district court concluded from the record that WS faced *imminent personal injury* from Global's threats against its customers. 505 F. Supp. at 565. Under Wisconsin UCC law, WS customers who did not have indemnification agreements with WS could still hold WS

liable if Global decided to bring suit. *Id.* at 566. Moreover, the district court relied on the fact that the defendant patentee "bragged in a trade magazine of its habit of threatening to sue (or actually suing) the customers of allegedly infringing vendors or manufacturers, presumably as a means of pressuring the parties to cease their activities or sign a license agreement." *Id.* at 565-66. By contrast, here MPS has not presented this Court with any palpable evidence that O2 Micro caused MPS any *imminent personal injury* by threatening specific MPS customers whom MPS has agreed to indemnify for any charge of patent infringement.

In summary, MPS is improperly using the Declaratory Judgment Act as a tool to extort more concessions from O2 Micro. Not satisfied with immunity from suit, MPS is essentially demanding additional, royalty-free rights under the '129 patent that extend to downstream customers and their products. This Court's declaratory judgment jurisdiction, however, is not concerned with demands that have nothing to do with the elimination of any possible, current controversy between the parties.

**IV. MPS Cannot Use the Declaratory Judgment Act to Protect Cover Undeveloped, Future Products and Products Still in Development.**

The second term that MPS insists on including is an extension of the covenant not-to-sue to "any inverter controller products incorporating insubstantial changes to the design and relevant operation of the [sixteen identified inverter controller products]" and "any inverter controller products under development by MPS as of the execution date of this agreement that provide for feedback control of power pulse generation during all phases of operation." (Brigham Decl. Ex. A at 1:18-24.) Like the demanded extension to "direct and indirect customers," this term would impermissibly expand the covenant into broader, royalty-free rights under the '129 patent. The Declaratory Judgment Act does not entitle MPS to demand such expanded protection because regardless of MPS's views on the appropriate scope of rights that should be extended under the '129 patent, there is still no jurisdiction to support this action.

In response to interrogatories served by O2 Micro, MPS identified sixteen inverter controller products as the subject matter of its purported dispute with O2 Micro. There is no dispute that O2 Micro's proffered covenant not-to-sue applies to each of these identified products. (*See* Su Decl., ¶¶ 5, 7; Brigham Decl., Ex. A at 1:16-18.) By demanding additional protection for unspecified products

"incorporating insubstantial changes" and products "under development," MPS is essentially seeking to artificially maintain a controversy over products-in-development and future products that as a matter of law, cannot provide a basis for declaratory judgment jurisdiction at this time. The Declaratory Judgment Act, with its focus on "definite and concrete" disputes of "sufficient immediacy and reality," as opposed to a "hypothetical state of facts," does not countenance MPS's unilateral attempt to expand the benefits granted under the covenant. *MedImmune,* 127 S. Ct. at 771.

In *Super Sack*, the defendant argued, like MPS, that the patentee's covenant not-to-sue did not eliminate the controversy between the parties because it applied only to the defendant's past and present products, and not its future products. The Federal Circuit rejected this argument, finding that "the residual possibility of a future infringement suit based on [the defendant's] future acts is simply too speculative a basis for jurisdiction over [defendant's] counterclaim for declaratory judgments of invalidity." 57 F.3d at 1060; *accord Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999) ("However, an actual controversy cannot be based on a fear of litigation over future products."). This principle remains valid after the Supreme Court's *MedImmune* decision.[2]

In *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871 (Fed. Cir. 2008), the Federal Circuit concluded that the level of preparation to conduct potentially infringing activity remains an important element under *MedImmune*'s totality of the circumstances analysis of jurisdiction because a dispute must have sufficient immediacy and reality. *Id.* at 880. Specifically, "immediacy" means that there must be a showing of "meaningful preparation" to conduct the potentially infringing activity, and "[i]n general, the greater the length of time before potentially infringing activity is expected to occur, 'the

---

[2] Several lower courts have reached this conclusion since the *MedImmune* decision issued. *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008) (in order to eliminate subject matter jurisdiction, "a covenant need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute the 'actual controversy' between the parties."); *Predicate Logic, Inc. v. Distributive Software, LLC*, Case No. 01cv1951 WQH (WMc), 2007 WL 2070345, at *4 (S.D. Cal. July 12, 2007) ("Although Plaintiff's withdrawal does not foreclose the possibility that Plaintiff might sue Defendant for some future products or services that allegedly infringe claims 15-20 of the '798 Patent, this is too speculative a basis for jurisdiction over Defendant's counterclaims for declaratory judgments."); *Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579, 590 (E.D. Mo. 2007) (holding that a covenant not to sue defendants for any products offered prior to date of motion to dismiss was sufficient to divest court of subject matter jurisdiction).

more likely the case lacks the requisite immediacy.'" *Id.* at 881 (quoting *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1379 (Fed. Cir. 2004)). In the context of patent litigation, the "reality" requirement "is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Id.* at 882 (citing *Sierra,* 363 F.3d at 1379). Stated another way, "[t]he greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject—in short, detached from eventual reality." *Sierra,* 363 F.3d at 1379.

Applying *Super Sack*, *Amana* and *Cat Tech* to the facts here, this Court can only conclude that its jurisdiction cannot extend to unascertained future products and products-in-development, despite MPS's desires to the contrary. Inverter controller products that may be developed at some indeterminate point in the future lack the requisite immediacy for declaratory relief. Moreover, even inverter controller products-in-development cannot serve as the basis for jurisdiction because, as their datasheets indicate, their specific technology and design remain fluid and indeterminate. There is no way to tell now whether any of these unspecified future products and products-in-development would arguably have functions, features, and modes of operation meeting any claim of the '129 patent, if and when they are commercially released. MPS therefore improperly seeks a covenant not-to-sue from O2 Micro, or alternatively, an advisory opinion from this Court, based on an assumed, hypothetical state of facts about what these products are expected to have in terms of their design and operation. This Court should reject this demand as well.

## V. MPS Cannot Use the Declaratory Judgment Act to Extract a Forum Selection Clause from O2 Micro.

MPS insists as its third term that O2 Micro agree to file any suit for infringement of the '129 patent against MPS or its direct or indirect customers, based in whole or in part on their use of MPS products, in this judicial district and not until reexamination proceedings involving the '129 patent are incomplete. (Brigham Decl. Ex. A at 1:27 to 2:3.) Like the other desired terms, this one has nothing to do with whether jurisdiction currently exists under the Declaratory Judgment Act. Moreover, MPS provides no authorities to support its demand.

The Declaratory Judgment Act was designed to address situations in which a patentee, despite subjecting an allegedly infringing party to uncertainty and insecurity regarding its legal rights, refuses "to grasp the nettle and sue." *Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 902 (Fed. Cir. 2008) (quoting *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1346 (Fed. Cir. 2005)). As a result, the allegedly infringing party was "rendered helpless and immobile" while its "potential liability for patent infringement" grew and grew. *Id.* With the passage of the Act, such a party did not have to wait for the patentee to file suit; it could sue for declaratory relief. *Id.*

The Declaratory Judgment Act was not enacted, however, to give a manufacturer "who is charged with infringing a patent . . . a paramount right to choose the forum for trying out questions of infringement validity." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 185 (1952). "He is given an equal start in the race to the courthouse, not a headstart." *Id. But see Micron,* 518 F.3d at 902 (expressing concern that the ease in obtaining declaratory judgment jurisdiction after *MedImmune* could result in a forum-seeking race to the courthouse between accused infringers and patentees).

In this case, MPS seeks to misuse the Declaratory Judgment Act to obtain the "paramount right to choose the forum" that *Kerotest* expressly forbids. After accepting the covenant not-to-sue and stipulating to the dismissal of the '129 patent from the '2000 Case in October 2006, MPS evidently experienced a shade of "buyer's remorse," realizing that it could sell more of its inverter controller products if its customers were protected by a covenant from O2 Micro as well. Accordingly, it argued, as did Hon Hai, that O2 Micro's covenant was really an implied license, even though the plain language did not support such an interpretation. To keep its options open, MPS also filed this action in May 2007—even though O2 Micro had abided by its covenant and not asserted the '129 patent against MPS or its customers (with the exception of Hon Hai, with whom O2 Micro had already been in litigation). (*See* 07/09/07 Harkins Decl., Doc. No. **11-2**, ¶¶ 4-5.)

As its latest demands confirm, MPS's strategy in filing this lawsuit all along has been to secure its choice of forum for any future litigation involving the '129 patent. Realizing now that this case must be dismissed based on O2 Micro's proffered covenant not-to-sue, MPS seeks to maintain its preferred forum while accepting the benefits of an unconditional promise not to assert the '129 patent

against all newly identified, current MPS products. By imposing additional demands, MPS seeks to use the judicial process either to extort broader, royalty-free rights under the '129 patent from O2 Micro, and to lock O2 Micro to MPS's choice of forum, or else to compel O2 Micro to litigate the '129 patent notwithstanding the submission and acceptance of one covenant not-to-sue in the '2000 Case and the current proffer of another covenant not-to-sue. (Opp. at 10:11-21.) This Court should not allow MPS to impose such an unreasonable demand.

**VI. Even If Jurisdiction Is Found to Exist, This Court Should Decline to Exercise Any Jurisdiction Over This Action.**

Based on its proffered covenant not-to-sue, O2 Micro respectfully submits that there is no actual controversy under *MedImmune* and the Federal Circuit cases since *MedImmune*. This action must therefore be dismissed.

In the alternative, should this Court still conclude that an actual controversy exists, it should nevertheless decline to exercise jurisdiction. In deciding whether to entertain a declaratory judgment action, this Court must determine "whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Cat Tech,* 528 F.3d at 883. For the reasons stated above, it should be clear to the Court that MPS has brought this action in contravention of the objectives of the Act. Entertaining this action would only give MPS the improper leverage it seeks to obtain broader, royalty-free rights under the '129 patent from O2 Micro, even though it already has a covenant not-to-sue that eliminates any current controversy between the parties. *Cf. EMC Corp. v. Norand Corp.,* 89 F.3d 807, 815 (Fed. Cir. 1996) (affirming the district court's decision to decline jurisdiction under circumstances in which the declaratory judgment complaint was used "as a tactical measure filed in order to improve EMC's posture in the ongoing negotiations—not a purpose that the Declaratory Judgment Act was designed to serve"). Just as it was improper for EMC to file a declaratory judgment action in order to gain leverage in pending negotiations, so should it be improper for MPS to refuse to dismiss a declaratory judgment action in order to obtain broader rights under the '129 patent than a covenant not-to-sue.

This Court should therefore exercise its discretion and dismiss this case.

**CONCLUSION**

For the reasons discussed above, O2 Micro respectfully requests that its Motion to Dismiss be granted.

Dated: July 24, 2008

HOWREY LLP

By: /s/ Henry C. Su
Henry C. Su

Attorneys for Plaintiff
O2 Micro International Limited