IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONOLITHIC POWER SYSTEMS, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>O2 MICRO INTERNATIONAL LIMITED, a Cayman Islands corporation,<br><br>    Defendant.<br>_____/ | No. C 07-2363 CW<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

    Defendant O2 Micro International Limited moves to dismiss the complaint of Plaintiff Monolithic Power Systems, Inc. (MPS), arguing for a second time that the Court lacks jurisdiction. MPS opposes the motion, contending that the Court has jurisdiction under the Declaratory Judgment Act. The matter was taken under submission on the papers. Having considered all of the papers submitted by the parties, the Court denies O2 Micro's motion.

BACKGROUND

    In this case, MPS seeks a declaration of its rights with respect to O2 Micro's U.S. Patent No. 6,804,129 (the '129 patent):

it requests that the Court find that it does not infringe any valid claim of the '129 patent and that the '129 patent is unenforceable due to inequitable conduct.  This case is the latest in a series of actions before this Court between MPS and its competitor O2 Micro. For years, MPS and O2 Micro have accused each other of infringing each other's patents or of attempting to enforce patents that are invalid and unenforceable.  Thus, the Court is familiar with the parties, the technology and the patent at issue.[1]

In 2004, after MPS filed a declaratory judgment action concerning O2 Micro's '722 patent in this Court, O2 Micro filed suit against MPS in the Eastern District of Texas, alleging that MPS infringed the '129 patent.  O2 Micro filed the Texas action the day that the '129 patent issued.  The Eastern District of Texas court transferred that action to this Court and the Court consolidated the Texas action with the related '722 patent litigation.

On October 11, 2006, after consolidating the two actions involving O2 Micro's patents, the Court dismissed with prejudice O2 Micro's '129 patent infringement claim against MPS pursuant to a stipulated dismissal signed by the parties.  The stipulation, signed by the Court, provides:

> O2 Micro covenants not to assert or reassert its '129 patent against named defendants for infringement by MPS full bridge inverter controllers (and products incorporating said

---

[1] The '129 patent has the same specification as O2 Micro's U.S. Patent Nos. 6,259,615 (the '615 patent) and 6,396,722 (the '722 patent), both of which the U.S. Patent and Trademark Office issued before issuing the '129 patent and both of which have been involved in cases before the Court.

2

1  controllers) made, used, imported, offered for sale or sold
   previously or currently having product designations MP1010,
2  MP1010B, MP1011, MP1012, MP1013, MP1015, MP 1016, MP1018,
   MP1022, MP1023, MP1024, MP1025, MP1026, MP1027, MP1029,
3  MP1030, MP1031, MP1032, MP1035 and MP1038, evaluation boards
   EV0001, EV0002, EV0003, EV0004, EV0014, EV0017, EV0019,
4  EV0027, EV0031 and EV0037 incorporating certain of those
   inverter controllers, Asustek products incorporating the
5  MP1010B, MP1011, MP1015 and/or MP1037 inverter controller
   chips, and Compal's products incorporating the MP101, MP1010B,
6  MP1015, MP1016, and/or MP1037 inverter chips.

7 The stipulation covers all of the MPS products that O2 Micro had

8 accused of infringing the '129 patent.

9      After the Court signed this stipulation, MPS designed and

10 marketed new inverter controller products not previously accused of

11 infringing the '129 patent. These new products included a half-

12 bridge inverter controller marketed as the MP1008 and a new full-

13 bridge inverter controller marketed under the VION brand.

14      MPS brought the present lawsuit seeking a declaration that

15 these new products do not infringe the '129 patent. O2 Micro moved

16 to dismiss the complaint for lack of subject matter jurisdiction,

17 arguing that the earlier stipulation deprived the Court of subject

18 matter jurisdiction over the dispute. The Court denied the motion,

19 finding that there was an actual justiciable controversy between

20 the parties in light of their extensive litigation history and the

21 limited nature of the stipulation.

22      O2 has now proffered a covenant not to sue that differs in

23 some respects from the previous stipulation. It states:

24     O2 Micro covenants not to assert or reassert its '129
       patent against MPS for infringement by MPS power inverter
25     controller products [model numbers of the sixteen power
       inverter controller products specifically identified by
26     MPS] in the form currently in existence (and inverter
       modules and end-user devices incorporating such inverter
27     controllers in a manner consistent with MPS's reference

28                                    3

>     diagrams produced in this litigation) made, used,
>     imported, offered for sale or sold by MPS.  O2 Micro does
>     not intend this stipulation to apply to any other parties
>     besides MPS and does not intend this stipulation to have
>     preclusive effect (such as collateral estoppel or res
>     judicata) as to any issue or claim asserted in the future
>     except as expressly set forth herein.

Su Dec. ¶ 7 (brackets in original).  The products referred to in the covenant are the sixteen products that MPS has identified in discovery as being the subject of its request for a declaratory judgment.

O2 Micro contends that the covenant eliminates any controversy between the parties, and therefore requests that the Court dismiss the case for lack of subject matter jurisdiction.  O2 Micro argues in the alternative that, even if the Court has jurisdiction over the case, it should decline to exercise such jurisdiction.

## LEGAL STANDARD

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the

4

formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

## DISCUSSION

The Declaratory Judgment Act, in accordance with Article III of the Constitution, requires an "actual controversy" before the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Until relatively recently, the Federal Circuit required that, in order to prove an actual controversy, a plaintiff had to establish that the defendant's conduct created an objectively "reasonable apprehension" that the defendant would initiate suit imminently if the plaintiff continued the allegedly infringing activity.  See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1334-36 (Fed. Cir. 2007).

In MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 S. Ct. 764 (2007), however, the Supreme Court noted that the Federal Circuit's "reasonable apprehension of imminent suit" test conflicted with several cases in which the Supreme Court had found that a declaratory judgment plaintiff had a justiciable controversy.  127 S. Ct. at 774 n.11.  The Supreme Court instructed that, although there is no bright-line rule for distinguishing cases that satisfy the actual controversy requirement from those that do not, all that is required is:

> that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what

5

> the law would be upon a hypothetical state of facts. . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Id. at 771 (citations and internal quotation marks omitted).

Following MedImmune, the Federal Circuit recognized that the Supreme Court did not approve of its reasonable apprehension of imminent suit test. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007); Teva, 482 F.3d at 1340. The Federal Circuit discarded its "reasonable apprehension" requirement and adopted MedImmune's "all circumstances" test. Teva, 482 F.3d at 1339 ("[W]e follow MedImmune's teaching to look at 'all the circumstances' . . . to determine whether Teva has a justiciable Article III controversy."). Under the new test, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." SanDisk, 480 F.3d at 1381. As one district court has noted, this change in the law with respect to the now-defunct "reasonable apprehension" requirement has "in effect lower[ed] the bar for a plaintiff to bring a declaratory judgment action in a patent dispute." Frederick Goldman, Inc. v. West, 2007 WL 1989291, at *3 (S.D.N.Y.).

O2 Micro contends that, even under the Federal Circuit's revised standard, there is no actual controversy and, therefore, no jurisdiction over MPS's declaratory judgment claims. It focuses on the fact that it has now proffered a covenant not to sue which

6

covers the products for which MPS seeks a declaration of non-infringement. But, as MPS points out, the covenant would not prevent O2 Micro from suing MPS's customers. If that were to happen, MPS would face injury in the form of damage to its relationships with its customers. In addition, MPS could be forced to indemnify its customers for any losses they incur in an infringement suit brought against them by O2 Micro. See WS Packaging Group, Inc. v. Global Commerce Group, LLC, 505 F. Supp. 2d 561, 566 (E.D. Wis. 2007) (noting that, under the UCC, even a customer without an indemnification contract may seek indemnification from the seller if the patentee successfully sues the customer for infringement). MPS's interest in preventing such a scenario is sufficient to demonstrate a controversy between the parties. See id. (finding a justiciable controversy based on "the injury that might arise from [the plaintiff's] having to indemnify customers" and "the loss of [the plaintiff's] customer base and reputation in these circumstances").[2]

The history of litigation over the '129 patent demonstrates

---

[2] O2 Micro cites Microchip Technology Inc. v. Chamberlain Group, Inc., 441 F.3d 936 (Fed. Cir. 2006), for the proposition that a lawsuit by a declaratory judgment defendant against the customers of the declaratory judgment plaintiff creates only an "adverse economic interest" between the parties and is not sufficient to confer jurisdiction absent a potential legal cause of action by the defendant against the plaintiff itself. Microchip Tech., however, was decided under the now-defunct reasonable-apprehension-of-imminent-suit test, and thus its applicability must be considered in light of MedImmune's all-circumstances test. The Court finds that, under MedImmune, it must consider the potential for lawsuits against MPS's customers when determining whether an actual controversy exists. In addition, unlike here, the defendant in Microchip Tech. had never accused the plaintiff of infringing the patents-in-suit.

7

that a lawsuit by O2 Micro against MPS's customers is more than a theoretical possibility: Despite the stipulated dismissal of O2 Micro's previous '129 patent claims against MPS, O2 Micro pursued claims against an MPS customer in the Eastern District of Texas for infringement of the '129 patent through its use of MPS products, even though those products were listed in the stipulation. In opposing the customer's motion for summary judgment, O2 Micro stated:

> The Stipulated Dismissal does not confer on MPS the right to practice the '129 patent or to sublicense its customers to do so. Rather, it merely contains a promise by O2 Micro not to sue MPS for infringing the '129 patent with certain products. The fact that O2 Micro has agreed not to sue MPS does not transform MPS's products into licensed products; rather, they remain infringing products which others downstream may not use without incurring liability for infringement. All that the Stipulated Dismissal provides to MPS is personal immunity from suit for these particular acts of infringement.

7/26/07 Brigham Dec. (Docket No. 23) Ex. 6 at 4. O2 Micro's proffered covenant here is even more explicit than the earlier stipulation in preserving O2 Micro's right to sue parties other than MPS for infringement of the '129 patent.

O2 Micro has sued numerous parties, including MPS, accusing them of infringing the '129 patent. Such suits indicate "an assertion of rights and a willingness to pursue litigation" regarding the patent-in-suit, Cingular Wireless v. Freedom Wireless, Inc., 2007 WL 1876377, at *3 (D. Ariz.), and there is no reason to believe that O2 Micro has decided to stop vigorously enforcing its patent rights. See also Teva, 482 F.3d at 1344 ("[R]elated litigation involving the same technology and the same parties is relevant in determining whether a justiciable

8

declaratory judgment controversy exists on other related patents.")

This is not to say that <u>no</u> covenant not to sue would be sufficient to eliminate the controversy between the parties. But such a covenant would have to be broad enough in scope to support an objective determination that MPS's interests would not be prejudiced by failing to pursue this lawsuit. O2 Micro rejected an offer by MPS to enter into a stipulated dismissal entailing a covenant not to sue that would have extended to MPS's direct and indirect customers. Other aspects of the proposed stipulated dismissal, such as a provision requiring O2 Micro to bring any future action against MPS for infringement of the '129 patent in the Northern District of California, go beyond what would be required to deprive the Court of jurisdiction. Nonetheless, O2 Micro could have offered a covenant not to sue that extended to suits against MPS's customers. Its failure to do so further suggests that a controversy continues to exist between the parties.

The Court concludes that, considering the totality of the circumstances, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune</u>, 127 S. Ct. at 772. Therefore, the Court has jurisdiction over MPS's declaratory judgment claims.

As for O2 Micro's request that the Court decline to exercise its jurisdiction, the Court previously denied this request, and circumstances have not changed so as to warrant revisiting that decision. For the reasons contained in the Court's order denying O2 Micro's first motion to dismiss, it will exercise jurisdiction

9

over this case.

## CONCLUSION

For the foregoing reasons, O2 Micro's motion to dismiss (Docket No. 64) is DENIED. The hearing currently scheduled for August 7, 2008 is VACATED.

IT IS SO ORDERED.

Dated: 8/6/08

CLAUDIA WILKEN
United States District Judge